**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| STUDENTS FOR JUSTICE IN PALESTINE AT PITT,<br><br>      *Plaintiff*,<br><br>v.<br><br>UNIVERSITY OF PITTSBURGH, JOAN GABEL, MARLIN NABORS, KARIN ASHER, DaVAUGHN VINCENT-BRYAN, MATTHEW LANDY, and JAMEY MENTZER, all in their official and individual capacities,<br><br>      *Defendants*. | CIVIL ACTION NO. 2:25-cv-00524-NR<br>Judge J. Nicholas Ranjan |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PROTECTIVE ORDER**

Defendants University of Pittsburgh ("Pitt" or "the University"), Joan Gabel, Marlin Nabors, Karin Asher, DaVaughn Vincent-Bryan, Matthew Landy, and Jamey Mentzer hereby oppose Plaintiff Students for Justice in Palestine at Pitt's ("Plaintiff" or "SJP-Pitt") Motion for Protective Order (Doc. No. 33) ("Motion") and state as follows:

**I.    INTRODUCTION**

To justify withholding of otherwise discoverable information in this case Plaintiff has asserted an "associational privilege," which Plaintiff construes as a virtually limitless protection from disclosure of any communications with anyone with whom Plaintiff has ever conversed that shares Plaintiff's political viewpoint. One might surmise from Plaintiff's arguments that *Defendants* brought this lawsuit to peek nefariously into the business of Plaintiff, but not so. *Plaintiff* chose to bring this lawsuit and put the facts and circumstances of its actions at issue.  It

then communicated about those issues not just internally, but with others outside its organization as well, effecting the first in a series of waivers of any privilege that may have existed to begin with. One of the means Plaintiff used to communicated about the subject matter of this lawsuit was via an email network owned, operated, and accessed by *the party it was planning to sue*. Plaintiff now asks this Court to disregard these clear waivers and shield from disclosure information that is highly relevant to issues in this case.

Separately, Plaintiff has conceded that it has failed to preserve evidence that it should have known was relevant to this litigation. Plaintiff asks this Court to forgive that failure and not enforce any resulting consequences authorized by the Federal Rules of Civil Procedure. This theme – that rules about privilege, document preservation, and basic production of relevant information should not apply to Plaintiff – is mistaken and sets a remarkably poor precedent. While Plaintiff may regret the many internal and external contemporaneous communications it sent about this case, and may regret the fact that its counsel, a sophisticated advocate with substantial experience, communicated with his clients on University servers, and may regret that it disregarded its document preservation obligations, those regrets do not and should not shield Plaintiff from living up to its obligations in discovery. This Court should reject Plaintiff's requests to be shielded from the foreseeable consequences of its actions.  To do otherwise would be unfairly prejudicial to the Defendants and raise serious due process issues.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

There are three issues for the Court to address in connection with Plaintiff's Motion:
(1) whether Plaintiff can withhold responsive documents under a "First Amendment" privilege;
(2) whether the attorney-client privilege applies to emails in Professor Jules Lobel's email account on the University's email system (and if so, whether it has been waived); and

(3) whether the Plaintiff needs to find a way to recover (or be held accountable for not producing) discoverable documents that it failed to preserve.

**A. Plaintiff has Improperly Withheld Documents in Discovery on the Basis of Associational Privilege.**

Plaintiff filed this action alleging that Pitt, in enforcing its policies, violated its First Amendment right to free speech by interfering with and retaliating against SJP-Pitt for Plaintiff's public demonstrations attended by SJP-Pitt members. Plaintiff, therefore, has placed its actions, its admissions, and its understanding of those actions, as well as Pitt's policies and Pitt's actions, directly at issue. Plaintiff asked this Court for a preliminary injunction and for expedited discovery to support that request. Acting in good faith, Pitt agreed to a period of expedited discovery, believing that an exchange of evidence and documents in the search of truth and facts would yield the best outcome. As part of that discovery, Pitt served Plaintiff with written Requests for Production of Documents.

Plaintiff specifically objected to nearly every Request for Production served by Pitt. *See* Plaintiff's Memorandum in Support of the Motion for Protective Order ("Pl.'s Memo"), Exhibit A at *passim* (ECF No. 33-3) ("Pl.'s RFP Responses"), asserting "associational privilege." *See* Pl.'s RFP Responses at Responses to Request Nos. 1-2, 4-6, 8; Plaintiff's Privilege Log. Plaintiff has asserted this privilege – recognized to apply, if at all, to ***internal*** association information – beyond the bounds of the association, to include other "allied" organizations, groups, faculty, and students – in other words, any like-minded individual or group with whom Plaintiff has ever communicated. Plaintiff's claim is akin to asserting attorney-client privilege over communications that the client has willingly shared outside the attorney-client relationship.

To that end, Plaintiff did not produce any of the following:

- Internal SJP-Pitt documents, including meeting agendas or collaboration with other

entities, specifically, documents concerning the December 2024 "Study-In" which forms one of the bases of its claims;

- Internal SJP-Pitt leadership communications, including communications regarding organizational strategy;

- Internal SJP-Pitt communications to and from its membership; or

- SJP-Pitt communications with other "allied" organizations, groups, faculty, and students, including signatories to the February 4, 2025 "Open Letter."

*See id.*; *id.* at Exhibit B (ECF No. 33-4) ("Plaintiff's Privilege Log"). In fact, Plaintiff has produced hardly any documents that were not public, depicted public events, or previously communicated to Pitt administrative staff. Plaintiff concedes by declaration that it has claimed privilege over documents that include:

- "[P]lanning or discussing potential or actual events or social media posts," *see* Pl.'s Memo, Exhibit E at ¶ 10 ("Pl.'s Decl.");

- Discussions involving "SJP-Pitt board members ***acting in other capacities***, including ***on behalf of other non-University-registered organizations***. Sometimes SJP-Pitt partnered on those events, but other times the SJP-Pitt board members were ***acting purely as individuals or as members of the other organizations***," *id.* at ¶ 13 (emphasis added);

- Discussions about "potentially impactful strategy disputes within SJP-Pitt and ***between SJP-Pitt and allied groups***," *id.* at ¶ 35 (emphasis added); and

- "[C]ommunications that could ***embarrass*** [Plaintiff]," *id.* at ¶ 34 (emphasis added).

In sum, Plaintiff has withheld documents that directly concern the incidents at issue in this matter and documents sent outside the scope of Plaintiff's organization.

### B. Plaintiff and Professor Lobel Exposed Their Communications to Pitt.

At some point over the past year, Plaintiff began communicating with Professor Lobel, now one of its attorneys in this matter. Pursuant to Professor's Lobel's Declaration, that communication "***precede[d] the initiation of work directly on the litigation***, but involve generally [his] correspondence with the leaders of SJP-Pitt about their first disciplinary hearing."

Pl.'s Memo, Exhibit F ("Lobel Decl.") at ¶ 22. Professor Lobel has avoided informing the Court when he believes the attorney-client relationship with Plaintiff began.

At some point, however, Prof. Lobel created a gmail address and has used that email address and a non-university physical address in his appearance before the Court. Lobel Decl. at ¶¶ 7, 14; *see* Dkt. No. 9. Professor Lobel has apparently not done this in prior representations (*i.e.* against parties other than Pitt). Lobel Decl. at *passim*. Professor Lobel took these steps even before Pitt's counsel reminded him that they were in possession of his emails. It follows that Professor Lobel understood that his representation of Plaintiff in this matter was different than his previous activities, in no small part because the prior matters were not directly adverse to the owner of his communications system. Professor Lobel conceded at this Court's May 27, 2025 hearing that "[he] shouldn't have used [his] Pitt email," *See* Transcript of Video Status Conference on May 27, 2025, attached hereto as Exhibit 1 ("May 27 Transcript") at 21:10-12, but did not elaborate on why this was the case. For its part, and in contrast to Professor Lobel, "SJP-Pitt used its non-University email when contacting counsel." Pl.'s Memo at 17.

### C. Plaintiff Failed to Preserve and Produce Responsive Documents.

Plaintiff has taken the position in this lawsuit that it no longer possesses many responsive documents. According to Plaintiff:

> Many communications potentially responsive to this and other Requests are no longer in the possession, custody, or control of SJP-Pitt because they occurred on an ephemeral messaging application, including Signal, and were automatically deleted within one day or one week of the communications, depending on the group's messaging settings at the time. Therefore, many of the potentially responsive communications … are no longer in SJP-Pitt's possession, custody, or control.

Pl.'s RFP Responses at Response to No. 1 n.5. These "ephemeral messaging applications," that automatically deleted communications, were apparently WhatsApp and Signal. Pl.'s Dec. at ¶ 38.

Plaintiff does not contend that it has made any efforts to recover any of the purportedly deleted communications, or, importantly, provided any such messages that post-date its active consideration of litigation against Pitt; it is not clear from Plaintiff's responses whether it has failed to preserve, or simply failed to produce, such messages.

In addition to the apparently lost ephemeral messages, Plaintiff has failed to produce any documents from its non-University email account. Prior to filing its brief in support of its Motion, Plaintiff made no mention of communications through the "non-University email" that it used. Plaintiff has also not asserted that any such emails were automatically deleted, which is not a common default setting for most email providers. Plaintiff has not produced any emails from this "non-University email."

## III.    LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding *any* nonprivileged matter that is *relevant to any party's claim or defense and proportional to the needs of the case*." Fed. R. Civ. P. 26(b)(1) (emphasis added). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *See id.* Under Rule 26(c), a court may grant a protective order upon a showing of "good cause" therefor. Fed. R. Civ. P. 26(c). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotations omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id.* (internal quotations omitted). "The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order." *Id.* at 786-87.

## IV.    ARGUMENT

### A.    Plaintiff Should be Compelled to Produce Documents Withheld Under the Claim of Associational Privilege.

Plaintiff has claimed associational privilege for all of its internal documents, internal communications, and external communications with "allied" groups, faculty, students, and groups and individuals that are not members of the University community. But the fear that the disclosure of documents will "embarrass" a litigant or harm its position in a lawsuit is not a proper basis for the assertion of the associational privilege, yet that is exactly what Plaintiff is trying to do here. As discussed below, Plaintiff has not met its burden to assert any associational privilege, and it has attempted to stretch the protections of the associational privilege far beyond the bounds of what it might protect.  On top of that, even if the privilege may have applied, Plaintiff has waived the privilege by communicating with third parties outside of its own organization.

### 1.    Plaintiff has Failed to Meet its Burden to Assert Associational Privilege.

Although the Third Circuit has not spoken directly on the issue of whether an "associational privilege" actually exists, to the extent that it does, "[t]he party asserting an associational privilege to discovery has the burden of proving the privilege's existence and applicability." *Fraternal Ord. of Police Penn. Lodge v. Twp. of Springfield*, 668 F. Supp. 3d 375, 386 (E.D. Pa. 2023) (cleaned up) ("*FOP*"). "In the context of the associational privilege, that means the party opposing discovery must show that enforcement of the discovery request will result in consequences which objectively suggest a 'chilling' impact on associational rights." *Id.* "This *prima facie* showing requires [the claimant] to demonstrate that enforcement of the discovery requests will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of,

the members' associational rights." *Id.* For both avenues, however, Plaintiff must show concrete

and unavoidable consequences of disclosure, in other words, an ***actual realized*** effect;

speculative "concern" is insufficient. *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d

470, 491 (10th Cir. 2011) (stating the court has "not held that one single unsworn statement is

sufficient. Rather, we have held that a party claiming a First Amendment chilling affect meets its

burden by submitting, for example, affidavits which describe harassment and intimidation of a

group's known members, and the resulting reluctance of people sympathetic to the goals of [the

group] to associate with [it] for fear of reprisals."). "If the *prima facie* showing is made, the

burden shifts to the government to show it has a sufficiently compelling need for the information

that outweighs the other party's interest in keeping it private." *FOP*, 668 F. Supp. 3d at 386.

Here, Plaintiff has failed to prove either membership impact or chill effect.

### a. *Membership impact.*

Plaintiff has not produced a declaration of any member of SJP-Pitt to state that they have

considered leaving the organization because of potential disclosure; nor has Plaintiff produced a

declaration of a prospective member of the organization who has not joined the organization

because of possible disclosure.

Furthermore, the evidence that Plaintiff did provide is insufficient. Like the privilege

claimant in *In re Motor Fuel*, Plaintiff has submitted only a single declaration in support of its

assertion of associational privilege. Plaintiff's single declaration is "ambiguous, appearing to

reflect [Plaintiff's co-president]'s sense of unfairness in having to share" Plaintiff's documents.

*See In re Motor Fuel*, 641 F.3d at 491; Pl.'s Decl. at *passim*. Further, the declaration is filled

with speculative "concerns" and "fears," mostly about the possible disclosure of members'

identities. *See* Pl.'s Decl. at ¶¶ 22-31, 33-37. While Plaintiff's co-president has declared that she

is "certain" that disclosure of communications would reduce the amount of participation in SJP-Pitt and that disclosure would "damage [Plaintiff's ability to recruit and retain members," *see* Pl.'s Decl. at ¶¶ 5, 15, this is no more than a legal conclusion dressed up as a factual assertion. Plaintiff has produced no real evidence to demonstrate that it will lose membership if the discovery is provided. Instead, Plaintiff has simply recited the steps that some of its members have taken to hide their identities. *See id.* at ¶¶ 14, 17-21.

Plaintiff's evidence is also circular: its co-president states that "I am concerned that Pitt administrators would use the requested information to initiate disciplinary actions against our organization, or individual members, for engaging in protected First Amendment activities. Indeed, we are already in court in this lawsuit alleging that Pitt has retaliated against us because of our political views." Pl.'s Decl. at ¶ 23. But Plaintiff's underlying allegations – the burden of which it has to prove to prevail in the case – cannot be Plaintiff's proof of the basis of its assertion of associational privilege at this preliminary stage. Furthermore, any concern about disciplinary actions as to *individual* members is unfounded because Plaintiff has not alleged, nor has Pitt taken, any such action against individual members of SJP-Pitt.

Plaintiff also points to alleged threats from third-party groups, but any concern about third-party groups can be addressed through a protective order precluding public disclosure of information learned through discovery in this matter; Plaintiff has effectively conceded that attorneys-eyes-only production would sufficiently address this concern. *See* Pl.'s Memo at 5 n.1. Nor has Plaintiff offered to produce the substance of the communications with member-identifying information redacted; instead, Plaintiff seeks to apply the privilege as a total bar to access for contemporaneous, relevant communications.

Further, Plaintiff's alleged concerns and fears about the disclosure of its members'

identities is inconsistent with its own actions. SJP-Pitt regularly hosts events and engages in public demonstrations around campus, in the process disclosing its member's identities, political views, and membership in, or at the very least association with, Plaintiff. In fact, in discovery in this matter, Plaintiff has produced photographs of its activities and demonstrations, many of which depict the faces – and therefore the identities – of many of its members.[1] *See* Exhibit 2. To the extent that any privilege *ever* attached to the documents withheld by Plaintiff, their public demonstrations and disclosure of photographs exposing their identities in this very action, constitutes a waiver of any privilege claimed on the basis of protecting identities. *See Kisser v. Coal. for Religious Freedom*, No. 95-MC-0174, 1995 WL 422786, at *2 (E.D. Pa. July 13, 1995) (ruling that disclosure of some aspects of involvement in association waived privilege); *Minter v. City of Aurora, Colorado*, No. 20-CV-02172-RMR-NYW, 2021 WL 5067593, at *11 n.9 (D. Colo. Sept. 29, 2021) (same).

This inconsistency in Plaintiff's own evidence demonstrates that Plaintiff's claimed fear of membership disclosure is a smokescreen. The true reason for Plaintiff's assertion of associational privilege – as Plaintiff admitted in its Declaration, *see* Pl.'s Decl. at ¶ 34 – is that it does not want to produce documents that would impact the positions it has taken in this litigation. That motivation is not a valid basis to withhold documents under the Federal Rules of Civil Procedure. As a result, Plaintiff has failed to meet its burden to make a *prima facie* showing that "enforcement of the discovery requests **will** result in … harassment, membership withdrawal, or discouragement of new members." *See FOP*, 668 F. Supp. 3d at 386 (emphasis

---

[1] Moreover, the issue of protecting student identities has already been addressed by the Court's Scheduling Order at Paragraph 4, in which the parties agreed to obtain consent from student members or otherwise redact responsive information. Dkt. 20 at 2. For SJP-Pitt to now claim that it cannot produce any documents that may contain its members' information disregards the agreement it has already made in this case and submitted to the Court.

added).

### b. *Chill effect.*

Plaintiff has also failed to meet its burden to make a *prima facie* showing that "enforcement of the discovery requests **will** result in … other consequences which objectively suggest an impact on, or chilling of, the members' associational rights." *See FOP*, 668 F. Supp. 3d at 386 (emphasis added). The word "chill" does not even appear in Plaintiff's Declaration. Plaintiff argues that various alleged "harms" "***could*** chill member participation and recruitment, [and] diminish effective advocacy" but not that it **will** have that effect. Pl.'s Memo at 10. But the harms Plaintiff has identified are from the threat of third-parties, which as discussed above, can be easily addressed here; and any imagined harms from the University are not objectively reasonable because no individual member of SJP-Pitt has been the subject of discipline due to the events at issue in this case. Plaintiff, therefore, has no factual basis for its "chill" argument.

Plaintiff's co-president stated that she is "confident" that SJP-Pitt will not be able to fulfill its mission if required to disclose the requested information, Pl.'s Decl. at ¶ 43, but this conclusory assertion is unsupported by any facts. In any event, Plaintiff has cited no case law that states that diminishing "effective advocacy" or hindrance of mission fulfillment is even relevant to the application of associational privilege.

Plaintiff also has argued that filing suit to vindicate First Amendment speech rights does not negate its ability to assert associational privilege. Pl.'s Memo at 10-11. In support of this argument, Plaintiff has cited an inapplicable case, *Familias Unidas v. Briscoe*, 544 F.2d 182, 192 (5th Cir. 1976). In *Familias Unidas*, the United States Court of Appeals for the Fifth Circuit noted that the plaintiffs should not be required to "forfeit that which they seek to protect." 544 F.2d at 192. This conclusion arose from the fact that the plaintiffs in that matter had filed suit

alleging deprivation of their First Amendment *associational* rights and the discovery requests at issue specifically sought the names of those involved in the association. *Id.* at 185, 187. That is not the case here. Plaintiff has not alleged that Pitt has punished or sought to punish members of SJP-Pitt simply for being members of the organization, nor has Plaintiff alleged that Pitt has specifically and independently sought to identify SJP-Pitt's members; this matter concerns Pitt's time, place, and manner restrictions on demonstrations. Plaintiff's argument also overlooks the fact that Plaintiff voluntarily chose to associate with Pitt as a registered student organization and voluntarily subjected itself to Pitts' rules, regulations, ***and oversight***, in exchange for a variety of benefits. The cases Plaintiff relies upon involve parties at arms' length. As a result, for a variety of reasons *Familias Unidas*, therefore, has no bearing or application on this matter other than to serve as the perfect foil to demonstrate the difference between a reasonable well-founded assertion of associational privilege and Plaintiff's unreasonable and unfounded assertion here.

Because Plaintiff has not adduced facts to support its assertion of the associational privilege, the Court should deny its Motion.

### 2. Plaintiff Has Waived Any Associational Privilege by Communicating with Third Parties.

Even if Plaintiff had met its burden to make a *prima facie* showing in support of associational privilege for its internal communications, such a privilege surely does not extend to communications with people outside of the organization. Otherwise, the privilege would be entirely unbounded. And by communicating associational information to third parties, Plaintiff has effected a subject matter waiver of any privilege that might have applied to its internal communications.

Associational privilege, like all privileges, can be waived. *See Kisser v. Coal. for Religious Freedom*, No. 95-MC-0174, 1995 WL 422786, at *2 (E.D. Pa. July 13, 1995). "In

general, a party forfeits a privilege when he exposes the privileged evidence." *Id.* (citing *United States v. Salerno*, 505 U.S. 317, 112 S.Ct. 2503, 2508 (1992) (citations omitted); *see also Minter v. City of Aurora, Colorado*, No. 20-CV-02172-RMR-NYW, 2021 WL 5067593, at *11 n.9 (D. Colo. Sept. 29, 2021). In *Kisser*, the defendants sought deposition testimony and documents ***from a non-party*** regarding his involvement with a particular organization, and the non-party objected on the basis of associational privilege. 1995 WL 422786 at *1. The United States District Court for the Eastern District of Pennsylvania found that this non-party individual had both (1) testified about his involvement with the organization, and (2) corresponded with other non-parties in which he acknowledged working with the organization. *Id.* at *2. Consequently, the court found that the non-party had waived associational privilege. *Id.* Associational privilege may also be waived, for example, by disclosing some of the individuals involved in a community, association, or protest, but not all members; any claim of the privilege as to the non-disclosed members is waived by the disclosure of some of the members. *Minter*, 2021 WL 5067593, at *11 n.9.

Plaintiff tries to duck waiver by arguing that its communications to third parties – "allied" organizations, groups, faculty, students, and even persons outside the University community – are also protected by associational privilege. Plaintiff is mistaken. Those communications are not even arguably protected and, in fact, effect a subject matter waiver of Plaintiff's assertion of privilege over its internal documents and communications as well. *See Kisser*, 1995 WL 422786, at *2; *Minter*, 2021 WL 5067593, at *11 n.9.

Plaintiff's withheld communications include:

- Discussions with ***non-member*** "supporters" about "planning or discussing potential or actual events or social media posts," Pl.'s Decl. at ¶10;

- Discussions "about events, opinions, and ideas" some of which involved "allies from

*other organizations*," *id.* at ¶¶ 9, 11-12 (emphasis added);

- Discussions involving "SJP-Pitt board members *acting in other capacities*, including *on behalf of other non-University-registered organizations*. Sometimes SJP-Pitt partnered on those events, but other times the SJP-Pitt board members were *acting purely as individuals or as members of the other organizations*," *id.* at ¶ 13 (emphasis added); and

- Discussions about "potentially impactful strategy disputes within SJP-Pitt and *between SJP-Pitt and allied groups*," *id.* at ¶ 35 (emphasis added).

Plaintiff, therefore, discussed its organizational strategy with third-parties.

Plaintiff has cited only a single unreported case which they argue supports their extension of associational privilege beyond the bounds of the organization: *Democratic Nat'l Comm. v. Ariz. Sec'y of State's Office*, No. CV-16-01065-PHX-DLR, 2017 WL 3149914, at *2-3 (D. Ariz. July 25, 2017) ("*DNC*").[2] *See* Pl.'s Memo at *passim*. Plaintiff has argued that *DNC* stands for the rule that associational privilege extends to "communications with strategic partners that could 'risk[] revealing the viewpoints, political associations, and strategy of such partners.'" *Id.* at 6. That was not a statement of the holding, or even a statement *by the court*. That statement was made by the privilege claimant's declarant and recited by the court in its discussion of the contents of that declaration. *DNC*, 2017 WL 3149914, at *2. That declarant also averred that those communications contained information about proprietary technology, modeling, and analyses that was "highly confidential" and had been "created at considerable expense." *Id.* at *2-3. The privilege claimants, therefore, also asserted a trade secrets and propriety information privilege claim. Noting that the rival political party, the Arizona Republican Party, was a party to the litigation, the court ultimately concluded that the defendants had not demonstrated a

---

[2] Contrary to Plaintiff's intent to suggest that the United States Court of Appeals for the Tenth Circuit has concluded that a group's lobbying efforts are protected by associational privilege, the Tenth Circuit did not so rule. *See* Plaintiff's Memo at 6; *compare In re Motor Fuel*, 641 F.3d 470 at 491-92.

sufficient need for the confidential proprietary information to overcome the privilege. *Id.* at *3. The court's decision was made on the basis of the proprietary information asserted, rather than associational privilege. None of those circumstances are present here.

Case law from *this* circuit treats disclosure of potentially privileged information as waiver of that information, which makes logical sense. *See Kisser*, 1995 WL 422786, at *2. "Parties may forfeit a privilege by exposing privileged evidence." *Salerno*, 112 S.Ct. at 2508. If a client reveals information to someone other than their lawyer, that information is not protected by the attorney-client privilege. The same is true for associational privilege – if association information is shared outside the association, it is not privileged and any privilege that may have existed has been waived. *See id.*; *Kisser*, 1995 WL 422786, at *2; *Minter*, 2021 WL 5067593, at *11 n.9.

Here, Plaintiff has communicated with various third parties – "allied" organizations, groups, faculty, students, and even non-Pitt community persons. Pl.'s Decl. at ¶¶ 9-12, 35; Plaintiff's Privilege Log. In some of those instances, SJP-Pitt members and leadership were not even acting in their capacity as members of SJP-Pitt. Pl.'s Decl. at ¶ 13. Plaintiff and its members had no reasonable expectation of associational privacy when exposing association information beyond the association. *See Salerno*, 112 S.Ct. at 2508; *Kisser*, 1995 WL 422786, at *2; *Minter*, 2021 WL 5067593, at *11 n.9. Communications to persons outside of SJP-Pitt are not protected by associational privilege because, by definition, they have been made ***outside*** the association. *See Salerno*, 112 S.Ct. at 2508; *Kisser*, 1995 WL 422786, at *2; *Minter*, 2021 WL 5067593, at *11 n.9. Plaintiff's construction of the privilege is overbroad and should be rejected.

### 3. The Defendants have a Sufficiently Compelling Need for Plaintiff's Withheld Documents.

Plaintiff has argued that Defendants lack a compelling need for the requested documents

because they are not relevant to the issues before the Court. Pl.'s Memo at 12-13. But the cases relied upon by Plaintiff do not support its position.

In *FOP*, the expression at issue concerned the use of the "Thin Blue Line American Flag" in general and its incorporation in a police association logo. *FOP*, 668 F. Supp. 3d at 380-81. The defendant township instructed the police association to change its logo; when the association refused, the township responded by adopting the policy at issue, which banned the display of the Thin Blue Line American Flag. *Id.* at 381. The township had not yet enforced the policy when suit was filed. *Id.* at 380-383. The discovery requests at issue, for which the court granted a protective order, concerned communications regarding: (1) the adoption and incorporation of the Thin Blue Line American Flag into the logo; (2) the policy at issue; and (3) the decision to file the lawsuit, exchanged between the aligned plaintiff associations. *Id.* at 384-85. The plaintiffs did not object to discovery of the following communications: (1) those between the aligned plaintiff associations regarding the policy at issue and plans to display the Thin Blue Line American Flag; and (2) those exchanged between members of the associations and third-parties regarding the policy at issue, plans to display the Thin Blue Line American Flag, *and* commencement of the lawsuit. *Id.* at 383-84; Notice of Rule 30(b)(6) Designee Deposition, *FOP*, No. 2:23-cv-00332 (E.D. Pa. March 23, 2023) (ECF Nos. 25-1, 25-2). The *FOP* plaintiffs evidently understood that associational privilege does not extend beyond the association, whether to "allied" groups or persons or not. The court concluded that the relevance of the communications regarding the adoption of the logo and the policy at issue did not outweigh the privilege. *FOP*, 668 F. Supp. 3d at 397. The court concluded that the request for inter-association members' communications, one of which had 40,000 members, was not proportional to the case. *Id.* at 398.

This case is of course very different. First, the policies at issue here predate the expression at issue and were not enacted in response to the expression. Second, because the policy at issue had not been enforced, the *FOP* plaintiffs' challenge was a facial challenge only. Here, Plaintiff has alleged both facial challenges *and as-applied* challenges. These distinctions are critical because communications about expression made prior to the enactment of a policy obviously have limited relevance to the facial challenge of that policy. Plaintiff has also conceded that the facial vagueness challenge is not relevant for purposes of the preliminary injunction, which is the only discovery in which the parties are currently engaged. May 27 Tr. at 28:3-5 (Plaintiff's Counsel: "If [Pitt] lift[s] the suspension, then [Plaintiff] do[es]n't need the preliminary injunction. We could probably convert all this to summary judgment and really relax."); Scheduling Order at ¶ 1 ("The scope of discovery shall be limited to the subject matter of Plaintiff's Motion for Preliminary Injunction.").

Communications about expression when the policy affecting that expression is known, however, is relevant to an as-applied challenge of that policy. An as-applied vagueness challenge will succeed if, "under the facts of the particular case" and "under a reasonable construction of the statute, the conduct in question is [not] prohibited." *United States v. Naghani*, 361 F.3d 1255, 1259–60 (9th Cir. 2004) (quoting *United States v. Agront*, 773 F.3d 192, 195 (9th Cir. 2014)). Consequently, Plaintiff's communications about their understandings of the policy, discussions they had with administrators about how to understand the policies, and the like, are relevant to whether Pitt's enforcement of policies was reasonable. Plaintiff's bold claim that "the only evidence relevant to resolving SJP-Pitt's free speech claims is the evidence that the University possessed at the time it initiated the disciplinary proceedings and imposed the interim suspension" is unreasonably narrow.

For example, an admission by Plaintiff that it knew its "Study-In" in Pitt's Library was not allowed under Pitt's policies, and that Plaintiff deliberately chose to violate that policy any way, is relevant to whether Pitt's enforcement of its policy precluding demonstrations in the Library was reasonable. *See* Pl.'s Prelim. Inj. Br., at 3-4 (ECF No. 4); Complaint at Exhibit 9. An admission by Plaintiff that it intended to interfere with and disrupt Pitt's conduct review process when it sent its "Open Letter" demanding dismissal of the disciplinary charges against it directly to the panel adjudicating those charges is relevant to whether Pitt's enforcement, of its policy precluding interference with and obstruction of the disciplinary process, was reasonable. *See* Pl.'s Prelim. Inj. Br., at 4 (ECF No. 4); Complaint at Exhibit 17 at 17-20 (¶¶ 42-43). Contemporaneous communications describing the subject events as they unfolded would be highly relevant to determining what actually occurred, and therefore whether Pitt's contemporaneous responses were reasonable. Communications describing event planning are also relevant to the irreparable harm prong of the Court's analysis on Plaintiff's Motion for Preliminary Injunction. (Plaintiff's argument on this point appears to focus solely on the relevance of this evidence to the "likelihood of success on the merits" prong.) As yet another example, an admission by Plaintiff reflecting awareness, consideration, and discussion of distinguishing characteristics between its actions and the actions of other organizations are relevant to whether Pitt engaged in viewpoint discrimination. *See* Pl.'s Prelim. Inj. Br., at 3-4 (ECF No. 4); Complaint at Exhibits 14-15. This list is, of course, non-exhaustive.

These facts are not "*post hoc*" justifications or the type of "concerns about phantom constitutional violations" contemplated by the Supreme Court in *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 (2022) that should not be considered. The documents sought by Pitt are highly relevant and material to Plaintiff's claims.

Plaintiff has not argued that any less intrusive means to obtain these documents exists. Plaintiff thereby concedes that there are not; there is a single source of this information – Plaintiff. Even if Plaintiff has met its *prima facie* burden to assert associational privilege, Pitt has demonstrated a compelling need sufficient to defeat that privilege. This Court, therefore, should deny Plaintiff's Motion and order production of all withheld documents.

**B. Plaintiff has Waived Any Attorney-Client Privilege, and Professor Lobel has Waived Any Work Product Privilege, that May have Attached to Professor Lobel's Email Communications.**

"Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991). "A communication is only privileged if it is made 'in confidence.'" *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007) (internal quotations and citations omitted). "The work product doctrine is governed by a uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003).

Courts around the country have fashioned a four-factor test to determine whether an employee has a reasonable expectation of privacy. That test asks:

> (1) does the [employer] maintain a policy banning personal or other objectionable use, (2) does the [employer] monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the [employer] notify the employee, or was the employee aware, of the use and monitoring policies?

*Eastman v. Thompson*, 594 F. Supp. 3d 1156, 1178 (C.D. Cal. 2022) (quoting *Doe 1 v. George Washington Univ.*, 480 F. Supp. 3d 224, 226 (D.D.C. 2020) and *In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247, 257 (Bankr. S.D.N.Y. 2005)). "No one factor is dispositive. The question of

privilege comes down to "whether the [employee's] intent to communicate in confidence was objectively reasonable." *In re Info. Mgmt. Servs., Inc. Deriv. Litig.*, 81 A.3d 278, 287 (Del. Ch. 2013). "An outright ban on personal use would likely end the privilege inquiry at the start." *Id.*

Professor Lobel has conceded that 17 emails he exchanged with Plaintiff preceded work directly on the litigation. Lobel Decl. at ¶ 22. Those emails, exchanged prior to the formation of any attorney-client privilege, are not privileged, full stop.

More broadly, Pitt's policies make clear that Plaintiff and Professor Lobel were using Pitt resources against Pitt policy and had no expectation of privacy. Pitt's Faculty Handbook states that "[u]se of University resources for personal, non-University purposes is generally not permitted." Pitt's Faculty Handbook also states in its Computer Resources – Access and Use policy ("CRAU") that University resources can be used by:

- Students, faculty, and staff conducting instructional, research or administrative activities.

- Organizations whose use of such services is for a University-sponsored and recognized public service. . . .  The use of such services must also be approved by the Director of Computing Services and Systems Development (CSSD).

- Faculty or staff under professional consulting arrangements, provided: (1) an application for services is approved by the Director of CSSD, (2) an external account Computer Account is established, and (3) a contractual arrangement is entered into with CSSD.

*See* ECF No. 33-7 at 22.  The CRAU also states that "[e]lectronic communications resources such as e-mail . . . may only be used for University-related activities." *Id.*

The CRAU also incorporates University Policy AO 10, titled "Access to and Use of University Computing Resources," ("Policy AO 10").  ECF No. 33-7 at 26. Policy AO 10, applies to faculty, students, and student organizations using Pitt's computing resources. *See id.* This policy's "User Expectations of Privacy" section states:

In the normal course of events, Data transferred across PittNet and stored on University Computing Resources is not subject to surveillance by the University. ***As the owner of University Computing Resources, however, the University may need to or be legally required to access information stored on those Resources***.  . . .  Accordingly, users of University Computing Resources and PittNet should be aware that under certain limited circumstances, ***the University may access or provide others with access to any Data, including Personal Data, stored on its systems***. Situations that may require access to this information, include, but are not limited to:

- ***Compliance with other University Policies***;
- When a user has separated from the University, dies, or becomes incapacitated;
- ***In response to a subpoena, court order, or search warrant for an ongoing or pending criminal investigation or civil action*** . . . .

*Id.* at 28-29 (emphasis added).

Suing the university which one attends or by whom one is employed is not a university purpose or University-related activity for which use of Pitt-owned computing and electronic communications resources may be used. *See* CRAU; Policy AO 10. Professor Lobel has conceded that he should not have used his Pitt-owned email and he specifically created a non-Pitt email for this case, before this discovery issue arose. May 27 Transcript at 21:10-12; Lobel Decl. at ¶¶ 7, 14. Yet, Professor Lobel communicated at length with Plaintiff in this matter using his Pitt-owned email. Plaintiff was surely aware of the email address with which they were communicating and have presented no evidence that they were surprised by this fact. Professor Lobel has not presented any evidence that he obtained approval for such use of his University email account. *See* CRAU. Plaintiff's argument, therefore, fails under the first test factor of whether Pitt maintains a policy banning personal use of university communication resources. *See, e.g., Eastman*, 594 F. Supp. 3d at 1178. That failure ends the privilege inquiry at the start, and Plaintiff and Professor Lobel had no expectation of privacy in their communications over University email systems that violated Pitt policy in the first place. *See In re Info. Mgmt. Servs.*, 81 A.3d at 287–88. Further, Professor Lobel had no expectation of privacy in his alleged work

product that was communicated over University email systems in furtherance of the policy-violating conflict of interest that he created between himself and his employer. *See id.* The Court can end its analysis there, but the remaining test factors do not weigh in Plaintiff's favor, either.

The second factor asks whether the employer monitors the use of the employee's computer or email. *See, e.g., Eastman*, 594 F. Supp. 3d at 1178. Policy AO 10 make clear that the University has the right to do exactly that. Plaintiff claims that this is limited only to certain circumstances and baselessly dismisses the applicability of any of the circumstances laid out in the Policy under which the University may choose to access University email accounts. But the very first circumstance identified in the Policy is "[c]ompliance with other university policies." Plaintiff argues that Pitt was not "assessing his compliance with University policies when it accessed the materials." Pl.'s Memo at 18. Plaintiff seems to forget that this entire action arises from assessing Plaintiff's lack of compliance with the University's policies. Further, as demonstrated above, Plaintiff and Professor Lobel did not comply with University policy when communicating about their claims against the University on University-owned resources. Additionally, the circumstances make clear that compliance with legal process is a second basis for the University to access the emails. Plaintiff filed this suit and hailed Pitt into court, requested expedited discovery, and then served Requests for Production on Pitt that obligated it to "produce ***all responsive documents and electronically stored information ("ESI") that are in its possession, custody, or control***…." *See* Exhibit 3 at 2 (emphasis added). Even if this circumstance has not been fulfilled already, it can be by this Court's order denying Plaintiff's Motion for Protective Order. The second factor in this analysis, therefore, also weighs against Plaintiff.

The third factor asks whether third parties have a right of access to the computer or

emails. *See, e.g., Eastman*, 594 F. Supp. 3d at 1178. Policy AO 10 makes clear that a third party, *i.e.* the University, retains the right to access communications using its resources.[3] ECF No. 33-7 at 28-29. Plaintiff and Professor Lobel, therefore, were well aware that a third party may access their communications for any number of reasons. The third factor, therefore, weighs against Plaintiff.

The fourth factor asks whether the Pitt notified Professor Lobel or Plaintiff of Pitt's policies, or were Plaintiff and Professor Lobel otherwise aware of Pitt's policies. Professor Lobel was clearly aware as he has introduced the Faculty Handbook in support of Plaintiff's Motion, containing and referencing all the relevant policies. Plaintiff and Professor Lobel were also notified as Pitt maintains its policies for public access on its website. *See* https://www.policy.pitt.edu/sites/default/files/Policies/01Administrative_and_Organization/Policy_AO_10.pdf (containing Policy AO 10). Pitt, therefore, notified Plaintiff, and Plaintiff was at least constructively aware, and Professor Lobel was undoubtedly aware, and should have advised his client, Plaintiff, of Pitt's policies. The fourth and final factor, therefore, also weighs against Plaintiff.

Accordingly, no privilege ever attached to the emails sent to or from Professor Lobel's University account.

Even if Plaintiff can establish an expectation of privacy sufficient for the attorney-client privilege to have attached to the emails, Plaintiff's and Professor Lobel's continued use of Pitt email servers constitutes a waiver of that privilege. Plaintiff's argument that it and Professor Lobel's communications were inadvertent ignores that simple reality that everyone involved

---

[3] To the extent that the Court interprets "third parties" to mean yet additional parties beyond the University, Policy AO 10 also makes clear that third parties do have a right of access in various circumstances. *Id.*

knew they were communicating on Pitt servers and the fact that both Plaintiff and Professor Lobel realized at some point that they should not be doing so. Professor Lobel did not accidentally or inadvertently access his University-provided email account and did not accidentally or inadvertently type out emails. Nor did the Plaintiff or Plaintiff's co-counsel accidentally or inadvertently direct its emails to Professor Lobel's University email account. These were purposeful acts. They may not have been wise acts, but they were not inadvertent.

When communicating on Pitt servers, (1) they took **no precautions** to protect the privacy of their communications, (2) communicated ***286*** times, (3) about case strategy, and (4) did nothing to rectify it until notified by Pitt, despite creating other non-Pitt email addresses that they used at times for purposes of this matter. The waiver factors weigh against Plaintiff as well. *See Nesselrotte v. Allegheny Energy, Inc.*, No. 06-01390, 2008 WL 11511505, at *2 (W.D. Pa. May 6, 2008) (stating the waiver factors).

Plaintiff accuses Pitt of "rummaging around in Professor's Lobel's private digital briefcase." Pl.'s Memo at 22. "In truth, sending a message over [Pitt's] e-mail system was like placing a copy of that message in [Pitt's] files." *See In re Asia Glob. Crossing*, 322 B.R. at 259. The University did not hack into a protected account – Professor Lobel placed these documents on the University's own system. Professor Lobel's protestations based on his speculation as to other professors and clinicians who have not submitted declarations in this matter (and whom he does not contend were acting directly adversely to the party on whose servers they were depositing their messages) does not change that fact. The Court, therefore, should deny Plaintiff's Motion and instruct Pitt to review Professor Lobel's communications in its possession, custody, and control and produce them in the ordinary course like other responsive documents.

### C.  Plaintiff has Failed to Preserve Discoverable Electronically Stored Information.

Rule 37 of the Federal Rules of Civil Procedure allows the Court to presume that lost electronically stored information was unfavorable to the party that failed to preserve that information or may dismiss claims based on such information. Fed. R. Civ. P. 37(e). Plaintiff has asserted that it communicated through automatically-deleting messaging apps "long before [it] even thought about a lawsuit against Defendants." Pl.'s Decl. at ¶ 38. Plaintiff has, however, not provided any dates by which to assess when a lawsuit was first contemplated, and therefore when the obligation to preserve began. Defendants regret that they cannot address this issue more fully, but that inability is caused by Plaintiff's failure to provide much information about the messages that it failed to preserve.  When were they sent?  By whom and to whom?  What topics did they address?  How many messages have been lost?  What steps, if any, has Plaintiff made to attempt to recover the lost messages?

Plaintiff has also ignored the fact that it apparently used non-University email when communicating with counsel and has been silent as to whether it used that same email to communicate with others. Pl.'s Memo at 17. Plaintiff has not asserted that email account automatically deleted messages, and any responsive messages in that account must be produced. Plaintiff's failure to preserve and produce evidence is a serious matter, and, pursuant to Rule 37, the Court should presume that evidence is unfavorable for Plaintiff and issue as show cause order as to the appropriate remedy once it has made a finding of spoliation.

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court DENY Plaintiff's Motion for Protective Order.

Dated: June 4, 2025                    SAUL EWING LLP


                                       By: /s/ *Alexander R. Bilus*

                                       Joshua W. B. Richards
                                       1500 Market Street
                                       Centre Square West, 38th Floor
                                       Philadelphia, PA 19102
                                       Phone: 215-972-7737
                                       Joshua.Richards@saul.com

                                       Alexander R. Bilus
                                       1500 Market Street
                                       Centre Square West, 38th Floor
                                       Philadelphia, PA 19102
                                       Phone: 215-972-7177
                                       Alexander.Bilus@saul.com

                                       Peter C. Nanov*
                                       1919 Pennsylvania Avenue, N.W.
                                       Suite 550
                                       Washington, D.C. 20006-3434
                                       Peter.Nanov@saul.com

                                       *admitted pro hac vice*

                                       *Counsel for Defendant University of Pittsburgh*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Defendants' Opposition to Plaintiff's Motion for Protective Order was served via electronic mail on the following counsel of record:

Kirsten Marie Hanlon, Esquire
ACLU of Pennsylvania
P.O. Box 60173
Philadelphia, PA 19102
khanlon@aclupa.org


Witold J. Walczak, Esquire
ACLU of PA
313 Atwood Street
Pittsburgh, PA 15213
vwalczak@aclupa.org


Jules Lobel, Esquire
6938 Rosewood Street
Pittsburgh, PA 15208
jll4@pitt.edu


Solomon Furious Worlds, Esquire
ACLU of PA
Legal
P.O. Box 60173
Philadelphia, PA 19102
sfworlds@aclupa.org

*Attorneys for Plaintiff*


Dated: June 4, 2025                                        /s/ *Peter C. Nanov*
                                                          Peter C. Nanov