# Exhibit 4

Division of Student Affairs
Office of Student Conduct
907 William Pitt Union
3959 Fifth Avenue
Pittsburgh, PA 15260
412-648-7910
Fax: 412-648-1004
usjs@pitt.edu

EXHIBIT
Nabors 15

Exhibit 4

# CONFIDENTIAL

## February 4, 2025

### CONDUCT BOARD RECOMMENDATION FORM

Regarding an incident that occurred beginning December 9, 2024, involving respondent Students for Justice in Palestine we the Level II Conduct Board find the following:

19. Violates or assists in the Violation of any policy, procedure or guideline of the University including, but not limited to the following:
    k. Any other policy, procedure, or guideline of the University whether or not listed in the Code. (https://library.pitt.edu/library-space-use-policy)

    ☐ Responsible       ☐ Not Responsible

36. Fails without just cause to comply with the lawful direction of a University official, or other lawful authority having just cause and acting in the performance of their duties and authority.

    ☐ Responsible       ☐ Not Responsible

### COMPLAINANT EVIDENCE AND TESTIMONY

The following is a summary of evidence, including any testimony or documentary evidence that the complainant and/or their witness/witnesses presented during the hearing.

**EVIDENCE**:
1. [LIST]

**TESTIMONY**:
The Complainant in this case is the University of Pittsburgh. Representing the university as Complainant are David Day, Associate Director of Student Organizations and Advising, working closely with registered student organizations and also DaVaughn Vincent-Bryant, Director of Student Involvement.

The Complainant alleges that the Respondent violated Codes #19 and #36 by hosting an unsanctioned event in Hillman Library, herein referred to as "library," over a four-day period during finals week (Fall 2024). The Complainant references an evidence packet, which includes images promoting the Respondent's events and photos from the events themselves. Additionally, the Complainant provides evidence of correspondence with university leadership regarding the alleged violations.

The Complainant asserts that the events disrupted library operations and required university resources to intervene. Despite initial correspondence and direct intervention, the Respondent allegedly continued to hold events in library after being informed about the sanctioned event requirements in compliance with University Library System (ULS) policies. The Complainant emphasizes that this conduct referral strictly pertains to Codes #19 and #36 and is not an attempt to silence free speech.



Division of Student Affairs
Office of Student Conduct
907 William Pitt Union
3959 Fifth Avenue
Pittsburgh, PA 15260
412-648-7910
Fax: 412-648-1004
usjs@pitt.edu

The Respondent in this case is Student for Justice in Palestine at Pitt, herein referred to as "SJP." Representing SJP as Respondent are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ –both Undergraduate Students at the university and serving as co-presidents of SJP.

The Respondent states that the alleged event was not coordinated by their organization but rather by independent student activists. The Respondent views the university's response as an affront to academic freedom and free speech for these independent students. Additionally, the Respondent believes the university's actions were disproportionate to the situation and influenced by bias against pro-Palestinian activism. The Respondent asserts that other students have previously used the same space and continues to refute all allegations, noting that they have never admitted to any wrongdoing.

The Respondent argues that their social media posts do not indicate coordination or promotion of the event but rather serve as acknowledgment of independent students' actions, which align with their organization's values. They emphasize that acknowledgment does not equate to co-sponsorship. Furthermore, the Respondent contends that the Complainant has not clearly defined what constitutes an "event" in this context.

The Respondent believes that, since the alleged incidents, the university has been collecting evidence in retaliation against their organization. They feel the process is imbalanced and that the alleged code violations are vague and lack specificity. The Respondent maintains that the incident remains undefined, and that the Complainant has been unable to provide clarification. They also state that witnesses corroborated those independent students followed university policies and followed administrator directives at the location.

The Respondent argues that this process violates their due process rights, particularly because they were given only six days to prepare for the hearing. Beyond the specifics of this case, they believe that university policies in general infringe upon First Amendment rights.

The Respondent acknowledges that they were in and out of the library during finals week, like most students at that time. However, they assert that they were not present when university administrators and police engaged with the independent students.

The Respondent highlights their prior collaboration with other registered student organizations (RSOs) to plan events, including working with the Student Organization Resource Center (SORC) to coordinate contracts and publicity for officially sponsored events. They believe that this case is being handled differently due to the cause they support and their work in alignment with their organization's mission. The Respondent notes that they hosted a separate event the day before, featuring a poet, which was distinctly different from what transpired in the library.

The Respondent argues that the omission of autonomy in the university's assessment contributes to selective adjudication against their organization. They clarify that the use of "we" in their statements refers to a broader movement rather than a specific group or organization.

The Respondent also references another recent campus event where a guest speaker's presence resulted in students having difficulty traversing campus and accessing their residence halls. They question why the university has treated the first floor of the library differently in this case. Additionally, they cite a witness who stated that other student groups have used the space for "study-ins" and claim that the current issue is rooted in bias against their mission.


Case 2:25-cv-00524-NR   Document 46-7   Filed 07/11/25   Page 4 of 7

**Division of Student Affairs**
**Office of Student Conduct**
907 William Pitt Union
3959 Fifth Avenue
Pittsburgh, PA 15260
412-648-7910
Fax: 412-648-1004
usjs@pitt.edu

Finally, the Respondent references a library employee witness who reported no concerns or disruptions caused by the individual students in question. They assert that the Complainant was unable to provide direct evidence from ULS staff regarding any specific disruptions or concerns that would justify what they view as selective targeting by the university.

The Respondent maintains that the alleged event was not an organized or coordinated effort by their organization but rather the independent actions of unaffiliated students. They argue that the university's response has been disproportionate and selectively enforced due to the nature of their mission. The Respondent contends that the lack of a clear definition of an "event," inconsistencies in policy enforcement, and limited preparation time for the hearing indicate an unfair adjudication process. Ultimately, the Respondent believes that the case against them is based on bias rather than a genuine policy violation and that their due process rights have been compromised.

**WITNESSES:**
*Witness #1: Ruth Mostern, Pitt Faculty*
Witness #1 was present in the library on December 9th. They had learned through an autonomous chat group that a group of students planned to gather in the library during finals week to support one another while studying during a difficult time. Witness #1 recalls receiving a call from this group expressing concern about administrative overreach in the library and decided to arrive between 10 and 11 a.m. Upon arrival, they observed university administrators and police engaging with the students.

Witness #1 does not believe this gathering constituted an "event" and asserts that the students were respectful. While the students had personal belongings with them, Witness #1 did not observe any identifying markers that linked them to a specific group or organizer. They believe the students did not cause any disruption or violate policies, stating that it was the administration that escalated the situation.

Initially, Witness #1 was only observing, but they became involved when administrators began asking students for their IDs.

Additionally, Witness #1 argues that the Respondent's sharing of the autonomous group's choice to have a study-in does not indicate coordination or directive. They compare this to how various groups across campus advertise athletic events, such as football games, without being responsible for coordinating those events.

*Witness #2: Omid Shekari, Pitt Faculty*
Witness #2 was present in the library on December 9th and was surprised by the presence of police. They were confused by directives stating that students could not place signs on tables or use the whiteboards.

Witness #2 recalls speaking with the Complainant and observing that the students were complying with requests to remove signage and whiteboards. However, they did not understand why students were then asked to leave the space entirely.

According to Witness #2, the biggest distraction in the library that day was not the students but the presence of armed police officers. They believe that the real issue stemmed from administrative actions, which they feel were influenced by bias.

*Witness #3: Jonathan Engel, Pitt Staff*



Division of Student Affairs
Office of Student Conduct
907 William Pitt Union
3959 Fifth Avenue
Pittsburgh, PA 15260
412-648-7910
Fax: 412-648-1004
usjs@pitt.edu

Witness #3 works in Hillman Library and was present on December 9th. Upon arriving at work that morning, they observed police officers stationed on the first floor. Witness #3 states that other student groups have used the same space for study-ins in the past and that nothing about this gathering appeared out of the ordinary or disruptive.

They recall witnessing a heated interaction between an administrator and Witness #1, but beyond that, they did not observe anything concerning or disruptive.

On Wednesday morning, Witness #3 encountered a student from the study-in who expressed significant distress about the ongoing police presence. Witness #3 spoke with an officer to affirm the student's concerns.

Additionally, Witness #3 notes that other student groups, including a sorority, have occupied similar non-reservable spaces without issue.

The witnesses consistently describe the gathering as a peaceful study session rather than an organized event. They note that students were respectful and largely compliant with directives, with no clear signs of coordination by the Respondent. All three witnesses' express concerns that the administration's response—particularly the involvement of police—was excessive and escalated the situation unnecessarily. They also highlight past instances where other student groups used the same space without similar intervention. Overall, the witness testimonies suggest that the university's actions were disproportionate and potentially influenced by bias.

**RATIONALE**

We accept as reliable, credible, and relevant the following facts and base our determination regarding responsibility on these facts.

The Complainant asserts that the gathering in the library was an unsanctioned event, while the Respondent and witnesses describe it as an informal study session. Witness #1 explicitly states that this was not an event, and Witness #3 affirms that similar gatherings have occurred in the past without intervention. The lack of a clear and consistently applied definition of an "event" weakens the argument that this specific gathering violated university policies.

Testimonies suggest that other student groups, including a sorority, have occupied the same non-reservable spaces without facing similar enforcement actions. Respondent and Witnesses #2 and #3 question why this specific gathering was treated differently. Witness #2 suggests that the intervention was influenced by bias and not policy enforcement. The perception of selective enforcement raises concerns about equity and consistency in university policy application.

Witness #1 claims that the administration—not the students—escalated the situation. Witness #2 states that students complied with requests to remove signs and whiteboards yet were still asked to leave. Witness #3 describes a tense interaction between an administrator and Witness #1 but notes no disruptive behavior from students. The involvement of police, particularly with weapons, was perceived as excessive and the most disruptive factor.

The Complainant was unable to identify any leadership from the Respondent at the gathering. Respondent asserts that their social media posts acknowledging the gathering do not equate to coordination. Witness #1 draws a comparison to how student organizations may promote athletic events without organizing them. The absence of direct evidence linking the Respondent to the coordination of the gathering raises doubts about their responsibility for the alleged violation.



Division of Student Affairs
Office of Student Conduct
907 William Pitt Union
3959 Fifth Avenue
Pittsburgh, PA 15260
412-648-7910
Fax: 412-648-1004
usjs@pitt.edu

Respondent believes the university has been selectively gathering evidence against them since the incident and that the process is imbalanced. The short preparation time for the hearing raises concerns about fairness in adjudication. Witness #3 notes that at least one student expressed fear regarding the continued police presence, suggesting that the university's actions may have had a chilling effect on student expression.

There is insufficient evidence to conclude that the Respondent coordinated or organized, in part or in whole, an event, regardless of location. However, the Complainant's evidence packet—which includes screenshots of the Respondent's social media account—provides sufficient evidence to suggest that the Respondent promoted or encouraged students to attend a study-in organized by an autonomous group of individuals. While it is recognized that Karin Asher directed the group, "it is your [SJP] obligation to comply with University policies and guidelines when you hold, promote or engage with events," there is little to suggest the Respondent held the event, and it remains vague how promotion or engaging with an event might be connected to a student group—barring that this may not be the case for individual students who entered the space and violate ULS's space usage policy. Further, it is acknowledged in this message that "holding a similar event tomorrow or on additional days will result in immediate referral to the Student Conduct process for individuals involved as well as your student organization;" while clear that the Respondent is engaged in a judicial process, it remains unclear if individuals who were present have been identified and further associated with the Respondent. It would be an inconsistent application of the process if this is in fact the case for a group versus individual students.

The Complainant's evidence lacks specificity in several ways. First, among the Complainant's representatives are two Pitt employees, one of whom was present on the morning of the initial incident. However, much of the evidence packet consists of testimony and communications with another university administrator, Karin Asher. Certain questions remain unanswered, as the Complainant was not included in or privy to those communications. Additionally, images and screenshots of social media posts provide an unclear timeline of events. The evidence appears to focus on an interaction between students and administrators on the morning of Monday, December 9th. According to all testimony, after discussions regarding the use of the non-reservable space, students either complied with instructions or were asked to present IDs and subsequently left.

Additionally, not acknowledged in the complaint are the "concerns" that initiated administrative intervention on the morning of December 9th. Acknowledged by the Complainant were student and ULS staff "concerns" about a presence in library, but the specifics of those concerns were left unanswered. Where there reports about students not being able to us space? Where are these reports motivated by bias and lack of comfortability with free expression by other students in the space?

While it is acknowledged that the "study-in" continued after the initial interaction between students and administrators, the Complainant only mentions its continuation. There is no representation of additional communications or interactions beyond the emails between the Respondent and Asher, and an acknowledgment by Witness #3 that they spoke with a police officer present on Wednesday, December 11th. This interaction did not suggest any disruption or



Division of Student Affairs
Office of Student Conduct
907 William Pitt Union
3959 Fifth Avenue
Pittsburgh, PA 15260
412-648-7910
Fax: 412-648-1004
usjs@pitt.edu

non-compliance, but rather that students were in the non-reservable space. There was no indication of how students continued to use the space—specifically, whether it was for academic purposes. For example, there was no indication that students occupying the space were not studying or otherwise hindering other students who wished to study.

The available facts suggest that the gathering in question may not have constituted a formal event under university policy. The response by university administration, particularly the involvement of police, appears to have escalated rather than mitigated any concerns about disruption. Additionally, inconsistent enforcement of policies and the lack of clear evidence tying the Respondent to direct coordination of the gathering raise questions about bias and selective adjudication. Finally, the handling of the case, including the limited preparation time for the Respondent, raises potential due process concerns.

**SANCTIONING PHASE**

We recommend the following sanction(s) to the Vice Provost for Student Affairs.

**SUPPORTING RATIONALE FOR RECOMMENDED SANCTION(S)**

Below is our summary of how the facts (testimony, history, etc.) support the recommended sanction(s).

| Conduct Board Hearing Officer's Printed Name | Conduct Board Officer's Signature |
|---|---|
| Conduct Board Hearing Officer's Printed Name | Conduct Board Officer's Signature |
| Conduct Board Hearing Officer's Printed Name | Conduct Board Officer's Signature |