IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STUDENTS FOR JUSTICE IN PALESTINE AT PITT, | ) ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | |
| UNIVERSITY OF PITTSBURGH; JOAN GABEL, MARLIN NABORS, KARIN ASHER, DaVAUGHN VINCENT-BRYAN, MATTHEW LANDY, and JAMEY MENTZER, all in their official and individual capacities, | ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. 2:25-cv-00524-NR<br>Judge J. Nicholas Ranjan |
| *Defendants*. | ) ) | |

**JOINT STATEMENT OF UNDISPUTED FACTS**

Pursuant to this Court's July 28, 2025 Scheduling Order, Dkt. No. 43, Plaintiff Students for Justice in Palestine at Pitt's ("Plaintiff" or "SJP-Pitt"), and Defendants University of Pittsburgh ("Pitt" or "the University"), Joan Gabel, Marlin Nabors, Karin Asher, DaVaughn Vincent-Bryan, Matthew Landy, and Jamey Mentzer hereby submit the below Joint Statement of Undisputed Facts for the Court's use and review in consideration of SJP-Pitt's Motion for Preliminary Injunction.

1

**Students for Justice in Palestine at Pitt**

1. Since at least 2009, a group of students at Pitt have maintained an organization named "Students for Justice in Palestine at Pitt," whose purpose and mission is to advocate for justice of the Palestinian people.

2. Student groups on Pitt's campus can register to be a "registered student organization" ("RSO"), a status SJP-Pitt enjoyed until its interim suspension on March 18, 2025.

3. Registered student organizations have access to certain privileges, including, but not limited to, allocation of funds, the ability to reserve on-campus rooms and various indoor and outdoor venues for events through the University event management system (EMS), and access to University communication platforms. A true and accurate copy of Pitt's Registration Guidelines, including privileges of registration, is attached as Exhibit 1 to Plaintiff's Verified Complaint (ECF No. 1-2).

4. SJP-Pitt regularly uses social media platforms, particularly Instagram, to communicate with its members and followers and to announce, advertise and promote events.

5. Since August 2024, and through mid-March 2025, SJP has reserved campus space for at least 43 events, including various demonstrations, at least six on-campus speaker events, and "many more education events," a list of which is attached as Joint Exhibit 1.

**Pitt's Policies**

6. Pitt maintains, or maintained, various rules, policies, and guidelines, including but not limited to:

    a. Student Code of Conduct, a true and correct copy of which is reflected in Defendants' Exhibit 5; and

      b.      2024-2025 Registered Student Organization Handbook, a true and correct copy of which is reflected in Defendants' Exhibit 6.

7. A violation of the Student Code of Conduct is committed when, *inter alia,* a student or registered student organization: "[i]ntimidates, coerces, influences, or attempts to do the same against a person who is participating or has participated in any University process or proceeding."

8. A violation of the Student Code of Conduct is also committed when a student or registered student organization: "[d]isrupts or interferes with the conduct process."

9. At the time of all events relevant to this motion, SJP-Pitt's leadership was familiar with the Student Code of Conduct.

10. At the time of all events relevant to this motion, SJP-Pitt's leadership was familiar with the Registered Student Organizations Handbook.

**SJP-Pitt and the Study-In**

11. SJP-Pitt organized and conducted a "Study-In" that occurred in Pitt's Hillman Library from December 9 through December 12, 2024 ("Study-In").

12. On January 16, 2025, Pitt brought disciplinary charges against SJP-Pitt for violations of University policy alleged to have been committed by SJP-Pitt relating to the Study-In.

**The February Disciplinary Hearing**

13. As part of Pitt's conduct review process, Pitt convened a hearing at which it would be determined whether SJP-Pitt violated university policy relating to the Study-In.

14. That hearing occurred on February 4, 2025.

15. The hearing was moderated by Defendant Matthew Landy, Pitt's Director of Student Conduct, within the Division of Student Affairs.

16. Pitt enlisted a panel of neutral hearing board officers (the "Panel") to hear the arguments and evidence to be presented by both Pitt and SJP-Pitt.

17. Pitt selected this Panel from a pool of hearing board officers based on availability on the date and time of the proposed hearing.

18. The Panel was charged with deciding whether SJP-Pitt violated Pitt policy and, if so, making recommendations regarding any sanction for that violation.

19. The Panel consisted of three individuals employed by Pitt, but not employed within the Student Conduct Office.

20. SJP-Pitt did not have a relationship with any member of the Panel.

21. SJP-Pitt has no basis to believe that any member of the Panel had any improper bias against SJP-Pitt.

22. During the hearing, Pitt presented its case in favor of finding that SJP-Pitt had violated University Policy regarding the Study-In.

23. During the hearing, SJP-Pitt presented its case in favor of finding that SJP-Pitt had not violated University Policy regarding the Study-In. As part of their closing argument, the student representatives urged the panel to think carefully about their decision because people, including lawyers, were watching.

24. At the end of the hearing, the Panel did not announce an outcome.

25. Following the hearing on February 4, 2025 the Panel met via Zoom to deliberate and begin working on a draft conduct board recommendation form, which outlined the testimony presented at the hearing and the hearing officers' rationale.

26. The Panel did not finalize a conclusion and did not complete its deliberations on February 4, 2025.

**SJP-Pitt's "Open Letter"**

27. Late in the evening of February 4, 2025, SJP-Pitt emailed approximately twenty University administrators—including the Chancellor, Provost, Vice Provost, various Deans, hearing moderator Landy, and the three hearing officers who made up the Panel—an Open Letter allegedly signed by approximately 70 university and community organizations, calling on University officials to drop the charges against SJP-Pitt and to change their allegedly antagonistic policies against the organization (the "Open Letter"). A copy of the Open Letter is attached as Plaintiff's Exhibit 8 to Plaintiff's Memorandum of Law in Support of Plaintiff's Revised Motion for Preliminary Injunction (ECF No. 46-11) and as Defendants' Exhibit 4.

28. On February 8, 2025, SJP-Pitt also posted the Open Letter on its public Instagram account. A true and correct copy of the Instagram Open Letter post is attached as Defendants' Exhibit 3.

29. At the time that SJP-Pitt sent the Open Letter, it had not received any notification of a determination by the Panel.

30. All of the Panel members saw the "Open Letter" on the night of February 4, 2025.

31. Very early on February 5, one of the hearing officers wrote to Defendant Landy, objecting to SJP-Pitt's emailing him the Open Letter and to some of the group's comments at the hearing. A true and correct copy of the hearing board member's e-mail is attached as Plaintiff's Exhibit 10 to Plaintiff's Memorandum of Law in Support of Plaintiff's Revised Motion for Preliminary Injunction (ECF No. 46-13).

32. Later that day, on February 5, the Panel reconvened to continue its deliberations.

33. By the end of the hearing officers' second meeting on February 5, they were "pretty far along" in the process of drafting the conduct board recommendation.

34. The draft recommendation form prepared by the hearing officers, at the time they were instructed to pause working on it, stated that the Study-In "may not have constituted a formal event under university policy," the university's response "appears to have escalated rather than mitigated any concerns about disruption", and there appears to be "inconsistent enforcement of policies", which "raise questions about bias and selective adjudication."

35. The following day, February 6, Defendant Marlin Nabors, Associate Vice Provost and Dean of Students at Pitt, instructed the Panel to pause its deliberations because of "concerns raised regarding the potential of undue influence on the [P]anel." A copy of Dean Nabors' email is attached hereto as Joint Exhibit 2.

36. Defendant Nabors paused the deliberations process.

37. On February 10, Defendant Nabors conducted telephone interviews with each hearing officer to ask about the impact of the Open Letter on each of them and the deliberations.

**SJP-Pitt's Interim Suspension**

38. On March 18, 2025, Dean Nabors emailed SJP-Pitt leadership to communicate the University's position that: SJP-Pitt had "improperly engaged in communications to members of the Conduct Hearing Board during their deliberations following the February 4, 2025 … Conduct Hearing;" that such communication was a violation of the Student Code of Conduct; that the then-pending charges arising from the Study-In would be re-initiated as a new proceeding due to SJP-Pitt's action that "irreparably compromise[d] the integrity and credibility of the current

conduct proceeding;" and that SJP-Pitt would be receiving a notice of interim suspension. A true and correct copy of Dean Nabors' email is attached as Defendants' Exhibit 7.

39. On the same day, Jamey Mentzer, Associate Director of Student Conduct, emailed SJP-Pitt leadership to advise that SJP-Pitt had "improperly engaged in communications to members of the Conduct Hearing Board during their deliberations following your February 4, 2025, Level II Conduct Hearing" and, consequently, was being placed on interim suspension of registration. A true and correct copy of Jamey Mentzer's email is attached as Defendants' Exhibit 8. The allegedly improper communications with the hearing officers referred to SJP-Pitt transmitting the Open Letter to the panel hearing officers.

40. SJP-Pitt was given ten days to appeal the interim suspension.

41. SJP-Pitt did not appeal the interim suspension.

42. During the interim suspension, Defendant Nabors attended near-daily meetings with his supervisor, Vice Provost Panzella, to discuss the SJP-Pitt conduct process. Defendant Nabors had not had near-daily meetings with Vice Provost Panzella in any of the other disciplinary proceedings he has handled during his tenure at Pitt.

43. Dean Nabors' tenure at Pitt began in January 2025.

**SJP-Pitt's Current Suspension**

44. On April 8, Defendant Mentzer sent a letter formalizing three sets of new charges against SJP-Pitt. A true and correct copy of Mentzer's letter is attached as Plaintiff's Exhibit 14 to Plaintiff's Memorandum of Law in Support of Plaintiff's Revised Motion for Preliminary Injunction (ECF No. 46-17).

45. The first set of charges simply reinstated the original disciplinary charges related to SJP-Pitt's organizing of the Hillman Library Study-in.

46. The second set of charges in the April 8 letter asserted that SJP-Pitt violated Pitt's Student Code of Conduct Rules 42 and 43, which provide that:

> A Violation is committed when a Student or a Registered Student Organization: . . .
>
> 42. Intimidates, coerces, influences, or attempts to do the same against a person who is participating or has participated in any University process or proceeding.
>
> 43. Disrupts or interferes with the conduct process.

This set of charges relate to SJP-Pitt's sending the Open Letter to the hearing officers.

47. On May 23, 2025, Pitt convened a second disciplinary hearing to determine SJP-Pitt's alleged violations of University policy.

48. Pitt enlisted a moderator unaffiliated with the University for this hearing.

49. Pitt again enlisted a panel of hearing board officers ("the Second Panel") to hear the arguments and evidence to be presented by both Pitt and SJP-Pitt.

50. Pitt selected this Second Panel from the same pool of trained hearing board officers based on availability on the date and time of the proposed hearing.

51. This Second Panel would decide whether SJP-Pitt violated Pitt policy and, if so, make recommendations regarding any sanction or punishment for that violation.

52. The Second Panel also consisted of three individuals employed by Pitt, but not employed within the Student Conduct Office.

53. None of the members of the Second Panel had any relationship with SJP-Pitt prior to the hearing.

54. During the hearing, Pitt presented its case in favor of finding that SJP-Pitt had violated University Policy regarding the Study-In.

55. During the hearing, SJP-Pitt presented its case in favor of finding that SJP-Pitt had not violated University Policy regarding the Study-In.

8

56. SJP-Pitt has no reason to believe that the Second Panel engaged in any retaliation against SJP-Pitt.

57. Pitt initiated new conduct proceedings against SJP-Pitt because the University believed the Open Letter was an attempt to and had the "potential" to influence the hearing officers and to thereby interfere with the conduct proceedings.

58. After hearing the argument and evidence presented by Pitt against SJP-Pitt, and hearing the argument and evidence presented by SJP-Pitt, the Second Panel submitted their conduct board recommendation form, which found, among other things, that by sending its Open Letter to the first hearing Panel demanding that the case be dismissed before an outcome of the case was shared with SJP-Pitt, SJP-Pitt had violated University policy prohibiting "[i]ntimidat[ion], coerc[ion], influenc[ing], or attempt[ing] to do the same against a person who is participating or has participated in any University process or proceeding" and "[d]isrupt[ing] or interfere[ing] with the conduct process. A true and correct copy of the Conduct Board Recommendation Form is attached as Plaintiff's Exhibit 5 to Plaintiff's Memorandum of Law in Support of Plaintiff's Revised Motion for Preliminary Injunction (ECF No. 46-8).

59. The hearing officers found that SJP-Pitt did not falsify information submitted to a University official, but did violate Rules 42 and 43 by "includ[ing] 3 level II hearing officers on email to university leadership . . . with their demands that the case be dismissed before an outcome of the case was shared with respondents."

60. The Second Panel recommended that SJP-Pitt be sanctioned with a suspension of registration until January 1, 2026.

61. Following that finding by the Second Panel, on June 18 Vice Provost Carla Panzella affirmed the hearing officers' recommendation and imposed a suspension on SJP-Pitt

9

only for violating Rules 42 and 43 by sending the Open Letter. The Library Study-In and social media charges resulted in reprimands. The suspension was for six months, but Ms. Panzella allowed that suspension to begin on March 18, the date of the interim suspension, so it would expire on September 18, 2025, rather than January 1, 2026. Additionally, Ms. Panzella made an allowance that SJP-Pitt's leadership can meet and can plan and reserve space for campus events, even while suspended, after SJP-Pitt completes educational conversations with University staff to discuss Pitt's expectations of its registered student organizations. A true and correct copy of the formal letter advising SJP-Pitt of the outcome of the May 23, 2025 is attached as Plaintiff's Exhibit 18 to Plaintiff's Memorandum of Law in Support of Plaintiff's Revised Motion for Preliminary Injunction (ECF No. 46-21).

      62.     SJP-Pitt was given ten days to appeal its suspension.

      63.     SJP-Pitt did not appeal.

Dated: July 28, 2025                        Respectfully submitted,

By: *s/ Witold J. Walczak*
Witold J. Walczak
PA Bar No. 62976
Ali Szemanski
PA Bar No. 327769
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
P: 412-681-7864
F: 267-573-3054
vwalczak@aclupa.org
aszemanski@aclupa.org

Solomon Furious Worlds
PA Bar No. 333677
Kirsten M. Hanlon*
PA Bar No. 336365
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
P: 215-592-1513
F: 267-573-3054
sfworlds@aclupa.org
khanlon@aclupa.org

Jules Lobel, Esq.
NY Bar No. 1262732
P.O. Box 81918
Pittsburgh, PA 15217
P: 412-334-1379
juleslobel73@gmail.com

\* Pro hac vice

*Counsel for Plaintiff*

Dated: July 28, 2025

SAUL EWING LLP

By: *s/ Joshua W.B. Richards*
Joshua W. B. Richards
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA 19102
Phone: 215-972-7737
Joshua.Richards@saul.com

Alexander R. Bilus
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA 19102
Phone: 215-972-7177
Alexander.Bilus@saul.com

Peter C. Nanov*
1919 Pennsylvania Avenue, N.W.
Suite 550
Washington, D.C. 20006-3434
Peter.Nanov@saul.com

*\*admitted pro hac vice*

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Joint Statement of Undisputed Facts was served via electronic mail on the following counsel of record:

Kirsten Marie Hanlon, Esquire
ACLU of Pennsylvania
P.O. Box 60173
Philadelphia, PA 19102
khanlon@aclupa.org


Witold J. Walczak, Esquire
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
vwalczak@aclupa.org


Jules Lobel, Esquire
6938 Rosewood Street
Pittsburgh, PA 15208
jll4@pitt.edu


Solomon Furious Worlds, Esquire
ACLU of Pennsylvania
P.O. Box 60173
Philadelphia, PA 19102
sfworlds@aclupa.org

*Attorneys for Plaintiff*


Dated:  July 28, 2025                         *s/Alexander R. Bilus*
                                              Alexander R. Bilus