# DEFENDANTS'

# EXHIBIT 5

# University of Pittsburgh



Defendant's 30(b)(6)
Deposition Exhibit

Case No. 2:25-cv-00524-NR

**DX 5**



# Student Code of Conduct

## Effective August 1, 2024

*Division of Student Affairs*

www.studentaffairs.pitt.edu/conduct

1

# Contact Information

**For questions or information regarding the Student Code of Conduct, the Conduct Process and Procedures, or the Level I Appeals process, please contact**:

Office of Student Conduct                    725 William Pitt Union                    412-648-7910

studentconduct@pitt.edu

**For questions or information regarding the Level II Appeals Process, please contact**:

University Review Board Moderator            801 Cathedral of Learning               412-624-4222

urbmoderator@pitt.edu

**For questions or information regarding Title IX, please contact:**

Office of Civil Rights and Title IX Office, part of the Office of Equity, Diversity, and Inclusion
titleixcoordinator@pitt.edu                18th Floor Cathedral of Learning          412-648-7860

**For questions or assistance regarding University-level compliance, investigation, and ethics, please contact:**

Office of Compliance, Investigations and Ethics Craig Hall, Suites 508-516            412-383-2766

compliance@pitt.edu

CONFIDENTIAL

UPITT_0013788

**Introduction** ......................................................................................................... 6

University's Notice of Non-Discrimination ................................................................. 6

Application, Scope, and Jurisdiction of the Student Code of Conduct ........................ 6

Student Record Retention Policy ............................................................................... 7

Student Conduct Expungement ................................................................................. 7

     Expungement Process ........................................................................................ 7

**Chapter 1**: Student Rights and Responsibilities.......................................................... 8

Student Rights Within the University Community ...................................................... 8

Student Rights under FERPA ..................................................................................... 8

Student Identification Requirements ....................................................................... 10

Communication Requirements ................................................................................ 10

**Chapter 2**: Medical Amnesty ................................................................................... 11

**Chapter 3:** University of Pittsburgh Anti Hazing .................................................... 13

**Chapter 4:** Violations of the Student Code of Conduct ........................................... 17

**Chapter 5:** Process and Procedure: From Referral to Resolution .............................. 21

Filing a Conduct Referral ........................................................................................ 21

Review of the Conduct Referral and Initiation of the Conduct Process..................... 21

Interim Action ........................................................................................................ 22

General Information for Respondents and Complainants ...........................................22

Support People ........................................................................................................23

Level I Hearing and Appeal Process ........................................................................ 23

     Level I Hearing Process ................................................................................... 23

     Level I Appeal Process .................................................................................... 24

Level II Hearing and Appeal Process ....................................................................... 24

     Level II Pre-Hearing Process ........................................................................... 24

     Witnesses ....................................................................................................... 25

     Evidence ......................................................................................................... 25

     Level II Hearing .............................................................................................. 25

     Hearing Outcome ........................................................................................... 26

Addressing Bias Through the Conduct Process..........................................................26

     Application of Sanction Enhancement.............................................................. 27

CONFIDENTIAL

UPITT_0013789

Addressing Bias Outside the Conduct Process............................................................. 28

Level II, Hazing, Sexual Misconduct and Non-Discrimination Appeal Process........................... 28

    Petition to Appeal and Petition to Postpone Sanctions ............................................. 28

    University Review Board Procedures for Petition to Appeal ....................................... 28

    University Review Board Procedures for Proceeding with an Appeal ...................... 28

    University Review Board Structure ............................................................................ 29

**Chapter 6:** Sexual Misconduct Process and Procedures ................................................. 31

Reporting Sexual Misconduct and University Response ................................................... 31

Interim Measures, Accommodations, and Resource Assistance for Complainants and Respondents......... 31

Advisor or Support Person ................................................................................................ 32

Informal Resolution Process .............................................................................................32

Formal Complaint Process and University Initiated Investigations................................... 33

University's Prohibition of Retaliation ............................................................................. 35

Filing with External Agencies .......................................................................................... 35

**Chapter 7:** Sexual Harassment Process and Procedures ............................................... 36

Reporting Sexual Harassment and University Response ................................................... 36

Filing a Formal Compliant .............................................................................................37

Supportive Measures ........................................................................................................ 37

Emergency Removal.......................................................................................................... 38

Initial Response to a Formal Compliant ..........................................................................38

Informal Resolution .......................................................................................................40

Formal Grievance Process................................................................................................. 40

Retaliation ........................................................................................................................ 44

**Chapter 8:** Nondiscrimination Process and Procedures ................................................ 45

Reporting Discrimination and University Response ......................................................... 45

Interim Measures, Accommodations, and Resource Assistance for Complainants and Respondents......... 45

Advisor or Support Person ................................................................................................ 46

Informal Resolution Process .............................................................................................46

Formal Complaint Process and University Initiated Investigations................................... 46

University's Prohibition of Retaliation ............................................................................. 48

**Appendix A:** Sanctions .................................................................................................. 50

4

Individual Student Sanctions........................................................................................50

Registered Student Organization Sanctions.................................................................53

**Appendix B**: Title IX and Sexual Misconduct Resources and Information..............55

Getting Help................................................................................................................55

Confidentiality............................................................................................................56

    Different Types of Employees and Their Confidential Responsibilities....................56

        Privileged and Confidential..................................................................56

        Professional Counselors: University Counseling Center; Medical Staff, Counselors, and Advocates: Student Health Service..............................56

        Exceptions to Confidential Communications..........................................57

        Reporting to Responsible Employees...................................................57

Requesting Confidentiality from the Office of Civil Rights and Title IX.................58

University Sexual Misconduct Resources Explained.................................................59

    University Counseling Center...........................................................................59

    Student Health Service....................................................................................59

    Additional Resources......................................................................................59

Title IX Explained......................................................................................................60

Definitions..................................................................................................................61

Prevention...................................................................................................................61

**Appendix C:** Glossary..............................................................................................64

CONFIDENTIAL

UPITT_0013791

# Introduction

Being a member of the University of Pittsburgh community is a privilege. This privilege comes with the responsibility to act in accordance with all institutional rules and policies. This *Student Code of Conduct (Code)* provides information on behavioral expectations and outlines the processes used to address Violations of these expectations.

The Board of Trustees has the authority to establish regulations and standards for Students. Responsibility for these regulations and standards is delegated to the Chancellor and in turn to specified administrative officials. The Board of Trustees and University administrators acknowledge and affirm the rights and responsibilities of Students – as members of society, as guaranteed, and expressed by federal, state, and local laws.

The *Code* is subject to change at the discretion of the University. All Students are expected to familiarize themselves with and are required to abide by the provisions of the current *Code.* To ensure you have the most recent version, please visit www.studentaffairs.pitt.edu/conduct/. Copies of the *Code* are available at the Office of Student Conduct, 725 William Pitt Union.

This *Code* is **_not a contract_**.


Academic integrity issues fall within the authority of the University's individual academic departments and their Academic Integrity Policies.


# Non-Discrimination Statement

The University of Pittsburgh values equality of opportunity and prohibits unlawful discrimination. Find the full Notice of Non-Discrimination within University Policy CS 07 Nondiscrimination, Equal Opportunity, and Affirmative Action.


# Application, Scope, and Jurisdiction of the *Code*

Students and/or Registered Student Organizations may be charged with *Code* Violations. Additionally, individual members of Registered Student Organizations may be held accountable for *Code* Violations when they participate in any Violation committed by the Registered Student Organization.

Students are expected to conduct themselves as responsible members of the University community. Students and Student Organizations who violate the *Code* will be subject to disciplinary action by the University when such conduct takes place on University Property or in the course of a University-sponsored or University-supervised activity.

Conduct off-campus also may be subject to disciplinary action by the University if that conduct: 1) threatens the health, welfare, safety, or educational environment of the University community or any individual member thereof, or otherwise disrupts the neighboring environments; and/or 2) is considered by the University to be a serious offense that would negatively reflect upon the Student's character and fitness as a member of the Student body; and/or 3) is an incident occurring within the University of Pittsburgh Police jurisdiction.

Regional campuses also may have campus-specific policies and procedures which should be consulted as applicable.

CONFIDENTIAL

UPITT_0013792

# Student Conduct Record Retention Policy

The Office of Student Conduct maintains conduct records for a period of seven (7) years from the date of the incident. For all pending incidents and incidents resulting in University Housing Dismissal, Disciplinary Suspension or Disciplinary Dismissal, the conduct record will be maintained permanently.

# Student Conduct Expungement

Giving current/former Students the opportunity to expunge a responsible finding for a conduct violation reflects the philosophy that Students learn from their interactions with the conduct process and that self-reflection and self-knowledge can produce change in individuals. Each case is unique, and the decision to approve an expungement will be based on individual circumstances.

Even though a student's conduct violation may be expunged, both the student and University may need to disclose the expunged record to third party requestors.  For example, requestors performing background checks on students, such as study abroad programs, potential employers, Medical Boards or Bar examiners, etc.

The decision to disclose an expunged record will be based on the scope of the inquiry.  All disclosures of student conduct records shall be made in accordance with the Family Educational Rights and Privacy Act (FERPA), and the University's Access to and Release of Education Records Policy.

### Expungement Process

Current/former Students may apply to have a responsible finding of a conduct violation(s) expunged if the following criteria have been met:

- o   Two calendar years have elapsed since the incident date.
- o   The sanctions did not include Suspension or Dismissal.
- o   The student completed all sanctions on time.

Discretion to expunge a responsible finding for a conduct violation rests with the Office of Student Conduct staff. Applications for expungement are reviewed by the Office of Student Conduct staff after the student has submitted a completed application for expungement along with any relevant supporting documentation, such as a reference letter, grade transcript, evidence of personal growth, a sustained commitment to abiding by the *Student Code of Conduct* and/or any other facts and circumstances the student would like the Office of Student Conduct to consider.

***If a Student violates the Code after the responsible finding for a conduct violation(s) has been expunged, their expunged finding(s) will be reinstated***.

7

CONFIDENTIAL

# CHAPTER 1: Student Rights and Responsibilities

## Student Rights Within the University Community

With the approval of the Board of Trustees, the University affirms the following Student rights and privileges:

♦ To engage in discussion, to make inquiries, to exchange thought and opinion, to publish and exchange findings and recommendations, to speak, write, or print freely on any subject, and to sponsor speakers of their choice, in accordance with the guarantees of our Federal and State Constitutions, subject only to the right of the University to make reasonable rules and regulations related thereto.

♦ To associate with whomsoever, they please.

♦ To engage in the educational process.

♦ To engage in peaceful, orderly, and nondestructive picketing, protests, and demonstrations, to the extent they do not violate public law and do not interfere with the educational process or the rights of other members of the University.

♦ To be free from discrimination on the basis of race, color, religion, national origin, ancestry, sex, age, marital status, familial status, sexual orientation, gender identity and expression, genetic information, disability, or status as a veteran.

♦ To be secure in their persons, living quarters, papers, and effects from unreasonable, illegal, or unauthorized searches and seizures; and in the event of a legally authorized search, whenever possible to have present an official of the University and the Student against whom the legally authorized search is directed.

♦ To be free from violence, force, the threat of force, entrapment, and coercion.

♦ To organize one's own personal behavior as long as such behavior does not violate public law or the rights of others and does not interfere with the educational process.

♦ To be informed of the standards and the norms of conduct established by the University and the right to have advance notice of any Sanctions for violations thereof.

♦ To have the benefit of fair and equitable procedures for determining the validity of charges of alleged violations of the University standards of conduct. All procedures shall be structured to facilitate a reliable determination of the truth or falsity of charges while providing due process and fundamental fairness to all persons.

♦ To retain unaltered status as a member of the University community and to be present on campus and attend classes during the consideration of any disciplinary matter, except for reasons relating to the safety and well-being of members of the University community or University Property or a Student's physical or emotional safety and well-being.

♦ To petition for redress of a grievance arising from negligent, malicious, or irresponsible actions of a member of the University community.

♦ To have University records reflect only such information as is reasonably related to the educational process of the University.

8

CONFIDENTIAL

- To be informed of the existence, custodianship, and general character of all personal records maintained by the University.

- To inspect all personal records, except records determined to be confidential in accordance with properly established criteria.

- To have protection from disclosure of personal records to unauthorized persons. Information will not be released outside of the University community without the expressed consent of or waiver by the Student involved, except under valid legal compulsion or where there is a clear and present danger to a member of the University community, in which case the Student will be informed of any such release.

- To establish and elect a representative democratic student government which is accountable to the University and the Student community.

- To be heard and have one's views considered at appropriate levels of the decision-making process within the University community.

- To use designated University facilities as individuals and members of Registered Student Organizations for extracurricular activities sponsored by Registered Student Organizations and Student groups, subject to the priority of academic needs and to reasonable University rules and regulations regarding use of facilities.

## Student Rights under FERPA

The Annual Notification of Rights under the Family Educational Rights and Privacy Act (FERPA), as well as more information about the University's FERPA policy and procedures, is available through the following resources.

Annual Notification of Rights

Policy AC 04 and Procedure

Compliance, Investigations, and Ethics

Office of the University Registrar

## Guardian Notifications for Drug and Alcohol Violations

FERPA permits the University to notify parent(s)/guardian(s) when a Student who is under the age of twenty-one (21) is found responsible for or admits to an alcohol or other drug Violation.

Notification to parent(s)/guardian(s) of such Violations is part of a strategy to connect parent(s)/guardian(s) with appropriate University representatives to reduce the risk of University Students developing patterns of behavior that may jeopardize their academic success, health, or well-being. Under special circumstances, professional staff at the University may use their discretion to determine whether this notification is in the best interest of the Student.

**When and how parent(s)/guardian(s) may be notified:**

Parent(s)/guardian(s) may be notified via a written letter when the appeals period has ended, and a Student is found responsible for an alcohol or other drug Violation. This does not include Students

9

UPITT_0013795

who are sanctioned solely for being "knowingly present" during alcohol or other drug Violations.

**Who should parents/guardians contact if they have any questions?**

The Guardian Notification Letter will identify who to contact for additional information. Before calling for more information, the University encourages parent(s)/guardian(s) to speak to their Student to see if the Student requires any assistance and to encourage the Student to make responsible choices that will help the Student avoid future conduct Violations. If parent(s)/guardian(s) want to speak with staff, they should have their Student provide written permission to the staff member who signed the guardian notification letter.

# Student Identification Requirements

Students are required to carry their valid University ID (Panther cards) at all times. Students are required to present their valid University ID when requested by an authorized University official. Additionally, all residence hall Students must carry, and present, their valid University ID to gain access into their assigned residence halls.

# Communication  Requirements

Hearing Officers will communicate with students primarily via University-sponsored email accounts. This *Code* also will be sent to University-sponsored email accounts in August. All other updates can be found on the website https://www.studentaffairs.pitt.edu/conduct/. Students are responsible for checking their University email accounts on a regular basis.

CONFIDENTIAL

# CHAPTER 2: Medical Amnesty

The University of Pittsburgh's primary concern is for the health, safety, and well-being of Students. All Students are expected to seek immediate assistance for themselves or others in situations where someone is experiencing an emergency due to alcohol or other drug use. Failure to summon, or limiting the ability of someone else to summon, emergency assistance for a Student experiencing an emergency due to alcohol or other drug use, may result in University and/or criminal charges.

### Scope:

1. **Medical Amnesty may apply when the violations under the *Code of Conduct* involve** alcohol or other drugs.

2. **Medical Amnesty eliminates responsibility for *Code* Violations outlined above for** the reporter and/or the individual experiencing the medical emergency.

3. **Medical Amnesty mitigates University conduct consequences for** Registered Student Organizations that call for emergency assistance.

Medical Amnesty does not prevent disciplinary action for other Violations of the *Code*, including, but not limited to unlawful distribution of alcohol or other drugs, harassment, hazing, possessing, or using false identification, causing, or threatening physical harm, sexual misconduct, or damage to property.

### Medical Amnesty Process

In order for Medical Amnesty to apply to the reporter, the reporter must complete the following steps:

1. Contact appropriate University or emergency officials, identify themselves and report the incident.

2. Remain with the individual(s) needing assistance until emergency officials arrive.

3. Cooperate with University and emergency officials as requested.

4. Complete all assigned programs or interventions within the designated time frame.

5. Notify the Hearing Officer responsible for your case that all steps have been completed. Medical Amnesty may not apply until verification of completion has occurred.

In order for Medical Amnesty to apply to the individual who experienced the medical emergency, this individual must complete the following steps:

1. Cooperate with University and emergency officials as requested.

2. Complete all assigned programs or interventions within the designated time frame.

3. Notify the Hearing Officer responsible for your case that all steps have been completed. Medical Amnesty may not apply until verification of completion has occurred.

Even when Medical Amnesty applies, the University and/or the Student may need to disclose

11

UPITT_0013797

information regarding the application of Medical Amnesty, including but not limited to study abroad programs, potential employers, professional governing bodies (ex. Bars or Medical Boards), or another university, college, or institution through an admissions process. While the main goal of Medical Amnesty is to encourage Students to make healthy decisions and to seek medical attention when they or one of their peers are in distress, repeated requests for Medical Amnesty will be addressed on a case-by-case basis.

Application of Medical Amnesty by the University does not prevent criminal action by police or civil action by third parties. Commonwealth of Pennsylvania's alcohol and other drugs "Good Samaritan" laws may be applicable.

CONFIDENTIAL

UPITT_0013798

# CHAPTER 3: University of Pittsburgh Anti Hazing

The University of Pittsburgh does not tolerate hazing. Any student, student organization, team, or other persons associated with a student organization found responsible for hazing under this policy, whether occurring on or off campus, may face disciplinary action from the University, and may also face criminal charges under state law including **The Timothy J. Piazza Antihazing Law, 18 Pa. C.S. § 2801, et seq.**

## Hazing Definition

For purposes of this definition, any activity as described in the below definition which is directly or indirectly made a condition of initiation into, admission into, affiliation with, or continued membership in an organization shall be presumed to be "forced" activity, regardless of whether the individual was willing to participate in such an activity. Therefore, any student who causes or participates in hazing may be subject to appropriate University discipline and/or may be subject to criminal prosecution.

Hazing is defined as follows:

A person commits hazing if the person intentionally, knowingly, or recklessly, for the purpose of initiating, admitting, or affiliating a minor or student into or with an organization, or for the purpose of continuing or enhancing a minor or student's membership or status in an organization, causes, coerces, or forces a minor or student to do any of the following:

(1) Violate Federal or State criminal law;

(2) Consume any food, liquid, alcoholic liquid, drug, or other substance which endangers the mental or physical health or safety of a student;

(3) Engage in physical activity, including whipping, beating, branding, calisthenics, or exposure to the elements which endangers the mental or physical health or safety of a student;

(4) Engaged in mental activity, including sleep deprivation, exclusion from social contact or conduct that could result in extreme embarrassment which endangers the mental or physical health or safety of a student;

(5) Engage in sexual activity, which endangers the mental or physical health or safety of a student;

(6) Endure any other activity that creates a risk of bodily injury to the student.

## Organizational Hazing

A Registered Student Organization commits organizational hazing if the organization intentionally, knowingly, or recklessly promotes or facilitates a violation of hazing or aggravated hazing.

Aggravated Hazing is defined as follows:

Conduct that would amount to hazing but that results in serious bodily injury or death. This may include instances where those responsible for hazing acted with reckless indifference to the health and safety of a student. Causing, coercing, or forcing the consumption of alcohol or other drugs that results in serious bodily injury or death is an example of aggravated hazing.

13

UPITT_0013799

# Hazing Adjudication Process

The Office of Compliance, Investigations & Ethics (CIE Office) will work collaboratively with the University of Pittsburgh Police Department in the investigation of alleged hazing events.[1]

Ultimately, all reports of hazing will be referred to the Office of Compliance, Investigations & Ethics (CIE) for internal investigation either following or during a police investigation. The investigative procedures can be found here.

### Reporting

Several options are available for you to report hazing. Students and others are encouraged to report incidents, and suspected incidents of hazing. Reports may be made to the University Police (412- 624-2121), or the Office of Compliance, Investigations and Ethics at (412-383-4553), compliance@pitt.edu. You may also report hazing using the Pitt Concern Connection either by submitting an online form, calling the report phone number, or submitting a report via text.

Although the University encourages students and others to make formal reports, including providing contact information for the reporter, you may file an anonymous report with the University Police tip line and/or the Pitt Concern Connection. Anonymous reports greatly limit the University's ability to respond to and investigate the report.

As noted above, all hazing allegations should be reported to the University of Pittsburgh Police Department and/or the CIE Office. In addition, hazing related to any University of Pittsburgh athletics teams may also be reported to the Director of Athletics at 412-648-8230 or the Associate Athletic Director for Student Life and Compliance at 412-648-8452. Hazing related to any University of Pittsburgh fraternity and sorority life chapter organization may also be reported to the Office of Sorority and Fraternity Life/Office of Cross Cultural and Leadership Development at (412) 648-9523. Hazing related to any University of Pittsburgh student organization may also be reported to the Student Organization Resource Center at (412) 624-7115.

### Interim Measures

As part of the University's response to a report of hazing, and regardless of whether there has been a request for formal disciplinary or law enforcement action, the University may impose interim measures or offer accommodations to address issues that impact the Complainant or Respondent's educational, living or work environments. These interim measures can often be put in place very quickly, prior to the resolution of any complaint, investigation, or criminal proceeding.

Once imposed, the University will take necessary action to enforce the implemented measures. Anyone who becomes aware of, or has a concern about, a Student's failure to follow any University-imposed interim measure or accommodation, should report this concern to the Office of Student Conduct at 412-648-7910 or studentconduct@pitt.edu.

### Advisor or Support Person

Both a Complainant and a Respondent are entitled to one advisor or support person of their choice, and the advisor or support person may accompany the party to any meeting or proceeding under these

---

[1]    In addition, the CIE Office is responsible for publishing the University's bi-annual hazing report, which can be found here.

CONFIDENTIAL

UPITT_0013800

processes. However, the advisor or support person shall not be permitted to participate directly in the process. This includes advisors who are also attorneys. An advisor or support person may not stand in place of either the Complainant or the Respondent, and information regarding the progress of the inquiry or investigation will only be shared with the Complainant or Respondent, and not the advisor of choice. If the advisor or support person has any questions, they should contact the Assistant Vice Chancellor for the Office of Compliance, Investigations & Ethics (AVC CIE), not the individual investigator. In keeping with the University's desire to resolve hazing complaints in a timely manner, the University reserves the right to proceed with any meeting regardless of the availability of the Student's/Registered Student Organization's advisor or support person.

**Investigative Process**

The investigation of hazing allegations involves a prompt and equitable investigation conducted by an investigator assigned by the Office of Compliance, Investigations & Ethics (CIE Office). The investigation is a fact-finding process, giving all parties notice and the opportunity to be heard, to identify witnesses and to offer evidence, and to pose questions to parties and witnesses. The process will generally progress as follows:

1. Once a report is received, the Investigator will attempt to interview witnesses and identify relevant parties, including any Complainants or Respondents.

2. Following the completion of initial interviews, the investigator will notify the Assistant Vice Chancellor for Compliance, Investigations & Ethics as to whether or not the allegations, if substantiated, would constitute a violation of the *Code* related to hazing.

    a. If the investigator's notification indicates that such an allegation, if substantiated, would not constitute a violation, the Assistant Vice Chancellor for Compliance, Investigations & Ethics may close the investigation and that decision shall be final, barring new information.

    b. In the event that the investigator's notification indicates that the allegations, if substantiated, would constitute a violation of the *Code,* the investigator shall conduct a full investigation. Steps in the investigations may involve the following actions:

        i. Notification to the Respondent and Complainant that an investigation is underway

        ii. Interviewing members of Registered Student Organizations

        iii. Interviewing witnesses, including the Respondent(s) and Complainant(s)

        iv. Providing the parties with the opportunity to identify relevant witnesses

        v. Providing the parties with the opportunity to review and comment upon a summary of their interview. The parties shall have five (5) days to review and comment.

        vi. Collecting evidence

        vii. Documenting all evidence collection and interviews

        viii. Collaborating with multiple departments to gather relevant information

3. Reasonable rules of relevancy will guide the investigator in evaluating evidence and witness statements.

4. Following the gathering and evaluation of evidence, the investigator will prepare a report of

15

investigation. The parties will have an opportunity to review, in the Office of Compliance, Investigations & Ethics, the report of investigation. The report of investigation will include the relevant information provided by the Complainant, Respondent, and any witnesses, as well as reference other relevant evidence gathered during the investigation which will be considered in determining responsibility for allegations of hazing. Within five (5) business days of the date that the report of investigation was first made available for review, the Complainant and Respondent must submit verbally or in writing to the Investigator any comments (including additional statements, proposed witness questions and additional evidence) concerning the summary. This portion of the investigation may be an iterative process.

5. Following the receipt of any comments on the investigative summary, or after the five (5) day period has lapsed without comment, the Investigator will prepare a final report of investigation that includes a determination of whether it is more likely than not that a hazing violation has or has not occurred. The final written report will include the basis upon which the Investigator reached their determination of responsibility. This determination will be made using the preponderance of the evidence standard, asking whether it is more likely than not that hazing occurred and the *Code* violated.

6. The report will be provided first to the Assistant Vice Chancellor for Compliance, Investigation & Ethics for review and input. The AVC CIE will consult with the Office of University Counsel and submit the final report to the Vice Provost for Student Affairs or their designee. Once the Vice Provost for Student Affairs or their designee has determined the appropriate sanctions, either the Vice Provost for Student Affairs or their designee will provide the decision letter, to both the Complainant and Respondent. At this time, a copy of the final investigation report will be available in the Office of Compliance, Investigations & Ethics for review.

7. Both the Complainant and the Respondent may submit an appeal to the University Review Board (URB) within ten (10) business days from the date of the decision letter. See the Level II Hearing Appeal Process.

**Prohibition of Retaliation**

Retaliation is prohibited and may constitute separate grounds for disciplinary action. Retaliation is the act of taking adverse action against any person involved in the investigation process based upon the person's reporting or participation in the process. Retaliation includes behavior on the party of any related person or party. Although independent action will be taken against anyone engaging in retaliation, any party to the investigation should not encourage such actions and will also be held responsible to the extent of their involvement in the retaliation. An individual who believes they have experienced retaliation should contact the Office of Compliance, Investigations & Ethics (compliance@pitt.edu) or submit concern using the Pitt Concern Connection. Investigations of retaliation in connection with this Chapter will follow the investigative procedures outlined above.

16

# CHAPTER 4: Violations of the *Student Code of Conduct*[1]

A Violation is committed when a Student or a Registered Student Organization:

1.  Violates any federal, state, or local law(s), or while abroad, violates any international law(s).

2.  Engages in conduct which is disorderly, lewd, or indecent or a breach of peace; or aids, abets, or procures another to do the same.

3.  Possesses, consumes, or is under the influence of alcohol if under the age of 21, or dispenses alcohol to an individual who is under the age of 21.

4.  Is knowingly present during the commission of the Violation(s) of "possesses or consumes alcohol if under the age of 21 or dispenses alcohol to an individual who is under the age of 21."

5.  Consuming, carrying, or possessing an open container of alcohol in the public right-of-way, or on private property without the consent of the landowner or tenant, except as permitted by law.

6.  Operates a motor vehicle while impaired by or under the influence of alcohol and other drugs.

7.  Uses, misuses, possesses, distributes, manufactures, sells, or is under the influence of narcotics, hallucinogens, dangerous drugs, controlled or illicit substances except as permitted by law, or possesses paraphernalia which can be demonstrated to be linked to drug activity, such as pipes with drug residue. This includes the misuse of over-the-counter substances. The use or possession of marijuana (medical or otherwise) in the workplace and on campus is restricted by federal laws, such as the federal Safe and Drug Free Schools and Communities Act and the Drug- Free Workplace Act. Accordingly, the University of Pittsburgh prohibits the use or possession of marijuana on campus.

8.  Is knowingly present during the commission of Violation(s) of "uses, misuses, possesses, distributes, manufactures, sells, or is under the influence of narcotics, hallucinogens, dangerous drugs, controlled or illicit substances except as permitted by law, or possesses paraphernalia which can be demonstrated to be linked to drug activity, such as pipes with drug residue."

9.  Without authority or consent, limits, or restricts the freedom of a person to move about in a lawful manner.

10. Physically abuses, injures, or endangers a person's health, welfare, or safety.

11. Threatens, intimidates, coerces, or uses physical force in a manner which causes another person to be reasonably apprehensive or which endangers a person's health, welfare, or safety.

---

[1] Please note that just because the expression of an idea or point of view may be offensive or inflammatory, it is not necessarily a Violation of the *Code*. The University values freedom of expression and the open exchange of ideas, and the expression of controversial ideas and differing views is a vital part of the University's mission.

CONFIDENTIAL

UPITT_0013803

12. Engages in Harassment. Harassment includes unwelcome conduct, through verbal, physical, or electronic means, that based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity (i.e., creates a hostile environment). This provision is not intended to prohibit constitutionally protected activity.  To the extent that such conduct is connected to allegations of harassment on the basis of a protected class, it will generally be adjudicated as a violation of the applicable policy and not this provision.

13. Violates the Sexual Misconduct Policy including, but not limited to:
    a. Sexual Assault
    b. Relationship Violence
    c. Sexual Harassment
    d. Stalking/Cyberstalking

14. Violates the Title IX Policy including, but not limited to:
    a. Sexual Assault
    b. Relationship Violence
    c. Sexual Harassment
    d. Stalking/Cyberstalking

15. Assists in the Violation of the Title IX Policy.

16. Violates the University of Pittsburgh Anti-Hazing Statement.

17. Assists in the Violation of the University of Pittsburgh Anti-Hazing Statement.

18. Operates, provides assistance to, or in any way perpetuates activities that give the impression or appearance that a group is a Registered Student Organization, when that group has not registered as a student organization, has lost or been denied University registration or recognition, or has been dissolved as a consequence of responsibility for *Code* and/or other policy Violations, even if operating under a different name.

19. Violates or assists in the Violation of any policy, procedure or guideline of the University including, but not limited to the following:
    a. University of Pittsburgh Non-Discrimination, Equal Opportunity, and Affirmative Action Policy
    b. University of Pittsburgh Registered Student Organization Registration Guidelines
    c. University of Pittsburgh Student Union's Policies and Procedures Handbook
    d. University of Pittsburgh Drug Free Workplace/Drug Free Schools Policy
    e. University of Pittsburgh Smoking Policy
    f. University of Pittsburgh Office of Fraternity and Sorority Life Policies and Procedures Manual
    g. Housing and Dining Services Contract, The Registered Student Organizations Handbook, the Club Sports Handbook
    h. Any Computing Services and Systems Development Policy
    i. Any provision of the University of Pittsburgh Posting and Chalking Guidelines
    j. Any provision of the University of Pittsburgh Demonstration Guidelines
    k. Any other policy, procedure, or guideline of the University whether or not listed in the *Code*

CONFIDENTIAL

20. Engages in retaliation in connection with any reported violation of this *Code*.[2]

21. Violates any provision of the Residential Handbook including, but not limited to:
    a. Quiet Hours
    b. Visitation
    c. Health and Safety
    d. University-owned Housing Alcohol
    e. Other

22. Obstructs, interferes with, or denies another Student's Rights and Responsibilities affirmed by the Board of Trustees (please see the Rights listed in Chapter 1).

23. Uses, possesses, or manufactures firearms, explosives, weapons, fireworks or other dangerous articles or substances injurious to person or property, or objects that mimic or look/function like these objects, while on University Property.

24. Activates emergency warning equipment, communicates false information regarding any emergency situation, or fails to exit any University property when emergency warnings are issued.

25. Abuses, removes, damages, or alters fire safety equipment, security equipment, and/or exit signs.

26. Ignites or burns materials, including but not limited to incense and candles, without proper authorization, while on University Property.

27. Throws anything from windows, balconies, patios, or any other area of any University building.

28. Affixes, implants, or otherwise fastens any object to any University Property floors, ceilings, windows, or walls which might stain, scar, vandalize, or otherwise cause damage to said property.

29. Without proper authorization, lends and/or misuses University identification or keys.

30. Without proper authorization, lends, possesses, abuses, damages, destroys, removes, (mis)uses, misappropriates, or sells the property of another, including, a business or the University.

31. Obtains the personal information of another person by misrepresentation or fraudulent means.

32. Without proper authorization enters or uses property of another, a business, or the University.

33. Forges, alters, takes possession of, duplicates, or uses documents, records, keys, identification, or computer accounts without proper authorization.

34. Fails to present University identification or gives false identification or identifying information upon the request of an authorized University official.

35. Falsifies information or records submitted to a University official or office.

36. Fails without just cause to comply with the lawful direction of a University official, or other lawful

---

[2]    The process afforded to students accused of retaliation is tied to the underlying allegations. For example, retaliation in connection with hazing, sexual misconduct, sexual harassment, or nondiscrimination will follow the corresponding investigative process for those policies and *Code* provisions. All other forms of retaliation will follow the conduct process outlined in Chapter 5.

CONFIDENTIAL

UPITT_0013805

authority having just cause and acting in the performance of their duties and authority.

37. Engages in solicitation of any type (including non-University commercial activity) on University Property unless approved in advance by an appropriate University official.

38. Participates in the sale or misuse of class materials including but not limited to recordings, papers, examinations, or any other class materials.

39. Disrupts or prevents the peaceful and orderly conduct of classes, lectures, quiet study, speaker presentations, and/or meetings or deliberately interferes with the freedom of any person to express their views.

40. Engages in any act or preparation intended to result in a *Code* Violation, which, if not prevented, would have resulted in the completion of the act intended.

41. Obstructs or interferes with the apprehension or investigation of a Student who may be involved in the commission of a *Code* Violation.

42. Intimidates, coerces, influences, or attempts to do the same against a person who is participating or has participated in any University process or proceeding.

43. Disrupts or interferes with the conduct process.

44. Makes or distributes any photograph, audio, or video recording of any person in Violation of federal, state, or local law.

45. Engages in games of chance in Violation of federal, state, or local law.

46. Fails to comply with guidance set forth by the University, federal, state and/or local authorities, or host governments while abroad regarding public health and/or safety.

CONFIDENTIAL

UPITT_0013806

# CHAPTER 5: Process and Procedures: From Referral to Resolution

## <u>Applicability</u>

Except as otherwise specified herein, the processes and procedures in this Chapter do **not** apply to alleged Violations of the University's Sexual Misconduct policy (CS 20) or Title IX policy (CS 27). Alleged conduct under those policies are addressed in Chapter 6 and Chapter 7, respectively.

## <u>Student Rights Within the University Community</u>

Student Rights Within the University Community are listed in <u>Chapter 1</u> of this *Code*.

## <u>Commonly Used Terms</u>

<u>**Adjudication**</u>: Completion of any investigative, hearing and/or accompanying Appeal process.

<u>**Complainant**</u>: A University community member who files a referral that alleges a Violation of the *Code*.

<u>**Conduct Referral**</u>: A report alleging Violations of the *Code*.

<u>**Level I Hearing:**</u> A meeting to determine an alleged Violation of the *Code* where a Respondent may receive a Sanction up to and including Disciplinary Probation or Housing Suspension.

<u>**Level II Hearing:**</u> A meeting or series of meetings to determine an alleged Violation of the *Code* where a Respondent may receive a Sanction up to and including Disciplinary Dismissal.

<u>**Respondent**</u>: Student/Registered Student Organization alleged to have violated the *Code*.

## <u>Process and Procedures</u>

### A.  Filing a Conduct Referral

The University's Conduct Process is initiated when a University member files a Conduct Referral against a Student/Registered Student Organization alleging that there has been a Violation of the *Code*.

Any University Member who has witnessed, has been subject to or has knowledge of a potential Violation of the *Code* may contact the Office of Student Conduct to complete a Conduct Referral.

Conduct Referrals which allege Violations of Hazing will proceed under Chapter 3 of this *Code*.

Conduct Referrals which allege Violations of the <u>Sexual Misconduct Policy</u> (CS 20) or <u>Title IX Policy</u> (CS 27) will proceed under <u>Chapter 6</u> and <u>Chapter 7</u> (respectively) of this *Code*.

### B.  Review of the Conduct Referral and Initiation of the Conduct Process

Once a Conduct Referral is submitted, the Director of Student Conduct or their designee will determine

21

UPITT_0013807

whether the behavior alleged in the Conduct Referral, if substantiated, would constitute a *Code* Violation. In some instances, the Director of Student Conduct or their designee may need to meet with the alleged Complainant or Respondent prior to making this determination.

If it is determined that the Conduct Referral alleges a *Code* Violation, the Director of Student Conduct or their designee will decide if the Conduct Referral will proceed under the Level I or Level II Process. Once this determination is made, the Director of Student Conduct or their designee will notify the Respondent of the next steps in the conduct process by sending an email to the Respondent's University e-mail address.

Most Conduct Referrals proceed under the Level I Hearing Process and are heard by the Office of Student Conduct (or designee), the Student Conduct Peer Review Board or Residence Life staff. Generally, after filing the Conduct Referral, Complainants do not participate in the Level I Hearing Process.

The Level II Hearing Process is facilitated by the Office of Student Conduct. This process is followed when:

1. The alleged Violations may result in Sanctions including, Disciplinary Suspension, Disciplinary Dismissal, or Dismissal from University Housing; or
2. The Respondent is a Registered Student Organization except hazing reports as outlined in <u>Chapter 3</u>; or
3. Deemed appropriate by the Office of Student Conduct.


## C. Interim Action

Prior to initiation of the conduct process, the Vice Provost for Student Affairs or their designee may take limited or temporary action to restrict a student or student organization, only to the minimum extent necessary, when there is reasonable cause to believe that the student or student organization's participation in University activities or presence at specified areas of the campus may lead to conduct that threatens the health, safety or well-being of any person, property or University operations.

Examples of behavior that may lead to interim action by the University may include, but are not limited to, being charged with a serious criminal offense, physical violence, sexual harassment, significant disruption of the educational or living environments of the University, significant damage to property, and possession and/or distribution of controlled substances.

Interim actions remain in effect only as long as the Vice Provost for Student Affairs or their designee determines there is a need for such action or until the matter has been investigated, adjudicated, or otherwise resolved in accordance with the Code.

Within ten (10) business days of an interim action, the Student/Registered Student Organization may request, through the <u>Interim Action Appeal form</u>, that the Vice Provost for Student Affairs or their designee reconsider the interim action. This request must include the reasons why the Student/Registered Student Organization believes the interim action should be lifted. The Vice Provost for Student Affairs or their designee will consider the request and advise the Student/Registered Student Organization of any modification to the interim action within five (5) business days of the submission of the request. The interim action remains in place during the Vice Provost for Student Affairs or their designees' review.

Interim action does not replace the conduct process, which shall proceed as outlined in this *Code*.


## D. General Information for Respondents and Complainants in both Level I and Level II Hearing Processes and Appeals

In addition to the <u>Rights</u> affirmed by the Board of Trustees, while the Respondents have the right to

22

decline to testify against themselves, the Level II Conduct Hearing Board **may** draw an appropriate inference from lack of participation. The Hearing Officer or the Level II Conduct Hearing Board will use a preponderance of the evidence standard (meaning more likely than not) when deciding if a Respondent is responsible for a Violation of the *Code*.

Legal rules regarding the wording of questions, hearsay, and opinions, as well as legal rules regarding admissibility of evidence will not be formally applied. Legal motions will not be entertained, but reasonable rules of relevancy will apply. Reasonable limits may be imposed on the number of factual and/or character witnesses and the amount of cumulative evidence that may be introduced.

Respondents/Complainants have the right to call witnesses during the hearing process. If a Respondent chooses not to participate in any stage of the hearing process, Adjudication may proceed, and Sanctions may be imposed.

Throughout the conduct process, the Complainant and/or Respondent may request to review the Conduct Referral.

If you have a disability and would like to request an accommodation during the conduct process, you are encouraged to contact both the Hearing Officer and Disability Resources and Services (DRS), 140 William Pitt Union, (412) 648-7890, drsrecep@pitt.edu, (412) 228-5347 for P3 ASL users, as early as possible in the process. DRS will engage in the interactive discussion and determine reasonable accommodations for the conduct process.

## E.  Support People

While not necessary or required, Complainants and Respondents in both the Level I and Level II conduct process are permitted to be accompanied by no more than two support people of their choice. Support people may ask questions regarding the process prior to the hearing. Support people may accompany a party throughout the process but are not authorized to actively participate in the hearing. Any person who was involved in the conduct at issue or might be called as a witness in a case cannot be a support person in that case. Information regarding the processing of any referral will only be shared while the Complainant/Respondent is present.

## F.  Level I Hearing and Appeal Process

### Level I Hearing Process:

- The Hearing Officer will read the alleged *Code* Violations and allow the Respondent to review the Conduct Referral.

- The Respondent will have the opportunity to ask questions and to present relevant information through personal and/or witness testimony and/or documents.

- The Hearing Officer(s) may ask questions regarding any information provided.

- Using a preponderance of the evidence standard, the Hearing Officer will determine if the Respondent is responsible for violating the *Code* and if so, will inform the Respondent of the imposed Sanctions, either at the conclusion of the Level I Hearing or within a reasonable time thereafter.

- If the *Respondent is found responsible for violating the Code*, the Respondent will have the option to:

23

UPITT_0013809

    a.   Accept the findings and imposed Sanctions.

    b.   Accept the findings but reject and appeal the imposed Sanctions.

    c.   Reject the findings and imposed Sanctions and appeal both.

- If the Respondent is *found not responsible* for violating the *Code,* no Sanctions will be imposed.

- If the Respondent fails to attend the Level I Hearing, the Hearing may proceed in the Respondent's absence and Sanctions may be imposed.

**Level I Appeal Process:**

Respondents seeking to appeal a Level I Hearing must file an appeal form with the Office of Student Conduct within ten (10) business days of the date of the Hearing decision letter. A link to the appeal form can be found in the decision letter.

The reason for appeal must fall within the scope of review. The scope of review shall be limited to statements and facts supporting one or more of the following questions:

1. Whether <u>Rights</u> affirmed by the Board of Trustees have been denied.

2. Whether established Level I Hearing procedures were not followed in a manner that would have affected the decision.

3. Whether there was an absence of a rational connection between the facts found and the findings.

4. Whether the issued sanctions are substantially disproportionate to the severity of the Violation.

5. Whether new evidence is presented which was not available or discoverable during the Level I process that if available at the time would have significantly altered the findings or sanctions.

Once the Office of Student Conduct receives a request for an appeal, the Director of Student Conduct or their designee will review and notify the Respondent whether the appeal will be heard. If the appeal is to be heard, the Director of Student Conduct or their designee will notify the Respondent of the date, time, and place of the appeal meeting. Decisions following the appeal meeting are final.

## G.  Level II Hearing and Appeal Process

**Level II Pre-Hearing Process:**

When a Conduct Referral falls under the Level II Hearing Process, the Office of Student Conduct will schedule a Disciplinary Conference with the Respondent. The purpose of the Disciplinary Conference, which may occur over a period of several meetings, is to 1) allow the Hearing Officer to discuss the alleged Violation(s) with the Respondent; 2) make recommended Sanction(s), and 3) provide the Respondent the opportunity to choose their response to the Conduct Referral, as defined below:

    a.   Accept responsibility for violating the *Code,* accept the recommended Sanction(s) and waive the Level II Hearing and Appeal Process.

    b.   Accept the general nature of the Violation(s) and proceeds before the Level II Conduct Hearing Board for a Sanctions-Only Hearing.

    c.   Does not accept responsibility for the Violation(s) and proceeds before the Level II Conduct Hearing Board for a Full Hearing.

24

UPITT_0013810

If the Respondent elects to proceed with a Level II Hearing, the Office of Student Conduct will answer questions regarding the procedures and format of the student conduct process, will schedule the Level II Hearing, and will provide other assistance as appropriate.

Both the Complainant and Respondent will receive an e-mail notification of the date, time, and place of the Level II Hearing. If a party has been sent notice in accordance with the *Code*, and fails to appear at the scheduled date, time, and place, the Level II Hearing may be held in the party's absence.

## Witnesses

The Complainant and Respondent may provide the Hearing Officer with a witness list, containing a brief description of each witnesses proposed testimony. This description must be submitted to the Hearing Officer not less than five (5) business days prior to the Level II Hearing date. It is the responsibility of the Complainant and Respondent to coordinate any witnesses participation in the Level II Hearing. The Hearing Officer may provide reasonable assistance in facilitating any witness participation.

Where necessitated by fairness, the Hearing Officer may make arrangements for the recorded, telephonic, or written testimony for use in a proceeding.

Both Complainants and Respondents may review, not less than three (3) business days prior to the Level II Hearing date, any approved witness list submitted by the opposing party. To schedule such a review, Complainants and/or Respondents must contact the Office of Student Conduct to make an appointment.

## Evidence

The Complainant and Respondent will have the opportunity to submit evidence that they intend to introduce at the Level II Hearing. Such evidence must be submitted to the Hearing Officer not less than five (5) business days prior to the Level II Hearing date. Not less than three (3) business days prior to the Level II Hearing date, both the Complainant and Respondent shall have the opportunity to review all evidence that has been approved for use in the hearing. To schedule such a review, the Complainant and/or Respondent must contact the Office of Student Conduct to make an appointment.

## Level II Hearing

The Director of Student Conduct or their designee will serve as the Hearing Moderator for all Level II Hearings.

The Hearing Moderator will convene the Level II Hearing and introduce the parties involved in the proceeding. The Complainant or Respondent may object to the participation of any member of the Level II Conduct Hearing Board or to the procedures, and the Hearing Moderator will make any necessary decisions regarding the validity of such concerns or objections. The Hearing Moderator shall read the alleged Violations.

The Complainant or Respondent will have the opportunity to state their case, offer evidence, and call, question, and cross-examine witnesses. During any presentation, the Hearing Moderator and Level II Conduct Hearing Board Members also will have the opportunity to ask questions to the Complainant, Respondent and any of their witnesses.

At the conclusion of all testimony, the Complainant and Respondent will be given the opportunity to offer a closing statement which may include information regarding the imposition of sanctions.

25

**Deliberations for Sanctions-Only Hearing**

1. The Level II Hearing will be concluded, and all participants except the Level II Conduct Hearing Board will be dismissed.

2. The Level II Conduct Hearing Board will deliberate in private.

3. The Level II Conduct Hearing Board will create a written record of Sanctions to recommend to the Vice Provost for Student Affairs or their designee.

**Deliberations for Full Hearing**

1. The Level II Hearing will be concluded, and all participants except the Level II Conduct Hearing Board will be dismissed.

2. Using the preponderance of the evidence standard, the members of the Level II Conduct Hearing Board will deliberate in private until a finding regarding responsibility is reached.

3. If the Respondent is found responsible, the Level II Conduct Hearing Board will deliberate and create a written record of findings and Sanctions to recommend to the Vice Provost for Student Affairs or their designee.

## Hearing Outcome

The Level II Conduct Hearing Board's findings and/or recommendation(s) will be sent to the Vice Provost for Student Affairs. **The Vice Provost for Student Affairs may increase, decrease, or otherwise change the recommended Sanction(s)** if they believe that the totality of circumstances, including but not limited to University precedent, justifies such a change.

The decision of the Vice Provost for Student Affairs shall be sent to the Respondent and appropriate University officials through University email and will set forth any findings regarding responsibility and any sanctions.

Respondents have ten (10) business days from the date of the decision of the Vice Provost for Student Affairs to file a petition for appeal (see page 28). At any time, the Respondent may schedule an appointment with the Office of Student Conduct to review their conduct record.

**Addressing Bias Incidents Through the Conduct Process**

The University of Pittsburgh is committed to maintaining a campus environment free from unlawful discrimination and harassment. As such, all referrals filed with the Office of Student Conduct will be reviewed to determine if the reported information suggests or demonstrates that the alleged *Code* violation was motivated by bias. Any violation of the University of Pittsburgh *Student Code of Conduct* motivated by a University community member's race, color, religion, national origin, ancestry, sex, age, marital status, familial status, sexual orientation, gender identity and expression, genetic information, disability, status as a veteran or any other protected group status identified in the University's Non-Discrimination, Equal Opportunity and Affirmative Action Policy, will be deemed an aggravating circumstance, and will result in the issuance of an enhanced sanction up to, and including, disciplinary dismissal from the University, and/or the addition of educational sanctions designed to address the demonstrated bias.

CONFIDENTIAL

UPITT_0013812

**Application of Sanction Enhancement**

**Process for Level I Referrals**

If a referral contains information that the underlying conduct may have been motivated by bias, the referral will be forwarded to the Office of Student Conduct. At the respondent's hearing, a Hearing Officer will first determine whether the respondent is responsible for the alleged underlying *Code* violation. Upon a finding of responsibility, the Hearing Officer will identify appropriate sanctions for the underlying violation.  To determine if the underlying *Code* violation was motivated by bias, the Hearing Officer will consider the referral and all information collected during the hearing. Upon a finding that bias was a motivating factor, the Hearing Officer will elevate the original sanction and/or add sanctions to the original sanction, in order to address the demonstrated bias.

**Process for Level II Referrals**

If a referral contains information that the underlying conduct may have been motivated by bias, the referral will first be discussed with the respondent at a disciplinary conference, as described under the "Level II Pre-Hearing Process" found on page 24 of this *Code*. During this disciplinary conference, the Hearing Officer will review all information contained in the referral and will discuss the alleged violations with the respondent. If the Hearing Officer, taking as true all facts contained in the Conduct Referral finds that the alleged underlying *Code* violation was motivated by bias, the Hearing Officer will elevate and/or add to the sanction recommendation. The Respondent will then have the opportunity to choose their response to the Hearing Officer's recommended sanction in accordance with the steps outlined under the "Level II Pre-Hearing Process".

<u>If the Respondent accepts the Hearing Officer's recommended sanctions</u>, the Respondent will waive the right to a Level II Hearing and the Appeal Process and agree to complete all sanctions as directed.

<u>If the Respondent elects a full hearing</u>, the referral will proceed under the full-hearing process (See Chapter 5 of this *Code*). The Conduct Board will determine whether the Respondent is responsible for the alleged underlying *Code* violation(s).  To determine if the underlying *Code* Violation was motivated by bias the Conduct board will consider the referral and all information collected during the hearing. If the Conduct Board finds that bias was a motivating factor for the Respondent's violation, the Conduct Board will recommend the application of Sanction Enhancement.

The Conduct Board will forward their findings and recommendation to the Vice Provost for Student Affairs. Vice Provost for Student Affairs, considering the totality of circumstances and University precedent, will apply Sanction Enhancement.

<u>If the Respondent accepts responsibility for the alleged underlying conduct violation, and elects a sanctions-only hearing</u>, the referral will proceed under the sanctions-only hearing process (See Chapter 5 page 25 of this *Code*). The Conduct Board will consider the Respondent's acceptance of responsibility and will assign sanction(s) to the accepted violation(s). To determine if the underlying *Code* violation was motivated by bias the Conduct board will consider the referral and all information collected during the hearing.  If the Conduct Board finds that bias was a motivating factor for the Respondent, the Conduct Board will recommend the application of Sanction Enhancement. The Conduct Board will forward their findings and recommendation to the Vice Provost for Student Affairs. The Vice Provost for Student Affairs, considering the totality of circumstances and University precedent as may be applicable, will apply Sanction Enhancement.

CONFIDENTIAL

**Addressing Bias Reports that fall outside of the Conduct Process**

**There may be situations where a report is focused on an expression of language, or points of view which an individual or a community found to be offensive or inflammatory, but where such expression does not rise to harassment and/or is not connected to any other underlying *Code* violation, or outside the protection of First Amendment rights. In these situations, where the reporting individual(s) or the community requests support, Student Affairs will work with the reporting individual(s) and/or the community to determine the appropriate intervention. To report incidents of bias visit <u>OEDI</u> at https://www.diversity.pitt.edu/civil-rights-title-ix/make-report/report-form.**

**Level II, Hazing, Sexual Misconduct and Nondiscrimination Appeal Process**

**Petition to Appeal and Request to Postpone Sanctions**

Appeal petitions related to Level II Hearings may be filed by Respondents. Appeal petitions related to Sexual Misconduct Violations may be filed by either the Complainant or the Respondent. Persons filing an appeal will have ten (10) business days from the date of the Hearing decision letter to file their petition with the University Review Board (URB), at URBModerator@pitt.edu. The appeal petition must include a thorough statement and all facts or evidence which support one or more of the following (Scope of Review):

1. Whether <u>Rights</u> affirmed by the Board of Trustees have been denied.

2. Whether established procedures were not followed in a manner that would have affected the decision.

3. Whether there was an absence of a rational connection between the facts found and the findings.

4. Whether the issued sanctions are substantially disproportionate to the severity of the Violation.

5. Whether new evidence is presented which was not available or discoverable during the process that if available at the time would have significantly altered the findings or sanctions.

As discussed under University Review Board procedures, the URB Moderator and applicable URB members will make their determination of whether to proceed with an appeal based on submitted documentation only.

In addition, persons filing an appeal may also request postponement of sanctions pending appeal. Such requests must explain why the imposition of sanctions must be postponed. The question to be answered in determining whether to postpone Sanction(s) is, whether the immediate imposition or postponement of the Sanction(s) will unfairly prejudice either party (the complainant or respondent), pending a final determination of the appeal. Such a request should be filed as soon as practicable following the issuance of the decision.

All decisions regarding the postponement of Sanctions will be made within five (5) business days of the receipt of such a request and will be communicated to appropriate parties in writing through the URB Moderator.

**URB Procedures for Reviewing Petition to Appeal**

The URB Moderator, in consultation with one Student and one faculty member of the URB, will review petitions and determine whether the petition meets all requirements for filing an appeal; whether the petition raises a question within the Scope of Review; and, whether the appeal will proceed. In cases involving

CONFIDENTIAL

Sexual Misconduct, the URB Moderator will consult with two faculty members of the URB. The URB Moderator and applicable URB members will make their determination of whether to proceed with an appeal based on submitted documentation only.

Where the URB has determined that an appeal's petition does not fall within the Scope of Review, the URB Moderator and two URB members will render and submit a written opinion and recommended dismissal of appeal, accompanied by the record, to the Provost for review and consideration. Upon completion of this review and consideration, notice of the outcome will be given to the Respondent. In cases involving Sexual Misconduct, both the Complainant and Respondent will receive notice of the outcome of the review of the petition to appeal.


**URB Procedures for Proceeding with an Appeal**

Where it has been determined that a petition falls within the Scope of Review, the URB Moderator will notify the applicable parties that an appeal has been initiated.

The URB Moderator will then schedule an appeal proceeding. Applicable parties to the appeal proceedings will receive a copy of the appeal petition and procedures and written notification of the time, date, and place of the proceeding.

The appeal will be conducted under the procedural guidance of the URB Moderator, who also shall determine the composition of the URB panel.

The URB panel, in its discretion, may elect to decide an appeal based solely on the submission of documents from the applicable parties, without oral argument. The URB appeal process does not include testimony from witnesses.

If the URB, in its discretion, decides to allow oral argument, applicable parties will be given reasonable time to present their position. A party may refer to any records, documents, or recordings from a prior proceeding and may present written argument. A party may question the other about their argument, except in cases involving Sexual Misconduct. Members of the URB panel and the URB Moderator may question the parties.

The URB panel may remand a matter to the Office of Student Conduct or The Office of Civil Rights and Title IX for further proceedings when the URB panel determines that there are insufficient written findings or prejudicial procedural error. In other cases, the URB panel, by a majority, shall forward a written opinion, recommend action, and complete record to the Provost, or their designee. There may be an accompanying minority opinion.

Once a decision is made by the Provost or their designee, applicable parties will be notified.


**URB Structure**

The URB shall be a standing body of University community members appointed for staggered terms of two years. Appointment shall be made in the following manner.

1. A sufficient number of faculty members elected by the University Senate.

2. Five (5) graduate and professional Students appointed by the Graduate and Professional Student Association.

3. Five (5) undergraduate Students.
   a. Two (2) appointed by the General Studies Student Council.
   b. Three (3) appointed by the Undergraduate Student Government.

CONFIDENTIAL

In matters involving sexual misconduct, no Students shall be on the panels. Initiated appeals shall be heard by a review board of members. Except in cases involving sexual misconduct, the URB shall be composed of two faculty members and three Students.

**URB Moderator**

Administrator(s), who shall serve as the URB Moderator, is authorized to:

1. Conduct the administrative and procedural operation of the URB.

2. Determine the appropriateness and completeness of Petitions to the URB in consultation with one Student and one faculty member of the URB.

3. Provide advice and assistance to members of the University community regarding the processing of an appeal.

4. Select members from the URB membership to serve on review boards.

5. Moderate all proceedings before the URB.

CONFIDENTIAL

UPITT_0013816

# CHAPTER 6: Sexual Misconduct Process and Procedures Reporting Sexual Misconduct and University Response

This Chapter is a supplement to University Policy CS 20 (Sexual Misconduct).

This chapter references procedures pertaining to the University's prohibition against sexual misconduct. This chapter does not apply to the University's prohibition of "Sexual Harassment" as specifically defined in and addressed in Chapter 7 and under Policy CS 27.

## Commonly Used Terms:

**Complainant**: A University community member who files a referral that alleges a violation of the *Code*.

**Respondent**: Student alleged to have violated the *Code*.

### Reporting Sexual Misconduct

Several options are available for you to report sexual misconduct.

- You may file a complaint with the Office of Civil Rights and Title IX. This office generally investigates complaints of sexual misconduct against members of the University community, including faculty, staff, and students (**412-648-7860**).

- You may file a report through Pitt Concern Connection.

- You may file a criminal complaint by contacting the Pitt police (**412-624-2121**) or City of Pittsburgh police (**911**).

- Although the University encourages Complainants to make formal reports as outlined above, including providing contact information for the reporter, you may file an anonymous complaint using the Pitt Concern Connection or on the University of Pittsburgh Police Department Web site. See http://police.pitt.edu/. Anonymous reports greatly limit the University's ability to respond to and investigate the report.

As part of the University's response to a report of sexual misconduct, and regardless of whether there has been a request for formal disciplinary or law enforcement action, the University may impose interim measures or offer accommodations to address issues that impact the Complainant or Respondent's educational, living or work environments. These interim measures can often be put in place very quickly, prior to the resolution of any referral, investigation, or criminal proceeding.

Once imposed, the University will take necessary action to enforce the implemented measures. Anyone who becomes aware of or has a concern about a Student's failure to follow any University-imposed interim measure or accommodation, should report this concern to the Office of Student Conduct at 412-648-7910 or studentconduct@pitt.edu.

### Interim Measures, Accommodations, and Resource Assistance for Complainants and Respondents

To quickly address a situation, the University, where it determines it is appropriate, may impose a wide-range of measures, or offer accommodations, on a limited or temporary basis, to any Complainant or Respondent. Such measures or accommodations may include:
- Any interim action as stated in Chapter 5
- A No Contact Order

31

UPITT_0013817

- Change in University-related class or work schedules or job assignments
- Change in University-owned housing
- Assistance from University staff in completing housing relocation
- Assistance in addressing off-campus living arrangements
- Restricting a Student's access to certain University facilities or activities pending resolution of a matter
- Assistance with connecting to University's SafeRider program
- Access to academic support services, such as, but not limited to, tutoring
- Rescheduling of exams and assignments
- Availability of alternative course completion options, including, but not limited to the opportunity to change class schedules by transferring course sections or withdrawing without penalty
- Voluntary leave of absence
- Any other interim measure or accommodation necessary and appropriate to facilitate the Complainant's or Respondent's access to educational opportunities
- Assistance with contacting the appropriate police department
- Access to counseling services, including assistance in arranging an initial appointment, on and/or off-campus
- Access to and assistance with obtaining necessary medical services
- Access to and assistance with connecting to pastoral care and support through University Chaplain's Office
- Assistance in contacting community resources such as Pittsburgh Action Against Rape or other support services
- Assistance in contacting legal resources such as County Bar Association Legal Referral, or other legal support
- Guidance and support with filing a report through the Office of Civil Rights and Title IX and/or through the criminal justice process.

## Advisor or Support Person

Both a Complainant and a Respondent are entitled to one advisor or support person of their choice, and the advisor or support person may accompany the party to any meeting or proceeding under these processes. However, the advisor or support person shall not be permitted to participate directly in the Informal or the Formal resolution process. This includes advisors who are also attorneys. An advisor or support person may not stand in place of either the Complainant or the Respondent, and information regarding the progress of the inquiry or investigation will only be shared with the Complainant or Respondent, and not the advisor of choice. If the advisor or support person has any questions, they should contact Associate Vice Chancellor for Civil Rights and Title IX, not the individual investigator. In keeping with the University's desire to resolve sexual misconduct complaints in a timely manner, the University reserves the right to proceed with any meeting regardless of the availability of the Student's advisor or support person.

## Informal Resolution

The Informal Resolution process is a voluntary process, available to Complainants, which attempts to reach a resolution without initiating the Formal Complaint Process and a specific finding of a University Policy and/or *Code* violation. This process can include the application of Interim Measures, as referenced below. Under the Informal Resolution process, no disciplinary action is taken. Rather, the Director of Civil Rights & Title IX will review the facts and circumstances of the situation with the Complainant and based on the severity of the alleged incident make a determination on whether the Informal Resolution process is an appropriate response. In this process, the, the Director of Civil Rights & Title IX or their designee

32

will contact the parties involved separately, review the allegations presented and develop an action plan to address the conduct.

A Complainant may choose to start with the Informal Resolution process in an attempt to resolve the issue and then choose to move to the Formal Complaint Process if needed or desired. A written record of any measures, meetings or communications from this Informal Resolution process will be kept on file in the Office of Civil Rights and Title IX. The Office of Civil Rights and Title IX maintains all informal resolution process records and files for seven years. Once an incident has been resolved through the Informal Process the matter is closed. A violation of any action plan instituted under the informal resolution process may trigger the Formal Complaint process or disciplinary action under the *Code*.

The University will also consider additional interim measures appropriate to the situation at hand. When necessary, the University may make any "interim" measure permanent. The imposition of interim measures or accommodations does not affect the ability of the Complainant to pursue disciplinary action.

### Formal Complaint Process and University-Initiated Investigations

The Formal Complaint process is initiated when the Complainant provides a signed statement that includes a brief description of the alleged incident and, to the extent known, the Respondent's name(s) and the date, time, and location of the incident (hereinafter "Complaint"). The Formal Complaint process may also be initiated by the University under appropriate circumstances. The Formal Complaint process involves a prompt, and equitable investigation conducted by an Investigator. The investigation is a fact-finding process, giving all parties notice and the opportunity to be heard, to identify witnesses and to offer evidence, and to pose questions to parties and witnesses. Interim measures may be applied at any time throughout the Formal Complaint process.

The Formal Complaint process will generally progress as follows:

1. Once the Complaint is received or the University otherwise initiates the Formal Complaint process, an Investigator will interview the Complainant.

2. Following the completion of their interview with the Complainant, the University Investigator will prepare an initial inquiry memorandum and notify the Assistant Vice Chancellor for Compliance, Investigations & Ethics and the Associate Vice Chancellor for Civil Rights and Title IX as to whether or not the allegations set forth in the Complaint, if substantiated, would constitute a violation of the University's Sexual Misconduct Policy, and accordingly, a violation of the *Code*.

   a. If the Investigator's notification indicates that such allegations, if substantiated, would not constitute a violation of University's Sexual Misconduct Policy, the Associate Vice Chancellor for Civil Rights and Title IX, may dismiss the Complaint, and that decision shall be final, barring new information. The Associate Vice Chancellor for Civil Rights and Title IX shall provide the Complainant and Respondent(s) with written notice of such dismissal.

   b. In the event that the Investigator's notification indicates that the allegations set forth in the Complaint, if substantiated, would constitute a violation of University Policy, or if the Assistant Vice Chancellor for Compliance, Investigations & Ethics and/or the Associate Vice Chancellor for Civil Rights and Title IX determines that the matter should be investigated, the Investigator will conduct a fact-finding investigation. Steps in this investigation will include, as appropriate:

      • The Respondent will be provided with written notification of investigation and be

33

UPITT_0013819

made aware that a Formal Complaint has been submitted to the Office of Diversity and Inclusion. The Respondent will be provided with an opportunity to review the Complaint at the Office of Compliance, Investigations & Ethics.

- The Complainant will be provided with written notification that a full investigation of their Formal Complaint is underway.
- The University Investigator will interview relevant witnesses and review relevant physical, documentary, or other evidence.
- As described below, each party will be given an opportunity to identify relevant witnesses. In order to have a prompt and equitable process, the investigator may provide deadlines for providing information. Delays in providing witness contact information and/or evidence may impact the University Investigator's ability to consider these elements.

3. The University Investigator may consider the credibility of the parties and witnesses and relevant information, including evidence of pattern. Both parties may provide information and names of witnesses to the University Investigator. The University Investigator will not apply rules of evidence followed in court proceedings and will not entertain legal motions. Legal rules pertaining to the wording of questions, hearsay, and opinions will not be applied. Reasonable rules of relevancy will guide the University Investigator in deciding on the admissibility of evidence and witness statements. Reasonable limits may be imposed on the number of factual witnesses and the amount of cumulative evidence that may be introduced.

4. After the Complainant(s) and/or Respondent(s) have been interviewed by the University Investigator, each will be provided with an opportunity to review a written summary of their own interview. The Complainant and Respondent will then have five (5) business days from the date the summary is made available to review their own interview summary and provide any comments or new evidence to the Investigator. Comments will be reviewed and retained in the investigative file but may not necessarily result in a change to the summary.

5. After the Investigator concludes gathering and evaluating evidence, including witness interviews, a report of investigation will be prepared. At this time, the Complainant and Respondent will have an opportunity to review, in the Office of Compliance, Investigations & Ethics, the report of investigation. The report of investigation will include the relevant information provided by the Complainant, Respondent, and any witnesses, as well as reference other relevant evidence gathered during the investigation which will be considered in making a determination regarding the alleged University's Sexual Misconduct Policy and/or *Code* violation. Within five (5) business days of the date that the report of investigation was first made available for review, the Complainant and Respondent must submit verbally or in writing to the Investigator any comments (including additional statements, proposed witness questions and additional evidence) concerning the summary. This portion of the investigation may be an iterative process.

6. Following the receipt of any comments on the investigative summary, or after the five (5) day period has lapsed without comment, the Investigator will prepare a final report of investigation that includes a determination of whether it is more likely than not that a violation has or has not occurred. The final written report will include the basis upon which the Investigator reached their determination of responsibility. This determination will be made using the preponderance of the evidence standard, asking whether it is more likely than not that the University's Sexual Misconduct Policy has been violated.

7. The report will be provided first to the Assistant Vice Chancellor for Compliance, Investigations & Ethics for review and input. The AVC for CIE will consult with the Office of University Counsel and submit the final report to the Associate Vice Chancellor for Civil Rights and Title

34

IX. The Associate Vice Chancellor for Civil Rights and Title IX will forward to the Vice Provost for Student Affairs or their designee the final report along with proposed or recommended Sanctions. The Vice Provost for Student Affairs or their designee will have discretion to accept or alter the recommended Sanction(s)s, if they believe that the totality of circumstances, including but not limited to University precedent, justifies such a change. Once the Vice Provost for Student Affairs or their designee has made a determination on Sanctions, either the Office of Civil Rights and Title IX or the Vice Provost for Student Affairs or their designee will provide the decision letter, to both the Complainant and Respondent. At this time, a copy of the final investigation report will be available in the Office of Compliance, Investigations & Ethics for review.

8. Both the Complainant and the Respondent may submit an appeal to the University Review Board (URB) within ten (10) business days from the date of the decision letter.  See the Level II Hearing Appeal Process.

**The University's Prohibition of Retaliation**

Retaliation is prohibited and will constitute separate grounds for disciplinary action. Retaliation is the act of taking adverse action against a complainant, a respondent, or any other person involved in the process based on the person's reporting or participation in the process under the Sexual Misconduct Policy. Retaliation includes behavior on the part of the respondent or the complainant and other related persons, including, but not limited to, acquaintances, friends, and family members. Although independent action will be taken against anyone engaging in retaliation, the complainant and the respondent should not encourage such actions and will also be held responsible to the extent of their involvement in the retaliation. An individual who believes they have experienced retaliation should contact the Office of Civil Rights and Title IX, the Office of Compliance, Investigations & Ethics and/or submit a report to the Pitt Concern Connection, and the University will investigate the complaint. If the University determines that evidence exists to support that retaliation occurred, appropriate action will be taken regardless of the outcome of the underlying sexual misconduct complaint. Investigations of retaliation in connection with this Chapter will follow the investigative procedures outlined above.

**Filing with External Agencies**

Any person may file a complaint with the U.S. Equal Employment Opportunity Commission or the U.S. Department of Education's Office for Civil Rights. Inquiries may also be directed to the Office for Civil Rights of the U.S. Department of Education at (800) 421-3481 or by email at OCR@ed.gov.

CONFIDENTIAL

# CHAPTER 7: Sexual Harassment Process and Procedures

## Reporting Sexual Harassment and University Response

This Chapter is a supplement to University Policy CS 27 (Title IX).

This Chapter applies to the University's administration of allegations that constitute "Sexual Harassment" (as defined by University Policy CS 27 Title IX consistent with Title IX of the Educational Amendments of 1972 and associated regulations). Allegations that do not constitute Sexual Harassment may fall under another section of the Student Code of Conduct, including Chapter 6, which addresses Sexual Misconduct that does not otherwise constitute Sexual Harassment.

## Commonly Used Terms:

**Complainant**: An individual who is alleged to be the victim of conduct that could constitute Sexual Harassment.

**Respondent**: An individual who has been reported to be the perpetrator of conduct that could constitute Sexual Harassment.

**Sexual Harassment**: Conduct on the basis of sex occurring in the United States and occurring in or related to a University Education Program or Activity that satisfies one or more of the following: (1) An employee of the University conditioning the provision of an aid, benefit, or service of the University on an individual's participation in unwelcome sexual conduct; (2) Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the University's Education Program or Activity; or (3) Sexual assault, dating violence, domestic violence, or stalking (as these terms are defined in University Policy CS 27).

> **Please Note:** other forms of sexual harassment and sexual misconduct that are not otherwise included in this definition are still considered misconduct in violation of University Policy CS 20 and Chapter 6 of this *Code*.

### Reporting Sexual Harassment

Anyone can report incidents of Sexual Harassment through any of the following channels:

- Reports can be made directly (in-person, by mail, by telephone, by electronic mail, or by utilizing the online reporting form) to the Title IX Coordinator and/or the Office of Civil Rights and Title IX using any of the following contact information:

    Director of Civil Rights & Title IX:  Vanessa Love
    (see https://www.diversity.pitt.edu/people)
    Address: Office of Equity, Diversity, and
    Inclusion
    18th Floor, Cathedral of Learning
    4200 Fifth Ave
    Pittsburgh, PA 15260
    Phone: (412) 648-7860
    Email: titleixcoordinator@pitt.edu

- To the Pitt Concern Connection via website at https://www.coi.pitt.edu/resources/pitt-concern-

CONFIDENTIAL

UPITT_0013822

connection-report-concerns, phone at 800-468-5768, or text at 412-903-3456.

- To the Office of Compliance, Investigations, and Ethics (compliance@pitt.edu)

To make criminal reports of Sexual Harassment and/or sexual misconduct, individuals may contact the University of Pittsburgh Police by phone at 412-624-2121 or, in the case of immediate emergency, by calling 9-1-1. Criminal reports are not investigated as outlined herein as such reports will, instead, be investigated by the police and other relevant authorities. Individuals are, however, permitted and encouraged to report incidents of Sexual Harassment and sexual misconduct both to the Office of Civil Rights and Title IX and to the police.

The University will keep confidential the identity of any Complainant of sex discrimination, including any Complainant who files a Formal Complaint of Sexual Harassment, as well as the identity of any Respondent or other witness, except as may be permitted or required by law, or to carry out the purposes of University Policy and Procedure CS 27, including to conduct any investigation, hearing, or judicial proceeding arising hereunder.

**Filing a Formal Complaint**

Once a report of Sexual Harassment is received by the Office of Civil Rights and Title IX, the office will work with the Complainant to determine whether the Complainant wishes to file a Formal Complaint. While a Formal Complaint is not required to provide the Complainant with Supportive Measures (discussed further below), a Formal Complaint is required to proceed with the Formal Grievance Process or an Informal Resolution. If the Complainant declines to file a Formal Complaint, the Title IX Coordinator may separately sign a Formal Complaint and refer the matter to the Office of Compliance, Investigations & Ethics for investigation and ultimately, adjudicate the report of Sexual Harassment. While reports of Sexual Harassment can be made by anyone, Formal Complaints may only be filed by a Complainant or a Title IX Coordinator.

If no Formal Complaint is filed, the Office of Civil Rights and Title IX will still offer Supportive Measures to the Complainant, but the University is not legally permitted to issue any sanctions against the Respondent related to the report of Sexual Harassment as there can be no adjudication or finding related to the report absent the filing of a Formal Complaint.

If the Office of Civil Rights and Title IX receives allegations of Sexual Harassment against more than one Respondent, or by more than one Complainant against one or more Respondents, or by one party against the other party, where the allegations of Sexual Harassment arise out of the same facts or circumstances, the Formal Complaints shall be consolidated and investigated and/or resolved through one single process.

**Supportive Measures**

Upon receipt of a report of Sexual Harassment, whether or not the Complainant decides to move forward with filing a Formal Complaint, the Office of Civil Rights and Title IX shall offer to the Complainant Supportive Measures and facilitate the implementation of such Supportive Measures to protect the safety and well-being of the Complainant. If a Formal Complaint is filed, Supportive Measures will also be made available as appropriate to any involved party.

The University will maintain as confidential any Supportive Measures provided to the parties, to the extent that maintaining such confidentiality would not impair the University's ability to provide the Supportive Measures.

CONFIDENTIAL

UPITT_0013823

**Emergency Removal**

Under extraordinary circumstances, the University may remove a Respondent prior to adjudication of any Formal Complaint under the Sexual Misconduct Policy or Interim Title IX Policy if, after undertaking an individualized safety and risk analysis, the University determines that the Respondent poses an immediate threat to the physical health or safety of any individual arising from the allegations of Sexual Harassment. When issuing an emergency removal, the University will provide the Respondent with notice and an opportunity to challenge the decision immediately following the removal.

**Initial Response to a Formal Complaint**

The University intends to resolve Formal Complaints of Sexual Harassment in a reasonably prompt manner, though delays in the process may arise from time to time. When a Formal Complaint is filed, the University will examine, adjudicate, and/or resolve the matter consistent with University Policy and Procedure CS 27 and this Chapter.

### A.   Notice of Formal Complaint

Upon receipt of a Formal Complaint alleging Sexual Misconduct, the Office of Compliance, Investigations & Ethics will provide written notice to any known Complainant(s) and Respondent(s) outlining the following:

- University Policy and Procedure CS 27

- The allegations potentially constituting a violation of University Policy CS 27, including identification of Complainant(s) and Respondent(s), the conduct allegedly constituting Sexual Harassment, and the date and location of the alleged incident, if known.

- The standard of evidence being the preponderance standard, as well as a statement the Respondent is presumed not responsible (but that this presumption does not imply that the allegations did not occur or that a Respondent is truthful or that a Complainant is lying).

- The right of both parties to have an Advisor of choice.

- The right of both parties to review evidence consistent with this Chapter.

- The relevant section of the *Code* and/or University policies and guidelines related to knowingly making false statements or knowingly submitting false information.

The written notice shall be provided to Respondent and Complainant at least five (5) business days prior to any initial interview conducted by an investigator related to the Formal Complaint for parties to have sufficient time to prepare for the initial interview.

In addition to the notice of Formal Complaint, all applicable parties shall receive notices of any additional allegations discovered and/or investigated in the course of the investigation of the Formal Complaint, as well as the date, time, location, participants, and purposes of any live hearing or other proceeding at which the party is expected or permitted to attend.

### B.    Initial Inquiry

Upon receipt of a Formal Complaint alleging Sexual Misconduct, the Office of Compliance, Investigations & Ethics will conduct an initial inquiry, as discussed in University Policy CS 27. If the Formal Complaint

38

contains allegations that constitute Sexual Harassment, those allegations will be resolved consistent with University Policy and Procedure CS 27.

It should be noted that an investigation may reveal facts or circumstances not otherwise known at the time of the initial report or filing of the Formal Complaint. If any facts or circumstances relevant to the evaluation of the Formal Complaint are discovered as the matter proceeds, it may be necessary for the Office of Compliance, Investigations & Ethics to reevaluate which University Policy is appropriate and applicable to the matter. To the extent a matter is determined to fall under a different policy than that which was originally believed to be applicable, the parties and other additional individuals, as appropriate, will be notified and the matter will proceed under the University Procedure corresponding with the appropriate University Policy in accordance with that evaluation.

### C.    Dismissal of Formal Complaint

If a Formal Complaint contains allegations that do **not** constitute Sexual Harassment as defined in University Policy CS 27 or the Formal Complaint otherwise does not meet the requirements of University Policy CS 27, the Formal Complaint or individual allegations therein will be "dismissed" under University Policy CS 27. A Formal Complaint or individual allegations therein may be "dismissed" under University Policy CS 27 for reasons including, but not necessarily limited to the following:

- if the conduct alleged does not constitute Sexual Harassment;

- if the conduct alleged was not within or otherwise related to a University Education Program or Activity;

- if the conduct alleged did not occur against a person in the United States; or

- if the Complainant notifies the Title IX Coordinator in writing that the Complainant wishes to withdraw the Formal Complaint or allegation(s) therein.

If a Formal Complaint or individual allegations therein are "dismissed," the allegation will still be examined to determine whether it is appropriate to adjudicate under a separate University Policy (including University Policy CS 20 Sexual Misconduct and University Policy CS 07 Nondiscrimination, Equal Opportunity, and Affirmative Action).

### D.    Appealing Dismissal of Formal Complaint

When a Formal Complaint is "dismissed" under University Policy CS 27, the University will notify the parties in writing and will provide the reasons for the "dismissal." Within ten (10) business days upon being provided written notice for the "dismissal", either the Complainant or the Respondent can appeal the "dismissal" on any of the following bases:

(1) Procedural irregularity that affected the outcome of the matter;

(2) New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter; or

(3) The Title IX Coordinator, Investigator, or Decision-Maker had a conflict of interest or bias for, or against Complainants or Respondents generally or the individual Complainant or Respondent that affected the outcome of the matter.

39

UPITT_0013825

The appeal of a dismissal of a Formal Complaint or allegations therein will be reviewed by an individual designated by the Title IX Coordinator who is appropriately trained and who was not involved in the original determination leading to the dismissal of the Formal Complaint or allegations therein. If the appealing party cites to any conflict of interest or bias on the part of the Title IX Coordinator as a basis for the appeal, the Vice Chancellor for Equity, Diversity, and Inclusion (VC-OEDI) shall be responsible for designating the individual who shall review the appeal.

## Informal Resolution

At the election and agreement of the Complainant(s) and Respondent(s), the University will facilitate an Informal Resolution of the Formal Complaint unless otherwise prohibited (i.e. when the Complainant is a University Student, and the Respondent is a University employee). This process can be pursued at any time prior to a determination of responsibility of the Formal Complaint.

Informal Resolutions will be appropriate processes crafted by the parties in consultation with the Office of Civil Rights and Title IX.

Once the parties agree upon using the Informal Resolution process, the parties will receive notice of the process agreed upon and both Complainant and Respondent will sign and submit a consent form to proceed through the Informal Resolution process. Once the signed consent forms are submitted, the parties must continue with the Informal Resolution process until the matter is resolved. The parties will not be able to withdraw or alter the terms of the agreed upon Informal Resolution process, however a party may withdraw from the Informal Resolution Process at any time *prior* to agreeing to the Final Informal Resolution and resume the Formal Grievance Process as outlined herein. Parties will not have any opportunity to appeal any result of an Informal Resolution.

## Formal Grievance Process

## Investigation

If the initial inquiry resulted in a recommendation for a full investigation, an assigned investigator with the Office of Compliance, Investigations & Ethics shall gather evidence and witness statements related to the allegations in the Formal Complaint. The assigned investigator shall not be the Title IX Coordinator, the Decision-Maker, or the Appellate Decision-Maker.

The investigation will involve the collection and review of relevant evidence, including documents, electronic data, tangible objects, and/or any other material pertinent to the allegations. All available evidence shall be identified and documented. Where possible, all available evidence shall be collected and maintained in electronic format. Both Complainant and Respondent will have an equal opportunity to present evidence to the investigator.

The investigation will involve the identification and interviewing of witnesses with relevant information. Both Complainant and Respondent will have an equal opportunity to suggest witnesses to be interviewed.

Neither the investigator nor the Decision-Maker may access, consider, disclose, or otherwise use a party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the party, unless the applicable party provides voluntary, written consent to do so for the purposes of a grievance process.

40

UPITT_0013826

The Complainant and Respondent are permitted to bring one Advisor of their choice and one Support Person of their choice to any/all meetings with the investigator. Neither Advisors nor Support Persons are permitted to participate in any meetings with the investigator, but they can be present for the counsel and support of the party.

### A.   Review of Evidence

Prior to the completion of the investigative report, the investigator shall provide both Complainant and Respondent with an equal opportunity to inspect and review any evidence that is directly related to the allegations in the Formal Complaint that is obtained as part of the investigations (including witness summaries), regardless of whether that evidence is deemed relevant by the investigator.

Parties will be permitted to submit a written response to the evidence for the investigator to consider. This written response is due ten (10) business days from the date upon which the parties were provided access to the evidence referenced above.

### B.   Investigative Report

At the conclusion of the investigation and, after reviewing the written submission of the parties (if any), the investigator shall prepare an investigative report.  The report shall fairly summarize the allegations and all relevant evidence. The report shall also include a description of the procedural steps taken during the investigation, including notifications sent to parties, interviews, site visits, and methods used to gather evidence.

Once complete, the investigative report will be provided to the Decision-Maker as well as both the Complainant and the Respondent (and their Advisors of choice). Parties will be permitted to submit to the Decision-Maker a written response to the investigative report. This written response is due ten (10) business days after the date upon which the parties were provided the investigative report. The hearing shall take place no sooner than one (1) business day after the written responses to the investigative report are due to the Decision-Maker.

### C.   Hearing

A live hearing will take place related to the allegations of Sexual Harassment. The live hearing shall follow procedures and rules of decorum outlined by the Office of Civil Rights and Title IX and provided to the parties and their Advisors prior to the hearing.

The hearing may be conducted in-person or, at the election of either party or the discretion of the University, virtually, so long as both parties and the Decision-Maker can, at all times, see the witness and/or individual speaking. The only individuals permitted to attend the live hearing are the Complaint(s), Respondent(s), the parties' respective Advisors, witnesses, the Decision-Maker, any other person required by the University to conduct the hearing, and any other person required by law. A recording (either audio or audio-video) or a transcript of any live hearing will be made available to the parties for review.

The hearing is overseen by the Decision-Maker, who will make a determination as to whether the Respondent is responsible for violating University Policy CS 27. The Decision-Maker shall not be the Title IX Coordinator, the investigator, or the Appellate Decision-Maker.

For purposes of the hearing, parties can bring an Advisor of their choosing. If a party declines to select an Advisor, the University will assign one for the hearing. At the hearing, parties, through their Advisors, will have the opportunity to cross-examine all witnesses and the other party. Note: direct cross-examination conducted by a party is not permitted; all cross-examination must be conducted by Advisors. If a party or

41

witness fails to participate in the hearing or otherwise does not make themselves available for cross-examination, the Decision-Maker is not permitted to consider any statement made by that party or witness (whether at the hearing or during the prior investigation) in reaching a determination. The Decision-Maker cannot draw any inference regarding the responsibility of the Respondent based solely on a party's or witnesses absence from the hearing or refusal to answer cross-examination or other questions.

Only relevant questions may be asked of a party or witness. Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant unless such questions and evidence are offered to prove someone other than the Respondent committed the conduct alleged in the Formal Complaint, or if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent. Questions or evidence that constitute, or seek disclosure of, information protected under a legally recognized privilege are prohibited unless the person holding such privilege has waived the privilege. To the extent the Decision-Maker prohibits any questions as bring irrelevant, the Decision-Maker must explain their rationale.

### D.   Determination of Responsibility

After the hearing is complete, the Decision-Maker will decide, after fairly considering all relevant evidence, they are permitted to consider in accordance with University Policy and Procedure CS 27, by a preponderance of the evidence, the outcome of each allegation in the Formal Complaint concerning whether the Respondent has violated University Policy CS 27. The Decision-Maker shall issue a decision on the allegations contained in the Formal Complaint in the form of a written determination of responsibility. The written determination shall include:

(1)  Identification of the allegations potentially constituting Sexual Harassment

(2)  A description of the procedural steps taken from the receipt of the Formal Complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held;

(3)  Findings of fact supporting the determination;

(4)  Conclusions regarding the application of University Policy CS 27 to the facts;

(5)  A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility, any disciplinary sanctions the recipient imposes on the Respondent, and whether remedies designed to restore or preserve the Complainant's equal access to University's Education Program or Activity will be provided; and

(6)  The appeal process.

The written determination of responsibility shall be provided to both the Complainant and Respondent on the same day. The determination of responsibility becomes final either on the date that the written determination regarding the appeal, if any, is provided to the parties, or if an appeal is not filed, the date on which an appeal would no longer be considered timely.

### E.   Sanctions

If the Decision-Maker determines, by a preponderance of the evidence, that University Policy CS 27 was violated, the written determination of responsibility containing all information listed above, other than the sanction(s), shall be submitted to the appropriate chair, dean, director, supervisor, responsibility center head, or designee to make a determination regarding the appropriate sanction(s). The appropriate chair, dean, director, supervisor, responsibility center head, or designee will then provide the sanctions

CONFIDENTIAL

determination to the Decision-Maker, who will incorporate the sanctions into the written determination of responsibility before distributing the same to the parties. Sanctions will not be imposed until the grievance process is complete, including, as applicable, until the time for an appeal of the outcome runs out or until a determination is made regarding any such appeal.

The University may impose a wide range of Sanctions for violations of University Policy CS 27, including, but not limited to disciplinary reprimand, educational meetings, suspension, dismissal, and/or termination. These examples are provided for the purpose of notice and do not reflect the probability that any particular outcome will occur.

### F.  Appeals

After the written determination of responsibility is provided to the parties, either the Complainant or Respondent can appeal the determination. Appeals will not involve a full rehearing or a redetermination of the facts of the matter, but will review only whether the decision erred in one of four (4) limited grounds on which an appeal may be filed (collectively referred to as the "Scope of Review"), which are as follows:

(1) Procedural irregularity that affected the outcome of the matter;

(2) New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter;

(3) The Title IX Coordinator, investigator, or Decision-Maker had a conflict of interest or bias for or against Complainants or Respondents generally or the individual Complainant or Respondent that affected the outcome of the matter; or

(4) The sanction(s) are substantially disproportionate to the severity of the violation.

The Complainant and Respondent shall have ten (10) business days from the receipt of the written determination of responsibility to file a petition for appeal, this appeal shall include a written statement in support of, or challenging the outcome and must include a basis for the appeal that cites one or more of the grounds listed under the Scope of Review.  The appeal petition must include a thorough statement and all facts or evidence which support the appeal. To the extent either party bases all or part of any appeal on an alleged error or conflict of interest on the part of the Office of Civil Rights and Title IX or any other individual involved with the grievance process, the Office of Civil Rights and Title IX shall have the opportunity to respond to the writing within ten (10) business days of being provided with the appeal petition(s).

A panel of three (3) members of the University Review Board ("URB") shall act as the Appellate Decision-Makers. One of the members of the URB shall be deemed the URB Moderator. None of the Appellate Decision-Makers shall be University students, the Title IX Coordinator, the investigator, or the Decision-Maker from the original hearing.

Upon receipt of an appeal petition, the URB shall first determine whether the appeal properly falls within the Scope of Review. If the URB determines the appeal does not fall within the Scope of Review, the URB shall send written notice of the outcome to the party that submitted the petition for appeal. Where it has been determined that an appeal petition falls within the Scope of Review, the URB Moderator will notify the applicable parties that an appeal has been initiated and will provide all parties with the submitted appeal petition(s) and applicable procedures. The URB may elect to resolve the appeal based solely on the written submissions. To the extent the URB decides that a hearing is necessary or would aide in the resolution of the appeal, the URB shall schedule a hearing and notify all applicable parties.

Once the URB reaches a decision as to the outcome of an appeal (whether based solely on the written submission or after a hearing is held), the URB shall issue a written decision describing the result of the appeal and the rationale for the result. The outcome of the appeal shall be provided to all applicable parties on the same day.

Generally, if the URB finds that an appeal is valid and overturns the outcome of the original Decision-Maker based on appeal basis #1 (procedural irregularity), #2 (new evidence), or #3 (conflict of interest or bias), the Appeals Board will refer the appeal back to the appropriate stage of the grievance process to

effectively permit the correction of the error. Generally, the Appeals Board should complete its work within thirty (30) business days.


## Retaliation

The University strictly prohibits retaliation against anyone involved as a party or witness in the process of adjudicating a Formal Complaint under this University Policy CS 27. Retaliation includes, but is not limited to, acts on behalf of the University or any person designed to intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX or this Policy, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this Policy. The University will investigate all acts of reported retaliation. Complaints alleging retaliation may be filed according to the University grievance procedures as found in University Procedure CS 27.

All reports supported by evidence, regardless of the outcome of the underlying Formal Complaint of Sexual Harassment, will be referred for disciplinary action and resolution pursuant to the procedures outlined in Chapter 6, relating to Sexual Misconduct.

The exercise of rights protected under the First Amendment do not constitute retaliation prohibited under this section.

CONFIDENTIAL

# CHAPTER 8: Nondiscrimination Process and Procedures Reporting Discrimination and University Response

This Chapter is a supplement to University Policy <u>CS 07 Nondiscrimination</u>. This chapter references procedures pertaining to the University's prohibition against discrimination.

## Commonly Used Terms:

**Complainant**: A University community member who files a referral that alleges a violation of the *Code*.

**Respondent**: Student alleged to have violated the *Code*.

### Reporting Discrimination

Several options are available for you to report discrimination.

- You may file a complaint with the Office of Civil Rights and Title IX. This office generally investigates complaints of sexual misconduct against members of the University community, including faculty, staff, and students (**412-648-7860**).

- You may file a report through <u>Pitt Concern Connection</u>.

- You may file a criminal complaint by contacting the Pitt police (**412-624-2121**) or City of Pittsburgh police (**911**).

- Although the University encourages Complainants to make formal reports as outlined above, including providing contact information for the reporter, you may file an anonymous complaint using the Pitt Concern Connection or on the University of Pittsburgh Police Department Web site. See https://www.police.pitt.edu/. Anonymous reports greatly limit the University's ability to respond to and investigate the report.

As part of the University's response to a report of discrimination, and regardless of whether there has been a request for formal disciplinary or law enforcement action, the University may impose interim measures or offer accommodations to address issues that impact the Complainant or Respondent's educational, living or work environments. These interim measures can often be put in place very quickly, prior to the resolution of any referral, investigation, or criminal proceeding.

Once imposed, the University will take necessary action to enforce the implemented measures. Anyone who becomes aware of or has a concern about a student's failure to follow any University-imposed interim measure or accommodation, should report this concern to the Office of Student Conduct at 412-648-7910 or studentconduct@pitt.edu.

### Interim Measures, Accommodations, and Resource Assistance for Complainants and Respondents

To quickly address a situation, the University, where it determines it is appropriate, may impose a wide-range of measures, or offer accommodations, on a limited or temporary basis, to any Complainant or Respondent. Such measures or accommodations may include:
- Any interim action as stated in <u>Chapter 5</u>
- A No Contact Order
- Change in University-related class or work schedules or job assignments

45

UPITT_0013831

- Change in University-owned housing
- Assistance from University staff in completing housing relocation

**Advisor or Support Person**

Both a Complainant and a Respondent are entitled to one advisor or support person of their choice, and the advisor or support person may accompany the party to any meeting or proceeding under these processes. However, the advisor or support person shall not be permitted to participate directly in the Informal or the Formal resolution process. This includes advisors who are also attorneys. An advisor or support person may not stand in place of either the Complainant or the Respondent, and information regarding the progress of the inquiry or investigation will only be shared with the Complainant or Respondent, and not the advisor of choice. If the advisor or support person has any questions, they should contact Associate Vice Chancellor for Civil Rights and Title IX, not the individual investigator.

In keeping with the University's desire to resolve discrimination complaints in a timely manner, the University reserves the right to proceed with any meeting regardless of the availability of the Student's advisor or support person.

**Informal Resolution**

The Informal Resolution process is a voluntary process, available to Complainants, which attempts to reach a resolution without initiating the Formal Complaint Process and a specific finding of a University Policy and/or *Code* violation. This process can include the application of Interim Measures, as referenced below. Under the Informal Resolution process, no disciplinary action is taken. Rather, an Investigator will review the facts and circumstances of the situation with the Complainant and based on the severity of the alleged incident make a determination on whether the Informal Resolution process is an appropriate response. In this process, the Investigator will contact the parties involved separately, review the allegations presented and develop an action plan to address the conduct.

A Complainant may choose to start with the Informal Resolution process in an attempt to resolve the issue and then choose to move to the Formal Complaint Process if needed or desired. A written record of any measures, meetings or communications from this Informal Resolution process will be kept on file in the Office of Civil Rights and Title IX. The Office of Civil Rights and Title IX maintains all informal resolution process records and files for seven years. Once an incident has been resolved through the Informal Process the matter is closed. A violation of any action plan instituted under the informal resolution process may trigger the Formal Complaint process or disciplinary action under the *Code*.

The University will also consider additional interim measures appropriate to the situation at hand. When necessary, the University may make any "interim" measure permanent. The imposition of interim measures or accommodations does not affect the ability of the Complainant to pursue disciplinary action.

**Formal Complaint Process and University-Initiated Investigations**

The Formal Complaint process is initiated when the Complainant provides a signed statement that includes a brief description of the alleged incident and, to the extent known, the Respondent's name(s) and the date, time, and location of the incident (hereinafter "Complaint"). The Formal Complaint process may also be initiated by the University under appropriate circumstances. The Formal Complaint process involves a prompt, and equitable investigation conducted by an Investigator. The investigation is a fact-finding process, giving all parties notice and the opportunity to be heard, to identify witnesses and to offer evidence, and to pose questions to parties and witnesses. Interim measures may be applied at any time throughout the Formal Complaint process.

46

The Formal Complaint process will generally progress as follows:

1. Once the Complaint is received or the University otherwise initiates the Formal Complaint process, an Investigator will interview the Complainant.

2. Following the completion of their interview with the Complainant, the University Investigator will complete an initial inquiry memorandum notifying the Assistant Vice Chancellor for Compliance, Investigations & Ethics and the Associate Vice Chancellor for Civil Rights and Title IX as to whether or not the allegations set forth in the Complaint, if substantiated, would constitute a violation of the University's Nondiscrimination Policy, and accordingly, a violation of the *Code*.

    a. If the Investigator's notification indicates that such allegations, if substantiated, would not constitute a violation of University's Nondiscrimination Policy, the Associate Vice Chancellor for Civil Rights and Title IX, may dismiss the Complaint, and that decision shall be final, barring new information. The Associate Vice Chancellor for Civil Rights and Title IX shall provide the Complainant and Respondent(s) with written notice of such dismissal.

    b. In the event that the Investigator's notification indicates that the allegations set forth in the Complaint, if substantiated, would constitute a violation of University's Nondiscrimination Policy, or if the Assistant Vice Chancellor for Compliance, Investigations & Ethics and/or the Associate Vice Chancellor for Civil Rights and Title IX determines that the matter should be investigated, the Investigator will conduct a fact-finding investigation. Steps in this investigation will include, as appropriate:

        • The Respondent will be provided with written notification of investigation and be made aware that a Formal Complaint has been submitted to the Office of Diversity and Inclusion. The Respondent will be provided with an opportunity to review the Complaint at the Office of Compliance, Investigations & Ethics.
        • The Complainant will be provided with written notification that a full investigation of their Formal Complaint is underway.
        • The University Investigator will interview relevant witnesses and review relevant physical, documentary, or other evidence.
        • As described below, each party will be given an opportunity to identify relevant witnesses. In order to have a prompt and equitable process, the investigator may provide deadlines for providing information. Delays in providing witness contact information and/or evidence may impact the University Investigator's ability to consider these elements.

3. The University Investigator may consider the credibility of the parties and witnesses and relevant information, including evidence of pattern. Both parties may provide information and names of witnesses to the University Investigator. The University Investigator will not apply rules of evidence followed in court proceedings and will not entertain legal motions. Legal rules pertaining to the wording of questions, hearsay, and opinions will not be applied. Reasonable rules of relevancy will guide the University Investigator in deciding on the admissibility of evidence and witness statements. Reasonable limits may be imposed on the number of factual witnesses and the amount of cumulative evidence that may be introduced.

4. After the Complainant(s) and/or Respondent(s) have been interviewed by the University Investigator, each will be provided with an opportunity to review a written summary of their own interview. The Complainant and Respondent will then have five (5) business days from the date the

CONFIDENTIAL

summary is made available to review their own interview summary and provide any comments or new evidence to the Investigator. Comments will be reviewed and retained in the investigative file but may not necessarily result in a change to the summary.

5.  After the Investigator concludes gathering and evaluating evidence, including witness interviews, a report of investigation will be prepared. At this time, the Complainant and Respondent will have an opportunity to review, in the Office of Compliance, Investigations & Ethics, the report of investigation. The report of investigation will include the relevant information provided by the Complainant, Respondent, and any witnesses, as well as reference other relevant evidence gathered during the investigation which will be considered in making a determination regarding the alleged University's Nondiscrimination Policy and/or *Code* violation. Within five (5) business days of the date that the report of investigation was first made available for review, the Complainant and Respondent must submit verbally or in writing to the Investigator any comments (including additional statements, proposed witness questions and additional evidence) concerning the summary. This portion of the investigation may be an iterative process.

6.  Following the receipt of any comments on the investigative summary, or after the five (5) day period has lapsed without comment, the Investigator will prepare a final report of investigation that includes a determination of whether it is more likely than not that a violation has or has not occurred. The final written report will include the basis upon which the Investigator reached their determination of responsibility. This determination will be made using the preponderance of the evidence standard, asking whether it is more likely than not that the University's Nondiscrimination Policy has been violated.

7.  The report will be provided first to the Assistant Vice Chancellor for Compliance, Investigations & Ethics for review and input. The AVC for CIE will consult with the Office of University Counsel and submit the final report to the Associate Vice Chancellor for Civil Rights and Title IX. The Associate Vice Chancellor for Civil Rights and Title IX will forward to the Vice Provost for Student Affairs or their designee the final report along with proposed or recommended Sanctions. The Vice Provost for Student Affairs or their designee will have discretion to accept or alter the recommended Sanction(s)s, if they believe that the totality of circumstances, including but not limited to University precedent, justifies such a change. Once the Vice Provost for Student Affairs or their designee has made a determination on Sanctions, either the Office of Civil Rights and Title IX or the Vice Provost for Student Affairs or their designee will provide the decision letter, to both the Complainant and Respondent. At this time, a copy of the final investigation report will be available in the Office of Compliance, Investigations & Ethics for review.

8.  Both the Complainant and the Respondent may submit an appeal to the University Review Board (URB) within ten (10) business days from the date of the decision letter. See the <u>Level II Hearing Appeal Process</u>.

## The University's Prohibition of Retaliation

Retaliation is prohibited and will constitute separate grounds for disciplinary action. Retaliation is the act of taking adverse action against a complainant, a respondent, or any other person involved in the process based on the person's reporting or participation in the process under the University Nondiscrimination Policy. Retaliation includes behavior on the part of the respondent or the complainant and other related persons, including, but not limited to, acquaintances, friends, and family members. Although independent action will be taken against anyone engaging in retaliation, the complainant and the respondent should not encourage such actions and will also be held responsible to the extent of their involvement in the retaliation. An individual who believes they have experienced retaliation should contact the Office of Civil Rights and Title IX and/or submit a report to the Pitt Concern Connection, and the University will investigate the

48

complaint. If the University determines that evidence exists to support that retaliation occurred, appropriate action will be taken regardless of the outcome of the underlying sexual misconduct complaint. Investigations of retaliation in connection with this Chapter will follow the investigative procedures outlined above.

CONFIDENTIAL

UPITT_0013835

# Appendix A: Sanctions

The University may impose a wide range of Sanctions for Violations of this *Code.* Any of these Sanctions may be used outside of the conduct process as an interim action to help ensure the health, welfare, safety, or educational environment of the University community or any individual member thereof, or to otherwise limit disruptions to the neighboring environments. Sanctions may be imposed by the Vice Provost for Student Affairs or their designee. A record of imposed Sanctions will be maintained in the Office of Student Conduct and any other appropriate office(s) to which the Sanction(s) or interim action(s) apply.

If a Student fails to complete Sanctions, a hold may be placed on the Student's account and/or the Student may receive additional Violations. Registered Student Organizations that fail to complete Sanctions may receive additional Violations.

Some Sanctions may affect both University and non-University opportunities, including, but not limited to studying abroad, participation in a Registered Student Organization, and employment.

# Individual Student Sanctions

**Community Engagement** — Students are required to complete community engagement that directly address the impact of their behavior. These projects involve meaningful collaboration with the affected parties or community organizations to restore trust and relationships. The Student is responsible for providing verifiable documentation that the community engagement has been completed.

**Counseling Assessment (General)** — An assessment by the University Counseling Center, which may include recommendations for additional resources.

**Counseling Assessment (Substance Use)** — An assessment by the University Counseling Center, which may include recommendations for additional resources.

**Disciplinary Dismissal** —This action results in the permanent separation of the Student from the University, its programs, and facilities. Upon Dismissal, the Student is placed on Persona Non Grata status from all University Property and is not permitted to enter or use University Property unless the Student receives permission from the Vice Provost for Student Affairs or their designee.
In accordance with University Policy, there may be no financial adjustment made to tuition or fee charges for Students who are Disciplinarily Suspended/Dismissed.

**Conduct Hold** — A restriction placed on a Student's account which may prevent activities, including, but not limited to, registering for classes and/or the issuance of a housing contract. A Conduct Hold permits the release of academic transcripts.

**Disciplinary Probation** —A designated period of time during which a Student's status is conditioned upon future behavior. The issuance of additional sanctions may occur if the Student is found to be in Violation of any University regulation during the probationary period. During the probationary period, a Student may be excluded from representing the University in intercollegiate athletics, holding a Student officer or similar position, or other extracurricular University activities. Such loss of privilege(s) will depend on each individual set of circumstances.

**Educational Sanction** — The Respondent is required to complete a project or activity designed to promote learning and prompt changes to behavior and prevent further misconduct. Educational outcomes may include but are not limited to, workshops, seminars, meetings, assignments, and substance use assessments.

CONFIDENTIAL

**Disciplinary Reprimand** — A written and/or oral warning to students about their behavior.

**Disciplinary Suspension** — A termination or a restriction of a Student's ability to register for classes for a period of time. During the Disciplinary Suspension, a Student is excluded from classes and all other University privileges or activities. The Student will be Persona Non Grata from all University Property during the suspension and may not enter or use University Property unless the Student receives permission from the Vice Provost for Student Affairs or their designee. Prior to returning, the Student must contact the Office of Student Conduct to discuss the Student's return to campus. In accordance with University Policy AC 67 Termination of Registration, there may be no financial adjustment made to tuition or fee charges for Students who are Disciplinarily Suspended/Dismissed.

**Fines** — A monetary Sanction that may be applied to any violation of the *Code*. This fine may be in addition to any restitution owed.

**Information Technology Resource Probation** — A designated period of time during which a Student's access to University technology is conditioned upon a Student's future behavior. The issuance of additional sanctions may occur if the Student is found to be in Violation of any University technology regulations during the probationary period.

**Information Technology Resource Suspension** — A temporary loss of part or all of a Student's access to information technology resources for a specified period of time. No refund of any fees charged and applied to information technology resources will be made.

**Information Technology Resource Termination** — A permanent loss of part or all of a Student's access to information technology resources. No refund of any fees charged and applied to information technology resources will be made.

**Involuntary Change of Housing Assignment** — A written directive to relocate a resident to an alternative housing accommodation within a specified period of time which is imposed by the Vice Provost for Student Affairs or their designee. Involuntary Change of Housing Assignment is imposed to help ensure the safety and well-being of a member of the University community, to help ensure the Student's own physical or emotional safety or well-being, to protect the security and structure of University Property, or to help ensure that a building/floor has a community environment that is conducive to academic success.

**Personal Assistance and Cannabis Education 1: PACE 1** consists of completing an individual meeting and modules. To schedule, please email shsohep@pitt.edu.

**Personal Assistance and Cannabis Education 2: PACE 2** consists of completing induvial meeting(s). To schedule, please email shsohep@pitt.edu.

**No Contact Order** — A directive to cease and desist from any intentional contact, direct or indirect, with one or more designated persons or group(s) through any means, including, but not limited to personal contact, e-mail, telephone, texting, social media or any electronic or other means, or through third parties. Should the Student fail to cease contact, the Student will be subject to additional action, up to and including suspension and/or dismissal from the University. Additionally, failure to follow the No Contact Order may result in criminal arrest or the initiation of criminal action. No Contact Orders may be issued outside of the conduct process. In these instances, the No Contact Order would not be considered a Sanction.

**Persona Non Grata** — An exclusion from a facility or area for a specified period of time or until otherwise notified. During this time, the Student will not be permitted to enter or use the specified University Property for visitation, meals, employment, or any other purpose. This status also includes exclusion from the specified property's lobbies and patios. Should the Student appear in any of the specified areas, the Student

51

will be subject to arrest. Persona Non Grata may be issued outside of the conduct process. In these instances, the Persona Non Grata would not be considered a Sanction.

**Personal Education, Assistance, and Referral Program I (PEAR I)** — PEAR I is an alcohol education course that consists of a class session and a one-on-one meeting. To register for PEAR I, please visit: www.studentaffairs.pitt.edu/shs/education/pearclasses/ (using the link under "How to Register for PEAR I"). You can also email shsohep@pitt.edu.

**Personal Education, Assistance, and Referral Program II (PEAR II)** — PEAR II is an alcohol education course that consists of several one-hour, one-on-one meetings. To schedule PEAR II, please email shsohep@pitt.edu .

**Reflection-** The Respondent is required to complete a project or activity designed to promote self-reflection on one's actions and the impact of those actions on others.

**Restitution** — A written directive to make specific compensation for damaged, destroyed, or misused property of another and/or University.

**Suspension of Privileges** — A loss of specific privileges for a specified period of time.

**Termination of Privileges** — A permanent loss of specific privileges.

**University Housing Dismissal** — A termination from any University owned and/or University contracted housing. Upon the dismissal the Student will be Persona Non Grata from all such housing. This status means the Student will not be permitted to enter or use University owned and/or University contracted housing for visitation, employment, or any other purpose.

**University Housing Probation** — A designated period of time during which a Student's residence in University owned housing and/or University contracted housing is conditioned upon future behavior. The issuance of additional sanctions may occur if the Student is found to be in Violation of any University regulation during the probationary period. During the probationary period, a resident may be excluded from participation in extracurricular University owned housing activities and may be excluded from holding any appointed or elected position within the on-campus housing community.

**University Housing Suspension** — A temporary loss of residence in University-owned housing and/or University contracted housing for a specified period of time. The Student will be Persona Non Grata from all such housing during the period of suspension. This status means the Student will not be permitted to enter or use University owned and/or University contracted housing for visitation, employment, or any other purpose.

CONFIDENTIAL

# Registered Student Organization Sanctions

**Alternative Sanction —** A mandated Sanction to be created and assigned.

**Community Engagement —** Registered Student Organizations are required to complete community engagement projects. These projects must involve meaningful collaboration with affected parties or relevant community organizations to restore trust and relationships.

**Reprimand —** A written and/or oral notice to a Registered Student Organization that its behavior violated the *Student Code of Conduct*.

**Educational Programming —** An educationally-driven Sanction to be created and assigned by the hearing officer. The Registered Student Organization may be responsible for costs associated with the programming. A program plan must be pre-approved by a designated Student Affairs office

**Fines —** A monetary Sanction that may be applied to any violation of the *Code*. This fine may be in addition to any restitution owed.

**Group Alcohol Awareness Program (GAAP) —** A program specifically designed for Registered Student Organizations to increase the awareness of issues with alcohol and other drugs through a presentation and discussions. The program also provides information on resources available for Students who may wish to get support for alcohol or other substance abuse or who may be in recovery. To schedule GAAP please email shsohep@pitt.edu .

**Membership Review —** The members shall be reviewed by national organization and/or alumni to determine which members may continue their participation. If there is no National organization or alumni associated with the Registered Student Organization, then either the Student Organization Resource Center Office of Fraternity and Sorority Life, or the Office of Student Conduct will determine what individual and/or entity will manage the review.

**Mock Social Event —** A program designed to assist Registered Student Organizations in hosting a social event that complies with established risk management and social event policies.

**Restitution —** A written directive to make specific compensation for damaged, destroyed, or misused property of another and/or University.

**Restriction of Privileges —** A loss of specific privileges for a specified period of time, including, but not limited to:
   a.   Receive or retain University funds
   b.   Participate in any intercollegiate activities
   c.   Participate in any social event
   d.   Any activities where alcohol is present
   e.   Sponsor any speaker or guest on campus
   f.   Educate new members
   g.   Sponsor, co-sponsor, and/or participate in recruitment activities
   h.   Rent University vehicles
   i.   Use University facilities
   j.   Solicit and/or sell on campus
   k.   Other loss of specified privileges

53

UPITT_0013839

**Risk Management Programming** — Functions sponsored by a Registered Student Organization, which educate members of the organization and/or other organizations on successful event planning and management in adherence to University and any relevant national risk management policies. A program plan must be pre-approved.

**Social Probation** — The loss of privileges to host, sponsor, co-sponsor, and/or participate in any social activities.

**Suspension of Registration** — A cessation of organizational operations for a specified period of time.

**Termination of Registration** — Revocation of registration of the Registered Student Organization's status or the chapter's charter as a recognized University fraternity or sorority, with no established date or conditions for reinstatement. The Registered Student Organization/chapter shall cease its operation at the University of Pittsburgh.

CONFIDENTIAL

UPITT_0013840

# Appendix B: Title IX and Sexual Misconduct Resources and Information

The University of Pittsburgh values the safety and health of all members of the Pitt community and seeks to foster an environment in which Students and employees treat other persons with respect, civility, and dignity. Any behavior that involves sexual misconduct or harassment, relationship violence, or stalking of another person is prohibited. Sexual misconduct can be a Violation of criminal law, Title IX, other laws, and this *Code*.

The University has the authority to take disciplinary action for conduct occurring on campus and off campus when the conduct, among other things, effects the educational environment or threatens the safety of the University community. The University will provide a prompt, fair, and impartial investigation, and resolution.

### Getting Help: What to do if you are assaulted

#### IMMEDIATELY AFTER AN INCIDENT

• **Physical Safety:**

Your immediate physical and emotional safety is the top priority. As quickly as possible, find a safe place away from the perpetrator or other potential danger.

You are encouraged to seek medical attention as soon as possible for your own physical health and to preserve all physical evidence. You can receive treatment at any medical facility; however, hospital emergency departments may be in the best position to treat you and collect physical evidence. Please note that not all hospitals employ trained sexual assault nurse examiners (SANE). Magee Women's Hospital and UPMC Mercy **always** have a SANE nurse available. SANE nurses are registered nurses who have completed specialized education and clinical preparation in the medical forensic care of the patient who has experienced sexual assault or abuse. Also, be aware that all hospitals are required by law to report to the police any injury that is the result of a crime. This does not obligate you to file formal criminal charges.

• **Preserving Physical Evidence:**

In the aftermath of a sexual assault, although it may not be foremost on your mind, the preservation of evidence is strongly encouraged. Even if you do not think you want to pursue a criminal or civil proceeding, preserving evidence keeps your options open in case you change your mind. To preserve evidence, do not shower, douche, or change clothes or bedding before you seek medical attention. Also, if oral contact took place, do not brush teeth, smoke, or eat. Optimally, evidence collection should occur within 72 hours of the assault, but many hospitals will attempt to collect evidence 7-10 days after an assault. There are medical facilities in Oakland that can assist you:

55

UPITT_0013841

- Magee Women's Hospital of UPMC Emergency Room
  300 Halket Street, **412-641-4933**
  **Sexual Assault Nurse Examiner (SANE) is generally available at this location.**

- UPMC Mercy Hospital Emergency Department
  1400 Locust Street, 412-232-8222
  **Sexual Assault Nurse Examiner (SANE) is always available at this location.**

- UPMC Presbyterian
  Emergency Room
  200 Lothrop Street, **412-647-3333**

- **Contact the Police**: You can call the University of Pittsburgh Police Department (**412-624-2121**) or the City of Pittsburgh Police at **911** and report the incident. The Police are trained and able to assist in obtaining other physical evidence, such as video surveillance.


## Confidentiality

The University encourages victims of sexual misconduct to talk to somebody about what happened and to seek the support they need to address their individual needs. Telling someone will also allow the University to respond appropriately.

You may have concerns about confidentiality, and you should know that different employees on campus have different abilities to maintain a Complainant's confidentiality. *If you are still unsure about confidentiality requirements after reviewing the following explanation, please contact the Title IX Coordinator.*

### The Different Types of Employees and Their Confidentiality Responsibilities

A.      **Privileged and Confidential Resources**

> ***Professional Counselors: University Counseling Center; Medical Staff, Counselors, and Advocates: Student Health Service (SHS)***

> Both the University Counseling Center (UCC) and Student Health Service (SHS) keep reports of sexual misconduct confidential. However, they generally report de-identifying information to the University of Pittsburgh Police Department for Clery reporting purposes. This de-identified report – which does not include information that would directly or indirectly identify the Complainant – will include the nature, date, time, and general location of an incident.

> Before filing any de-identified report, the UCC and SHS staff will take reasonable efforts to make sure that the report contains no personally identifying details.

> In addition, a Complainant who speaks to a professional or non-professional counselor or advocate must understand that if they only want to share de-identified information, the University will unlikely be able to conduct an investigation into the particular incident or pursue disciplinary action against the Respondent.

> However, the Complainant who first requests that only de-identified information be shared, may later decide to file a complaint with the University or report the incident to local law enforcement, and thus have the incident fully investigated. The UCC and SHS counselors and other personnel will provide the Complainant with assistance if the Complainant wishes to do so.

56

Contact information for University Counseling Center and Student Health Service:

> **Student Health Services**
>
> Call 412-383-1800 to schedule an appointment.
>
> Student Health Services provides ongoing confidential medical treatment for any physical problems related to an assault. SHS can assess for pregnancy risk; provide counseling about emergency contraception, test and treat for sexually transmitted infections; and assess, treat, and/or offer/give referrals for physical injuries. Student Health cannot collect forensic evidence. Student Health Services is located in the Wellness Center in Mark A. Nordenberg Hall, 119 University Place and can be reached at 412-383-1800.

**B.        Exceptions to Confidential Communications**

While the University Counseling Center and SHS personnel may maintain a Complainant's confidentiality as described above, they may have reporting or other obligations under state law. For example, Pennsylvania law requires mandatory reporting to law enforcement in cases involving minors and certain crimes.

If the University determines that the Respondent(s) pose(s) a serious and immediate threat to the University community, the Department of Public Safety may be called upon to issue a timely warning to the community. Any such warning will not include any information that identifies the Complainant.

There are other times where the University may override a request for confidentiality. These are detailed below in "Requesting Confidentiality".

**C.        Reporting to "Responsible Employees" and Confidentiality**

The majority of Pitt employees are responsible employees unless their job requires professional confidentiality, as in the case of mental health counselors, physicians, nurses, and clergy. A "responsible employee" is a University employee who has the actual or reasonably perceived duty to report or authority to help address incidents of sexual misconduct.

With respect to confidentiality, a responsible employee must report to the Title IX coordinator all relevant details about the alleged sexual violence shared by the survivor– including, if known, the names of the survivor and alleged perpetrator(s), any witnesses, and any other relevant facts, including the date, time, and specific location of the alleged incident.

To the extent possible, information reported to a responsible employee will be shared only with people responsible for handling the University's response to the report. A responsible employee should not share information with law enforcement without the survivor's consent or unless the victim has also reported the incident to law enforcement, or if there is a health or safety emergency. Please visit diversity.pitt.edu for additional information on responsible employee role.

CONFIDENTIAL

## Requesting Confidentiality from the Office of Civil Rights and Title IX

The Director for Civil Rights and Title IX will evaluate requests for confidentiality.

Once the Director for Civil Rights and Title IX receives notice of an incident, the Complainant may request that any disclosed information remain confidential and that no investigation into a particular incident be conducted or disciplinary action taken. The Director for Civil Rights and Title IX will weigh this request against the University's obligation to investigate all matters of sexual misconduct and to provide a safe, non-discriminatory environment for all Students, including the Complainant. In most cases, the Director can respect a Complainant's request for anonymity.

If the University honors the request for anonymity, a Complainant must understand that the University's ability to meaningfully investigate the incident and pursue disciplinary action against the Respondent(s) may be limited.

Although rare, there are times when the University may deny a Complainant's request for confidentiality in order to help protect the greater campus community, including the Complainant, and provide a safe, non-discriminatory environment for all Students.

When weighing a Complainant's request that no investigation or discipline be pursued, the Director for Civil Rights and Title IX will consider a range of factors, including, but not limited to, the following:

- The increased risk that the Respondent will commit additional acts of sexual or other violence, such as:

    o whether there have been other sexual misconduct complaints about the same Respondent;

    o whether the Respondent has a history of arrests or records from a prior University indicating a history of violence;

    o whether the Respondent threatened further sexual violence or other violence against the Complainant or others;

    o whether the sexual violence was committed by multiple Respondents;

- whether the sexual violence was perpetrated with a weapon;

- whether the Complainant is a minor;

- whether the University possesses other means to obtain relevant evidence of the sexual violence (e.g., security cameras or personnel, physical evidence);

- whether the Complainant's report reveals a pattern of perpetration (e.g., via illicit use of drugs or alcohol) at a given location or by a particular group.

Depending on the totality of the circumstances, the presence of one or more of these factors could lead the University to investigate and, if appropriate, pursue disciplinary action. If none of these or similar factors are present, the University will likely respect the Complainant's request.

**If the University determines that it must investigate the incident**, the University will inform the Complainant prior to starting an investigation and will, to the extent possible, only share information with people responsible for handling the University's response.

The University will remain ever mindful of the party's well-being and will take ongoing steps to protect both parties from retaliation or harm and work with the parties to create safety plans. Retaliation, whether by Students or University employees, will not be tolerated. The University will also:

CONFIDENTIAL

UPITT_0013844

- assist both the Respondent and Complainant in accessing other available resources, academic support, counseling, disability, health or mental health services, and legal assistance both on and off campus;

- provide other security and support, which could include issuing an interim or permanent no-contact order, helping arrange a change of living or working arrangements or course schedules (including for the Respondent pending the outcome of an investigation) or adjustments for assignments or tests; and

- inform the Complainant of the right to report a crime to campus or local law enforcement and provide the victim with assistance if the victim wishes to do so.

Because the University is under a continuing obligation to address the issue of sexual violence campus-wide, reports of sexual violence (including non-identifying reports) will also prompt the University to consider broader remedial action. Such action may include increased monitoring, supervision or security in locations where the reported sexual violence occurred; increased education and prevention efforts, including to targeted population groups; climate assessment and victimization surveys; and/or revision of University policies and practices.

Public awareness events such as "Take Back the Night," the Clothesline Project, candlelight vigils, protests, "survivor speak outs" or other forums in which Students disclose incidents of sexual misconduct, are not considered notice to the University of sexual misconduct for purposes of triggering its obligation to investigate any particular incident(s). Similarly, participation in a research study, or writing submitted for a class, are not considered notice to the University.


## University Sexual Misconduct Resources Explained

### The University Counseling Center (UCC)

The UCC is the primary mental health service for Students enrolled at the University of Pittsburgh. The UCC offers a variety of mental health services to Students utilizing a short-term, time-limited approach, including assessment, counseling, and psychotherapy services (individual, group, and couples), and psychiatric services. The University of Pittsburgh Counseling Center is located in the Wellness Center on the second floor of Nordenberg Hall, 119 University Place, **412-648-7930**

### Student Health Services

The University of Pittsburgh's Student Health Services provides ongoing confidential medical treatment for any physical problems related to an assault. Student Health Services can assess for pregnancy risk; provide counseling about emergency contraception, test and treat for sexually transmitted infections; and assess, treat, and/or offer/give referrals for physical injuries. Student Health Services is located in the Wellness Center in Mark A. Nordenberg Hall, 119 University Place, **412-383-1800**.

### Additional Resources

University of Pittsburgh Students can contact their resident assistant (RA), resident director (RD), or other residence life staff member for support (available 24 hours a day). Monday – Friday 8:30am – 5pm, 412-648-1200; after hours, call 412-648-1100. Members of the Survivor Support Network are available to talk with students and provide referrals. You can learn more about the Survivor Support Network here. RAs, RDs and the Survivor Support Network are still responsible employees and have reporting obligations to the Office for Civil Rights and Title IX.

59

Any member of the University community also may contact the University's Office of Civil Rights and Title IX at **412-648-7860 or at** titleixcoordinator@pitt.edu. This office provides resources and investigates allegations of sexual misconduct.

> Title IX Coordinator University of
> Pittsburgh 31st Floor, Cathedral of Learning
> Phone:  412-648-7860
> titleix.pitt.edu and/or titleixcoordinator@pitt.edu

If you do not want to call the police after an incident, but feel the need to leave the current environment, Pitt's SafeRider program may be able to provide transportation back to your residence by calling **412-648-CALL (2255)**. More information about SafeRider can be obtained at https://www.pts.pitt.edu/mobility/shuttle-services/saferider.

Community resources include Pittsburgh Action Against Rape (PAAR) at **1-866-363-7273** and the Center for Victims at **1-866-644-2882**. Both organizations answer 24 hours a day. Both organizations provide an advocate/escort to accompany Complainants through the medical and/or legal process. Students who seek assistance from these organizations are not obligated to file criminal charges.

Title IX can refer parties to community resources who can assist with legal protections from abuse and intimidation.

## Title IX Explained

Title IX of the Education Amendments of 1972, a Federal law, was historically associated with actual or perceived gender-based disparities in athletic programs.  However, it is a far broader law. Title IX actually covers all aspects of educational and academic-related programming and prohibits gender discrimination. Importantly, Title IX prohibits sexual misconduct which may affect the educational or campus environment. The law provides that:

***No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any educational program or activity receiving Federal financial assistance.***

Title IX prohibits gender-based discrimination in all University of Pittsburgh programs and activities, including, but not limited to, recruiting, admissions, financial aid, academic programs, student services, counseling, guidance, advising, grievance procedures, discipline, course/class assignments, grading, recreation, athletics, housing, meal services, and employment.

## Some Examples of Unlawful Practices Under Title IX May Include:

- **Sexual Harassment** (as defined in CS 27) – Conduct on the basis of sex occurring in the United States and occurring in or related to a University Education Program or Activity that satisfies one or more of the following: (1) An employee of the University conditioning the provision of an aid, benefit, or service of the University on an individual's participation in unwelcome sexual conduct.

  (2) Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and

  objectively offensive that it effectively denies a person equal access to the University's Education Program or Activity; or (3) Sexual assault, dating violence, domestic violence, or stalking.

  **Please Note:** other forms of harassment, including unwelcome sexual advances, requests for sexual

CONFIDENTIAL

favors and other verbal or physical conduct of a sexual nature that are not otherwise covered in this definition are still considered misconduct in violation of University Policy CS 20 Sexual Misconduct

- **Sexual Misconduct** – rape, sexual assault, sexual battery, sexual exploitation, sexual coercion, forcible fondling, and any other form of non-consensual sexual activity (including when an individual is not in a condition to give legal consent).

- **Stalking** – repeatedly following, harassing, threatening or intimidating another individual using such methods including, but not limited to, telephone, mail, electronic communication, and social media.

- **Domestic Violence** – in addition to physical abuse, also includes emotional, verbal and economic abuse.

- **Dating Violence** – in addition to physical abuse, also includes emotional, verbal and economic abuse.

- **Retaliation** – adverse academic, social, employment or other actions against anyone reporting a Violation or participating in an investigation of any Sexual Misconduct and/or Title IX allegation.

In addition to being considered discriminatory, ***sexual violence is criminal activity.***


## Definitions of Sexual Misconduct

A summary of important definitions related to sexual misconduct and relationship violence can be found on the Title IX website at Sexual Misconduct and Title IX | Office for Equity, Diversity, and Inclusion | University of Pittsburgh

Title IX Contact information can be found here: Civil Rights & Title IX Compliance | Office for Equity, Diversity, and Inclusion | University of Pittsburgh


## Prevention

Pitt is deeply committed to eradicating all forms of sexual misconduct on campus. The University's Sexual Violence Prevention and Education Office works with campus partners to facilitate sexual violence prevention programming throughout the year.

- A robust peer-education program, Sexual Assault Facilitation and Education (SAFE), that trains peer educators to engage their peers in dialogue around issues such as healthy relationships, bystander intervention, survivor support and consent.

- The  Survivor's Support Network is a community of trained and caring leaders who are knowledgeable about campus and community resources and are committed to supporting survivors. Learn More: https://www.diversity.pitt.edu/engagement/sexual-misconduct-prevention/prevention-initiatives/survivors-support-network.

- SETPoint Training, which offers empowerment-based self-defense (ESD) and the curriculum offers a powerful and preventative approach to reducing sexual

61

violence. SETPoint provides participants with skills and strategies that builds confidence in their ability to make their own choices, to set appropriate boundaries in relationships, to de-escalate situations, to actively resist when boundaries are violated and to advocate for oneself or others in the event of an assault. Students have the ability to participate in SETPoint training during Welcome Week and throughout the year.

- Circle Up. Circle Up is a dialogue-based prevention initiative adapted from the "Conversation Circles" framework created at Stanford University. We believe that by talking about complex issues, we can build connection, and that connection can create meaningful change on our campus and beyond. Conversation circles are a community building tool. Circle Up provides a safe space for participants to build communication skills, learn from each other, and create a more connected campus. You can learn more here: https://www.diversity.pitt.edu/circle-conversations

## **PantherWELL**

PantherWELL Peer Health Educators, which is part of the Office of Health Education and Promotion, conduct health and wellness programs on campus, including programs that explore bystander intervention training, as well as various aspects of wellness and safety. Campus-wide sexual assault and consent awareness campaigns are conducted throughout the year—including the It's On Us campaign—to educate students about the issues surrounding sexual assault through distribution of videos, social media messaging, and creative advertising. **studentaffairs.pitt.edu/shs/education/pantherwell**

**New and Transfer Students**

Incoming students are required to attend mandatory programs during orientation week, where students are provided with information regarding University policies, expectations, and resources. New students will also engage in educational modules during the summer before orientation.

**Relationship Violence Awareness Month**

Special events and programming take place every October to draw attention to relationship violence. Throughout the month, the University promotes training around healthy relationships.

**Sexual Assault Awareness Month**

A variety of programs occur each spring during Sexual Assault Awareness Month with the goal of supporting survivors and providing education aimed at eradicating sexual misconduct on Pitt's campus. Learn More: https://www.diversity.pitt.edu/engagement/sexual-misconduct-prevention/prevention-initiatives/sexual-assault-awareness-month

**New and Ongoing Employee Education**

Provided through both online and in-person modules, employees receive training on prevention and reporting sexual misconduct at orientation and on an annual schedule.

**University Police Seminars**

Members of Pitt Police are trained in responding to and investigating sex offenses, domestic violence, and stalking incidents. The Pitt Police provide special programs on sexual assault and other safety issues to student groups upon request.

**Community Speakers**

Pittsburgh Action Against Rape and the Women's Center and Shelter provide regular training for

CONFIDENTIAL

University community members.

**First-year students are required to attend sexual violence prevention training during welcome week.**

- Ongoing campus education. Students will be engaged in conversations around sexual violence prevention during their summer online education, campus orientation and throughout their time at Pitt.

63

CONFIDENTIAL

# Appendix C: Glossary

**Adjudication**: Completion of any investigative or hearing process and/or any accompanying Appeal process.

**Complainant**: A University community member who files a referral that alleges a Violation of the *Code*.

**Conduct Referral**: A report alleging Violations of the *Code*.

**Consent**: An informed decision made freely and actively by all parties to engage in mutually acceptable sexual activity. Consent is given by clear words or actions. Consent may not be inferred from silence, passivity, or lack of resistance alone. Existence of a current or previous dating, marital, and/or sexual relationship is not sufficient to constitute consent to future or additional sexual activity. Consent to one type of sexual activity does not imply consent to other types of sexual activity. Consent can be withdrawn at any time by any one party.

Someone who is unconscious, asleep, or otherwise mentally or physically incapacitated, whether due to alcohol, drugs, or some other condition, and individuals under the age of sixteen (16), cannot give consent. Consent cannot be obtained by force, intimidation, threat, coercion, isolation, or confinement. Agreement obtained under such conditions does not constitute consent. A person's use of alcohol and/or other drugs does not eliminate responsibility to obtain consent.

**Disciplinary Conference**: A meeting with a Hearing Officer to discuss an alleged Violation of the *Code* and determine if sufficient information exists to move forward through the conduct process. When sufficient information exists, this conference, which may occur over several meetings, will be used to determine if the Respondent will accept general responsibility and the recommended Sanctions or will proceed to a Level II Hearing.

**Full Hearing**: A Level II Hearing before the Conduct Hearing Board, to determine whether the Respondent is responsible for violating the *Code* and whether Sanctions should be recommended to the Vice Provost for Student Affairs. For a full description, please refer to Level II Hearing in Chapter 5.

**Hearing Officers**: Individuals, including but not limited to, Office of Student Conduct staff, Hearing Board members, Student Conduct Peer Review Board members or Residence Life staff who have the authority to adjudicate cases.

**Level I Hearing**: A meeting with a Hearing Officer to determine responsibly for an alleged Violation of the *Code* where a responsible finding would include sanctions up to and including University Housing Suspension. For a full description of the Level I process, please refer to Chapter 5.

**Level II Conduct Hearing Board**: The Conduct Hearing Board that is authorized to adjudicate Level II cases. The Level II Conduct Hearing Board may include undergraduate and graduate/professional Students and/or University faculty and staff members. Three members will participate in each Level II hearing. In extraordinary circumstances where the complexity of factual issues and/or matters of law so dictate, the Chancellor may appoint an ad hoc hearing body to hear cases. Any proceeding before such an ad hoc body shall provide due process and ensure the rights of Students.

**Level II Conduct Process**: A meeting or series of meetings to determine an alleged Violation of the *Code* where a Respondent may receive Sanctions up to and including Disciplinary Dismissal. The process begins with a Disciplinary Conference, but may end in one of the resolutions below:

CONFIDENTIAL

A.   <u>Disciplinary Conference</u>: A meeting with a Hearing Officer to discuss an alleged Violation of the *Code* and determine if sufficient information exists to move forward through the conduct process. When sufficient information exists, this conference, which may occur over several meetings, will be used to determine if the Respondent will accept general responsibility and the recommended Sanctions or will proceed to a Level II Hearing.

B.   <u>Sanctions-Only Hearing</u>: A Level II Hearing before the Conduct Hearing Board, in which the Respondent admits general responsibility for the Violations of the *Code* but does not agree to the hearing officer's recommended Sanctions. The Conduct Hearing Board, after considering Respondent's testimony and/or evidence, will recommend Sanctions to the Vice Provost for Student Affairs.

C.   <u>Full Hearing</u>:  A Level II Hearing before the Conduct Hearing Board, to determine whether the Respondent is responsible for violating the *Code* and whether Sanctions should be recommended to the Vice Provost for Student Affairs.

**Respondent**: Student/Registered Student Organization alleged to have violated the *Code*.

**Sanctions-Only Hearing**: A Level II hearing before the Conduct Hearing Board, in which the Respondent admits general responsibility for the Violations of the *Code* but does not agree to the hearing officer's recommended Sanctions. Conduct Hearing Board, after considering Respondent's testimony and/or evidence, will recommend Sanctions to the Vice Provost for Student Affairs.  For a full description, please refer to Level II Hearing in Chapter 5.

**Student**: All individuals taking courses at the University, pursuing undergraduate, graduate, or professional studies, both degree and non-degree seeking, as well as individuals enrolled in non-credit courses and programs. *Code* jurisdiction also includes individuals who have accepted an offer of admission to the University; former Students who withdrew or otherwise left the University whose alleged violations occurred during the time they were Students; and individuals who are on leave of absence from the University, or who are not officially registered and/or enrolled for a particular term but have a continuing relationship with the University.

**Student Conduct Peer Review Board (SCPRB)**:  The Student Conduct Peer Review Board (SCPRB) hears cases involving *Code* Violations which will not result in disciplinary suspension or dismissal. The SCPRB is staffed by undergraduate, graduate, and/or part-time Students in good academic standing. The SCPRB may determine responsibility and issue sanctions. The SCPRB will provide due process for Students while protecting the rights of all members of the University community. All SCPRB members will receive appropriate training. No SCPRB member will serve on a panel when they have any direct interest or prior involvement in or knowledge of the incident under consideration, or where the Respondent has identified the member as having a possible bias.

**Registered Student Organization**: Any student group registered through the University's Student Organization Resource Center (SORC).

**University Member**: Any individual affiliated with the University of Pittsburgh including but not limited to all full and part-time faculty, staff, students, fellows, and interns on all campuses.

**University Property**: All property (real, intellectual, and/or personal) owned, leased, controlled, or utilized by the University.

CONFIDENTIAL

UPITT_0013851

**University Review Board (URB)**: The University Review Board (URB) is the duly authorized appellate body which serves as an advisor to the Provost, or their designee.

**Violation**: Behavior and/or attempts to engage in behavior inappropriate to the University community for which disciplinary actions may be instituted. This may include Violations of any federal, state, or local law, and/or of any rule, policy, or *Code* provision of the University of Pittsburgh.

66

CONFIDENTIAL

UPITT_0013852



The University of Pittsburgh, as an educational institution and as an employer, values equality of opportunity, human dignity, and racial/ethnic and cultural diversity. Accordingly, as fully explained in University Policy CS 07, the University prohibits and will not engage in discrimination or harassment on the basis of race, color, religion, national origin, ancestry, sex, age, marital status, familial status, sexual orientation, gender identity and expression, genetic information, disability, or status as a veteran. The University also prohibits and will not engage in retaliation against any person who makes a claim of discrimination or harassment or who provides information in such an investigation. Further, the University will continue to take affirmative steps to support and advance these values consistent with the University's mission. This policy applies to admissions, employment, access to and treatment in University programs and activities. This is a commitment made by the University and is in accordance with federal, state, and/or local laws and regulations.

For information on University equal opportunity and affirmative action programs, please contact: University of Pittsburgh, Office of Civil Rights and Title IX Compliance (and Title IX, 504 and ADA Coordinator), 31st Floor Cathedral of Learning 4200 Fifth Ave Pittsburgh, PA 15260 (412) 648-7860.

For complete details on the University's Nondiscrimination, Equal Opportunity, and Affirmative Action Policy, please visit www.policy.pitt.edu. For information on how to file a complaint under this policy, please refer to University Procedure CS 07.

CONFIDENTIAL

UPITT_0013853