# DEFENDANTS'
# EXHIBIT 41

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STUDENTS FOR JUSTICE IN PALESTINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:25-cv-00524-NR |
| | ) | |
| UNIVERSITY OF PITTSBURGH, *et al.* | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF LYNNE MILLER

I, Lynne Miller, do hereby state under oath as follows:

1. I am the Associate Director for Leadership Development for the University of Pittsburgh ("Pitt").

2. I have held this position for two years.

3. In this position, I offer, create, and cultivate leadership development opportunities to Pitt students and student organizations.

4. In addition to that role, I am also a trained member of a pool of Pitt staff that serve as conduct hearing board members.

5. Conduct hearing board members hear the testimony and arguments, and review any evidence, that may be presented by Pitt and a student or student organization accused of violating Pitt policies during a Level II hearing.

6. Upon completion of a Level II hearing, the conduct hearing board members then deliberate in private to determine whether the student or student organization is responsible for violating Pitt policy.

7. The conduct hearing board members are then required to prepare a written report of their findings, summarizing the reasons for those findings, and recommending a sanction for any violation found to have occurred.

8. The conduct hearing board members for any particular hearing are selected through a survey of members who are asked their availability on a given date and time, but provided no other information about the accused student or student organization, or the nature of the alleged policy violations.

9. I have served on approximately 10 conduct hearing boards.

10. I was selected to serve on a conduct hearing board on May 23, 2025, to hear allegations against Students for Justice in Palestine at Pitt ("SJP-Pitt").

11. In addition to the standard availability survey, to serve on this particular board, I also had to complete a survey to ensure I did not hold any bias against SJP-Pitt.

12. One of the questions on the survey was "Are you aware of any reason why you would not be able to fairly and impartially fulfill your responsibilities as a member of the Hearing Board in this case?"

13. I responded yes to that question because of the involvement of my direct supervisor, DaVaughn Vincent-Bryan, and his direct supervisor, Karin Asher.

14. I had not been involved in any of the incidents that were the subject of the allegations against SJP-Pitt or the conduct process.

15. I harbored no biases or any predispositions against SJP-Pitt or their viewpoints.

16. Dean Marlin Nabors contacted me about my response to this question.

17. I explained to Dean Nabors the reasons stated above for my response to the question but confirmed that I believed that I could be unbiased in my consideration of the allegations.

18. The allegations against SJP-Pitt concerned an event held by SJP-Pitt at the University's library and an email that SJP-Pitt sent to Pitt administrators and the members of a previous conduct hearing board that was, at the time, adjudicating pending policy violation charges against SJP-Pitt.

19. Defendants' Exhibit 4 is a true and correct copy of that email.

20. I have never received a communication, such as SJP-Pitt's email or otherwise, from a conduct hearing participant before or after a conduct hearing that related to the conduct hearing or demanded that a conduct process be dismissed.

21. The May 23, 2025 conduct hearing board consisted of myself and two other Pitt administrators.

22. Upon conclusion of the May 23, 2025 hearing, the conduct hearing board deliberated over the course of a few days.

23. Ultimately, we – the conduct hearing board – found, among other things, that, by sending their email to the previous conduct hearing board, SJP-Pitt attempted, and intended, to influence that previous conduct hearing board into returning a positive hearing outcome.

24. As a result of that finding, we also found that SJP-Pitt was responsible for violating Pitt policies prohibiting: (1) intimidation, coercion, influencing, or attempting to do the same against a person who is participating or has participated in any University process or proceeding; and (2) disrupting or interfering with the conduct process.

25. The conduct hearing board recommended a sanction of suspension of the SJP-Pitt organization until January 1, 2026.

26. In reaching the conclusion of the conduct hearing board, I exercised my own independent analysis and judgment based on the facts presented during the May 23, 2025 hearing.

27. Other than arguments properly made during the conduct hearing, no Pitt administrator instructed me, or otherwise tried to influence or affect me, as to how I should decide or evaluate the allegations against SJP-Pitt.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _July 31, 2025

Lynne Miller