# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STUDENTS FOR JUSTICE IN PALESTINE AT PITT, <br><br> *Plaintiff*, <br><br> **v.** <br><br> UNIVERSITY OF PITTSBURGH; JOAN GABEL, MARLIN NABORS, KARIN ASHER, DaVAUGHN VINCENT-BRYAN, MATTHEW LANDY, and JAMEY MENTZER, all in their official and individual capacities, <br><br> *Defendants*. | CIVIL ACTION NO. 2:25-CV-00524 <br><br><br> **Judge J. Nicholas Ranjan** |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE IMPROPER ERRATA MODIFICATIONS TO DEFENDANT NABORS' DEPOSITION

Plaintiff Students for Justice in Palestine at Pitt ("SJP-Pitt") hereby moves pursuant to Rule 30(e) of the Federal Rules of Civil Procedure to strike Defendants' Errata to Defendant Marlin Nabors' deposition transcript because the proposed "clarification" constitutes an unjustified, and unjustifiable, material and substantive change to his original testimony, and as grounds therefore avers as follows.

## Background

On July 30, 2025, one day before filing their Response to SJP-Pitt's motion for preliminary injunction, the University sent SJP-Pitt's counsel an errata claiming the following "clarification" of Defendant Marlin Nabors' July 1 deposition testimony:

| Pg. No. | Line No. | Change and reason for change: |
|---|---|---|
| 19:16-21:6 | | Clarification - *While comments by SJP-Pitt during the hearing affected the decision to vacate the pending conduct proceedings, those comments were not the basis for SJP-Pitt's interim suspension or the charges* related for |

(1) intimidation, coercion, influencing, or attempts to do the same against a person who is participating or has participated in any University process or proceeding, and

(2) disruption or interference with the conduct process.

| 38:19-39:15 | Same as above |
|---|---|
| 42:16-20 | Same as above |

In all other respects, the transcript is true and correct.

ECF No. 57, Ex. 34 (emphasis added).

On July 31, the University filed its response to SJP-Pitt's motion for preliminary injunction. ECF Nos. 56, 57. Defendants rely on the errata to contradict Dean Nabors' clear, unequivocal and repeated testimony that both the interim suspension and second round of charges were based not only on the February 4 "Open Letter," but also on the SJP-Pitt students' comments during the February 4 hearing about possibly initiating legal action if the panel does not rule favorably for them, arguing:

> In any case, SJP was not suspended by the University because of what SJP said during the hearing—it was suspended by the University because it sent the Open Letter to the First Panel. *See* PI Memo at 7; Nabors Decl. at ¶¶ 23-25, 30; Errata Sheet for M. Nabors Deposition, attached hereto as Def. Ex. 34.

ECF No. 57, at 16.

## **Legal Standard**

Rule 30(e) of the Federal Rules of Civil Procedure permits a deponent to review the transcript of his deposition and make corrections by signing a statement listing changes to form or substance, and the reasons for the changes. Fed. R. Civ. P. 30(e)(1). The written statement of

reasons "permits an assessment concerning whether the alterations have a legitimate purpose." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 266 (3d Cir. 2010) (quoting *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1224-25 (9th Cir. 2005)).  While Rule 30(e) contemplates that changes to the substance of testimony may be made, the Third Circuit permits substantive changes only to the extent that they do not "squarely contradict earlier testimony materially bearing on the case" and where a party provides "sufficient justification" for the change.  *Id.* at 268.  Courts in this Circuit employ a fact-specific approach in evaluating substantive changes via Rule 30(e) and should consider factors including: "(1) whether the proffered justification for a change is sufficient, (2) whether the earlier testimony reflects confusion that the errata attempts to explain, (3) whether the errata is truly reflective of the initial testimony, (4) whether deponent's counsel had an opportunity to object or cross-examine the witness, and (5) whether other fact sensitive circumstances justify the amendment."  *Intervet, Inc. v. Mileutis Ltd.*, No. 15-1371 (ZNQ), 2023 WL 2266411, at *6 (D.N.J. Feb. 28, 2023) (citing *EBC, Inc.*, 617 F.3d at 270).

## Argument

The University's errata is not a clarification: it is a material and substantive change that contradicts Nabors' original testimony.  The claim that SJP-Pitt's comments about potential legal action during the February 4 disciplinary hearing "were not the basis for SJP-Pitt's interim suspension or the [new, April 8] charges," squarely contradicts not just the portions of Dean Nabors' deposition testimony that the University now seeks to rewrite, but also several unchallenged portions of Dean Nabors' deposition testimony, which the errata sheet acknowledges remain "true and correct."  ECF No. 57, Ex. 34.

This Court should strike the proposed amendments offered in the errata sheet because the changes materially contradict the witness's original testimony and the University provides no justification for the changes. While the U.S. Court of Appeals for the Third Circuit has adopted a "flexible approach" that allows district courts to consider *some* substantive changes that materially contradict prior deposition testimony, "a district court does not abuse its discretion under Rule 30(e) when it refuses to consider proposed substantive changes that materially contradict prior deposition testimony, if the party proffering the changes fails to provide sufficient justification." *EBC, Inc.*, 618 F.3d at 268. Rule 30(e) does not permit a witness to "simply [] re-tailor[] sworn deposition testimony to his or her satisfaction." *Id.* at 267-68. Nor does the University's explanation for the changes—"clarification"— warrant allowing "a material, substantive change" to Dean Nabors' original testimony. *See Frungillo v. Bradford Reg'l Airport Operating*, No. 1:16-CV-108, 2020 WL 978827, at *3 (W.D. Pa. Feb. 28, 2020). Even alterations that do not rise to the level of a "strict contradiction" but "present[] a clear change in meaning" inconsistent with the original testimony have been rejected as substantive amendments under Rule 30(e). *See In re Injectafer Prods. Liab. Litig.*, No. 19-276, 2022 WL 4280491, at *3 (E.D. Pa. Sept. 15, 2022).

The proposed amendments here all constitute impermissible substantive amendments to Dean Nabors' original testimony, as they are directly contradictory and no other justifications for the changes have been offered beyond, "clarification."

The errata at issue concerns Dean Nabors' response to examination that sought to identify precisely the alleged SJP-Pitt misconduct underlying the second set of disciplinary charges initiated against SJP-Pitt, because relevant documents failed to identify the alleged misconduct with specificity. SJP-Pitt was charged under Student Conduct Rules 35, 42, and 43 for

4

falsification of information (related to the law school signatory), intimidating or influencing a

participant in a University conduct process or proceeding, and disrupting the conduct process,

respectively.  ECF No. 46, Ex. 14.  But relevant communications from the University failed to

identify the alleged misconduct.  For instance, Dean Nabors' March 18, 2025, email to SJP-Pitt

announced the interim suspension, terminated the original conduct proceedings, and pledged to

bring new, additional charges, but it failed to identify SJP-Pitt's offensive conduct.  ECF No. 57,

Ex. 7.  The email simply says, "[s]pecifically, that among other things, you improperly engaged

in communications to members of the Conduct Hearing Board during their deliberations

following the February 4 Level II Conduct Hearings."  *Id*.  Nearly identical vague language is

used in the March 18 Notice of Interim Suspension sent by Defendant Jamey Mentzer.  ECF No.

57, Ex. 8.  The April 8 formal notice of charges characterizes this set of charges as, "[a]lleged

violations relating to actions taken during the board hearing process."  ECF No. 46, Ex. 14.  The

notice then recites the three Conduct Rules SJP-Pitt allegedly violated through unspecified

"actions taken during the board hearing process," but once again fails to elaborate on the

supposed misconduct.  *Id.*

Since none of these documents clearly specify SJP-Pitt's allegedly improper conduct,

SJP-Pitt's counsel sought clarification from Dean Nabors during his deposition.  Notably, Dean

Nabors did not testify as a 30(b)(6) witness but in his own capacity, and he was the person who

halted the first hearing process, imposed the interim suspension, and determined whether to bring

subsequent charges against SJP-Pitt.  Ex. 1, Nabors' Dep. at 30:5-20.  After establishing that the

February 4, 2025, "Open Letter" was definitely at issue, Plaintiff's counsel asked open-ended

questions to elicit whether the charges were limited to the Open Letter or included something

more, and if so, to clarify the additional misconduct.  Dean Nabors' response during that

exchange, which the University's first "clarification" now seeks to rewrite, was unequivocal

(bold emphasis in original transcript):

> **Page 19.**
> 16 Q. When you say on Nabors 1 that
> 17 additional conduct may have violated the
> 18 Student Code and is now triggering this
> 19 March 18 correspondence, is there any other
> 20 conduct that prompted this email?
> 21 **A. There was, yes.**
> 22 Q. What would that be?
> 23 **A. There were concerns with language**
> 24 **that representatives from SJP used during**
> 25 **the hearing to panelists.**
> **Page 20**
> 1 Q. So language during the hearing.
> 2 Can you be more specific; what kind of
> 3 language?
> 4 **A. Panelists present for the hearing**
> 5 **described to me that members or the**
> 6 **students representing SJP made comments --**
> 7 **I'm paraphrasing their paraphrasing -- but**
> 8 **comments to the panelists that they should**
> 9 **be careful about their decision, that**
> 10 **people are watching, that they're working**
> 11 **with lawyers, so they should think**
> 12 **carefully about how they decide this. Those**
> 13 **were comments that panelists referenced as**
> 14 **concerning.**
> 15 Q. And do those comments go into the
> 16 decision that is communicated in this March
> 17 18 email?
> 18 **A. I'm sorry, can you ask that again?**
> 19 Q. Yeah, or, so as I said, this
> 20 doesn't specifically identify the
> 21 additional conduct, so I'm trying to
> 22 establish, you know, what conduct is at
> 23 issue. So we've identified the Open
> 24 Letter, and then you said that there were
> 25 comments made during the hearing which you
> **Page 21**
> 1 just clarified. *And I'm asking if those*
> 2 *comments were part of the decision that is*
> 3 *communicated in this email that they're now*
> 4 *suspended and that the proceedings will be*

> *5 started anew?*
> *6 A. Yes.*

Ex. 1 (italics added). Dean Nabors himself identified the concerning comments during the

February 4 hearing, and, after seeking and getting a clarification about the question,

confirmed that SJP-Pitt's comments during the hearing "were part of the decision that is

communicated in this email that they're now suspended" *Id.*

The University's other "clarifications" also squarely contradict Dean Nabors' original

testimony.  Those deposition passages relate to questions about the April 8, 2025, notice of *new*

conduct rules charges that Pitt sent to SJP-Pitt.  *Id.* at 36:7-16 (referencing Nabors' Deposition

Ex. 3, filed as ECF No. 46, Ex. 14).  Pitt's charging document defines the second set of charges

as, "[a]lleged violations relating to actions taken during the board hearing process," *id.*, but does

not elaborate on the offending conduct.  Dean Nabors again testified that the "actions taken

during the board hearing process" included not only the Open Letter but also "the comments at

the first disciplinary hearing," a point he reaffirms after again seeking and receiving clarification

of the initial question:

> **Page 38**
> 19 Q. The second set there where it says
> 20 alleged violations relating to actions
> 21 taken during the board hearing process,
> 22 that relates to what we have just been
> 23 discussing, the Open Letter and the
> 24 comments at the first disciplinary hearing;
> 25 is that correct?
> **Page 39**
> 1 **A. Yes.**
> 2 Q. Does that relate to anything else,
> 3 or that's the universe?
> 4 **A. Can you restate what you're asking**
> 5 **whether or not these are related to?**
> 6 Q. I want to make sure that we
> 7 understand the conduct that's identified as
> 8 problematic. And based on the discussion

7

> 9 we've just had, I'm asking whether or not
> 10 that second set of charges relates to
> 11 anything besides the Open Letter and the
> 12 comments you identified that the students
> 13 made at the hearing? Is there any other
> 14 conduct encompassed by that?
> 15 **A. No.**

Ex. 1.  The final "clarification" also speaks for itself, as Dean Nabors himself again cites

the "the language used during the previous hearing" in response to an open, non-leading

question:

> **Page 42**
> 16 What disruption or interference were you
> 17 aware of in bringing these charges?
> 18 **A. The two circumstances that we noted**
> 19 **thus far, the Open Letter and language used**
> 20 **during the previous hearing.**

Ex. 1.

The University's proposed clarification cannot be reconciled with Dean Nabors'

clear, original testimony and does not sufficiently justify substantive amendment under

Rule 30(e) here.  As the "reason for the change," the errata sheet states that "comments

by SJP-Pitt during the hearing affected the decision to vacate the pending conduct

proceedings, [but] those comments were not the basis for SJP-Pitt's interim suspension or

the charges related [sic] for" improperly influencing or disrupting an official proceeding.

ECF No. 57, Ex. 34. This change directly contradicts Dean Nabors' clear and

unequivocal testimony that both the Open Letter and the SJP-Pitt representatives'

comments during the February 4 hearing motivated the interim suspension decision and

the new charges.

Beyond the three challenged passages, several unchallenged portions of the

transcript are consistent with Dean Nabors' original testimony and now contradict the

"clarified" testimony offered in the errata, which Dean Nabors certified remains "true and

correct."  ECF No. 57, Ex. 34.  For example:

**Page 22**
> 12 Q. Okay, we'll come to that in a
> 13 couple minutes. The next paragraph [in Nabors' March 18 email to the students] talks
> 14 about consequences for the additional
> 15 conduct, and the first one says that there
> 16 will be additional charges; is that right?
> 17 **A. Yes.**
> 18 Q. And to be clear, the influence or
> 19 interference or disruption with the
> 20 proceeding at issue involves an incident
> 21 that occurred in Pitt's Hillman Library in
> 22 December 2024; correct? That was the
> 23 subject of the first proceeding; is that
> 24 right?
> 25 **A. Yes.**

**Page 23**
> 1 Q. *So this additional conduct that we*
> 2 *just discussed, the Open Letter and the*
> 3 *comments at the hearing, are what are*
> 4 *prompting additional charges; correct?*
> 5 *A. Yes.*

Ex. 1, at 22-23 (italicized emphasis added).

**Page 24**
> 7 *A. This letter references additional*
> 8 *coming charges.*
> 9 *Q. Okay, I guess my question is, do*
> 10 *those encompass anything beyond the Open*
> 11 *Letter and the comments made during the*
> 12 *hearing?*
> 13 *A. Can you repeat the question? Do*
> 14 *those? I'm sorry.*
> 15 *Q. I'm trying to understand the scope*
> 16 *of cumulative actions, all right?*
> 17 **A. Uh-huh.**
> 18 Q. So there's the library incident at
> 19 issue in the first misconduct hearing on
> 20 February 4. *The new ones that we've just*
> 21 *discussed -- and I don't want to put words*
> 22 *in your mouth, so if I'm misstating*

*23 something, please correct me -- we have*
*24 additional charges based on the Open Letter*
*25 and the students' statements or comments at*

**Page 25**

*1 the hearing.*
*2 My question is, and this is the 18th, so*
*3 as you rightly point out, it's right before*
*4 the alleged third violation involving*
*5 social media posts. Is there any other*
*6 conduct at issue here?*
*7 A. No.*

Ex. 1, at 24-25(italicized emphasis added).

**Page 32**

17 Q. *So just to clarify that, the*
*18 consequences identified in this Nabors*
*19 Exhibit 1, the interim, the new charges,*
*20 interim suspension and aborting of the*
*21 first process were all caused by a*
*22 combination of the Open Letter and the*
*23 students' comments at the February 4*
*24 hearing; is that a fair statement?*
25 **A. I'm sorry, can you say that again?**

**Page 33**

1 Q. I'm trying to summarize what, what
2 we have here. *So is it a fair statement to*
*3 say that the additional charges, the*
*4 interim suspension that's being imposed,*
*5 and the aborting of the first conduct panel*
*6 in process was all triggered by a*
*7 combination of the Open Letter and what the*
*8 students said at the February 4 hearing?*
*9 A. Yes.*

Ex. 1, at 32-33 (italicized emphasis added).

**Page 37**

20 Q. So Exhibit 3 that we're looking at
21 raises charges essentially grouped into
22 three; is that correct? It looks like, let
23 me say that there are a number of charges,
24 but they relate to really three incidents?
25 **A. Can you scroll to the second page**

**Page 38**

1 **again? And back to the first page, I'm**

2 **sorry. I think three is the right number,**
3 **yes.**
4 Q. And if you need to look at the
5 document, it's not ideal, be a lot easier
6 in person, but feel free to please ask Ali
7 whatever necessary. So the first set of
8 charges relates to the Hillman Library
9 incident that was the subject of the first
10 February 4 panel; is that correct?
11 **A. Yes.**
12 Q. And those charges are the same as
13 they were initially back in February; is
14 that right?
15 **A. Again, without the documents right**
16 **in front of me, I -- I, you know, don't**
17 **want to say definitively, but that's my**
18 **understanding.**
19 *Q. The second set there where it says*
20 *alleged violations relating to actions*
21 *taken during the board hearing process,*
22 *that relates to what we have just been*
23 *discussing, the Open Letter and the*
24 *comments at the first disciplinary hearing;*
25 *is that correct?*

*Page 39*

1 *A. Yes.*
2 *Q. Does that relate to anything else,*
3 *or that's the universe?*
4 ***A. Can you restate what you're asking***
5 ***whether or not these are related to?***
6 *Q. I want to make sure that we*
7 *understand the conduct that's identified as*
8 *problematic. And based on the discussion*
9 *we've just had, I'm asking whether or not*
10 *that second set of charges relates to*
11 *anything besides the Open Letter and the*
12 *comments you identified that the students*
13 *made at the hearing? Is there any other*
14 *conduct encompassed by that?*
15 *A. No.*

Ex. 1, at 37-39 (italicized emphasis added).

Defendants' errata simply cannot be reconciled with Dean Nabors' clear testimony, is

contradicted by unchallenged testimony, and lacks sufficient justification.  Among other reasons,

clarification cannot suffice as justification because Dean Nabors had "ample opportunity to request clarification from Plaintiff's counsel on the record" and did so multiple times before confirming that the comments by SJP-Pitt during their hearing factored into his decision-making. *Intervet, Inc.*, 2023 WL 2266411, at *8-9 (striking directly contradictory errata where no clarification was sought and no objection was lodged).  It is impermissible under Rule 30(e) to "re-write the testimony, after the fact, to reflect a more favorable transcript."  *Id.* at *9.  The University's proposed errata should therefore be rejected.

### Conclusion

The University's errata contradicts Dean Nabors' clear, unequivocal, and indeed repetitive original testimony that SJP-Pitt's comments threatening litigation at the February 4 hearing factored into the University's decisions to both impose the interim suspension on March 18 and to bring new charges on April 8.  This Court should strike the errata and credit Dean Nabors' original sworn deposition testimony.

Dated: August 5, 2025

Respectfully Submitted,

*/s/ Witold J. Walczak*
Witold J. Walczak
PA Bar No. 62976
Ali N. Szemanski
PA Bar No. 427769
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
P: 412-681-7864
F: 267-573-3054
vwalczak@aclupa.org
aszemanski@aclupa.org

Solomon Furious Worlds
PA Bar No. 333677
Kirsten M. Hanlon*

PA Bar No. 336365
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
P: 215-592-1513
F: 267-573-3054
sfworlds@aclupa.org
khanlon@aclupa.org

Jules Lobel, Esq.
NY Bar No. 1262732
P.O. Box 81918
Pittsburgh, PA 15217
juleslobel73@gmail.com

*\* Pro hac vice*

*Counsel for Plaintiff*