**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STUDENTS FOR JUSTICE IN PALESTINE AT PITT,**<br><br>*Plaintiff*,<br><br>**v.**<br><br>**UNIVERSITY OF PITTSBURGH;<br>JOAN GABEL, MARLIN NABORS,<br>KARIN ASHER, DaVAUGHN VINCENT-<br>BRYAN, MATTHEW LANDY, and<br>JAMEY MENTZER,<br>all in their official and individual capacities,**<br><br>*Defendants*. | **CIVIL ACTION NO. 2:25-cv-00524-NR**<br><br><br>**Judge J. Nicholas Ranjan** |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF REVISED MOTION FOR
PRELIMINARY INJUNCTION**

Plaintiff Students for Justice in Palestine at Pitt ("SJP-Pitt") files this brief in support of its revised Motion for Preliminary Injunction (ECF No. 45) and in response to the University's and individual Defendants' (hereafter collectively "Pitt") opposition brief. *See* ECF No. 57.

**FACTUAL BACKGROUND**

Pitt attempts to cloud the factual record set forth in SJP-Pitt's revised preliminary injunction brief on a few important points:

1.      After acknowledging that "the reason for the current suspension . . . is the *only material issue* before the Court" in this revised preliminary injunction proceeding, ECF No. 57 at 1 (emphasis added), Pitt needlessly defends its handling of the disciplinary charges related to SJP-Pitt's December 2024 library study-in, *id*. at 4-5. SJP-Pitt disputes Pitt's rendition, but desists from a rebuttal because it is not relevant to the current dispute.

2.      Pitt relies on an unjustified, and unjustifiable, errata to rewrite Defendant Marlin Nabors' deposition testimony to downplay his consideration of SJP-Pitt students' comments at the February 4 hearing in imposing the interim suspension and filing the new charges underlying the present suspension. *Id*. at 16, Ex. 34; *see also* ECF No. 60 (Br. in Supp. Mot. to Strike Errata). During SJP-Pitt's closing arguments, its representatives urged the panel to find in SJP-Pitt's favor and, according to Dean Nabors, said something to the effect of, "think carefully about how they decide" because "people," including "lawyers," "are watching." ECF No. 60, Ex. 1 (Nabors Dep.), at 19:16-20:14; Ex. 24 (Tuscano Dep.), at 37:21-39:17. As detailed in Plaintiff's Brief in Support of Motion to Strike Errata, ECF No. 60, Dean Nabors repeatedly testified that Pitt imposed the interim suspension and issued new disciplinary charges against SJP-Pitt based on not just the Open Letter, but also these comments during the February 4 hearing, which he claimed may have violated Pitt's improper-influence and official-proceeding-disruption conduct rules. ECF No. 60, at 6-11.

3.      Neither SJP-Pitt nor the hearing officers received instructions from the University or its officers, in writing or verbally, either before, during, or after the February 4 hearing, prohibiting contact. ECF No. 56, Ex. 20 (SJP-Pit 30(b)(6) Dep.), at 97:10-16; Tuscano Dep., at 41:4-25; Nabors Dep., at 61:17-63:9, 126:24-130:4.

4.      Dean Nabors conceded that the Open Letter introduced no new arguments or information beyond what was presented at the hearing. Nabors Dep., at 84:16-88:6.

5.      SJP-Pitt's inclusion of Pitt Law School as an Open Letter signatory resulted from a misunderstanding by a Law School signatory. SJP-Pitt 30(b)(6) Dep., at 89:21-90:17. SJP-Pitt quickly removed the Law School as a signatory upon realizing the mistake, and the Law School never appeared on versions displayed on SJP-Pitt's social media. *Id*. The May 23, 2025 hearing

panel found that SJP-Pitt did not falsify information submitted to a University official, and absolved them of responsibility for the alleged falsification conduct code violation. ECF No. 54, at ¶ 59; ECF No. 46-2, Ex. 5.

6.      Contrary to Pitt's assertions (ECF No. 57, at 7-8), the hearing officers *did not* discuss the Open Letter during their February 5 meeting beyond acknowledging its receipt. Tuscano Dep., at 53:3-21; 57:14-59:21; 66:1-13. This sentiment is confirmed by Dean Nabors' contemporaneous notes of discussions between him and the three hearing officers on February 10, 2025, *see* Nabors Dep., at 112:2-113:24 (referencing ECF 46-2, Ex. 11), and his testimony verifying the accuracy of those notes, *see id.* at 78:22-79-20; 114:4-12.

7.      On February 10, Dean Nabors interviewed each of the hearing officers about the impact of the Open Letter. ECF No. 46-2, Ex. 11; Nabors' Dep., at 78:22-79-20; 112:2-114:12. None of the three hearing officers claimed they were influenced by either SJP-Pitt's Open Letter or allusion to legal actions during the hearing, and none claimed that the disciplinary proceedings were compromised and should be stopped as a result. *See* ECF No. 46-2, Ex. 11; Tuscano Dep., at 57:14-59:21; 66:1-13; 71:20-72:12; Nabors Dep., at 114:4-12.

8.      Pitt's suspension, first interim and then final, has prohibited SJP-Pitt from engaging in First Amendment protected activities—namely meeting, organizing, demonstrating, and recruiting—from March 18, through September 18, 2025. *See* ECF No. 57, Ex. 8; ECF No. 54 ¶¶ 2-3, 38-39. The suspension precludes SJP-Pitt from recruiting new members, holding events and engaging in other organizational activities for the first month of the new school year. ECF No. 46-2, Ex. 19 (SJP-Pitt Decl.), at ¶¶ 13-17, 20. During the similar period last year, SJP-Pitt recruited over two dozen new members and held several on-campus events. *Id.* at ¶¶ 18-19.

**ARGUMENT**

**A.    This Court has Jurisdiction to Grant the Preliminary Injunctive Relief.**

SJP-Pitt's revised motion for a preliminary injunction, ECF No. 45, seeks relief related to Count II of its Complaint, and Pitt's argument that this Court lacks jurisdiction to grant this relief is specious. Count II challenges the organization's suspension for sending the Open Letter to the hearing officers because it punishes SJP-Pitt for constitutionally protected speech in violation of the First Amendment—which also is the basis of SJP-Pitt's revised request for preliminary injunctive relief. When SJP-Pitt filed its Complaint, the suspension was "temporary but indefinite," and remained so until June 18, when Pitt imposed the six-month suspension—also for SJP-Pitt's Open Letter.

A court may lack jurisdiction to issue a preliminary injunction if the motion for this relief is "insufficiently related to the complaint." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 489-90 (3d Cir. 2000). Courts may deny preliminary injunctive relief if the basis of the claim for preliminary injunctive relief does not resemble any claim in the original complaint. *See, e.g.*, *Bell v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. 2010) (per curiam) (affirming denial of relief where plaintiff sought injunction against corrections staff not named as defendant over cell search and property confiscation, where complaint alleged Eighth Amendment violation for inadequate medical care); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (same; plaintiff sued under Eighth Amendment for van transport injuries, but sought preliminary injunction for retaliation claim not included in complaint).

Pitt's imposition of an end date on what was an indefinite suspension does not deprive this Court of jurisdiction. There is a direct connection between the harm alleged in the complaint and the harm raised in the revised preliminary injunction motion. The six-month suspension is

backdated to the date of the original "interim" suspension, and both the interim and final suspension stem from the Open Letter.

The cases cited by Pitt are inapt and easily distinguishable. Unlike here, each involved a significant difference between the claims in the original complaint and the relief sought in the preliminary injunction motion. *See*, *e.g.*, *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 635, 638 (9th Cir. 2015) (affirming denial of preliminary injunctive relief for alleged HIPAA violations that lacked a "sufficient nexus" to the plaintiff's original unfair trade practices claims); *Galloway v. Walton*, No. 20-cv-611, 2021 WL 769294, at *1-2 (W.D. Pa. Feb. 8, 2021), *report and recommendation adopted*, 2021 WL 767665 (W.D. Pa. Feb. 26, 2021) (denying preliminary injunctive relief where original complaint alleged free exercise violation, inadequate medical care, and illegal confiscation of funds, but PI motion concerned high prices for commissary and phone calls, availability of cleaning supplies, and mail delivery delays); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 15-16 (4th Cir. 1997) (affirming denial of preliminary injunctive relief where ticketing agency brought antitrust suit against airline, but sought injunction requiring airline to remain in involuntary business relationship with agency, which was "directly contradictory to" relief sought in complaint).

The University's focus on the adjective "interim" to argue that this Court lacks jurisdiction is weak, overly formalistic, and incomparable to cases where relief is denied. This Court should reject the University's jurisdictional challenge.

### B.    SJP-Pitt Is Likely to Prevail on the Merits of its First Amendment Claim.

Pitt's sole argument against SJP-Pitt's First Amendment claim relies on cherry picked quotes from inapposite cases to press an analogy between jury tampering and the students' advocacy to the administrative hearing panel, but this analogy is fatally flawed. ECF No. 57, at 12-16. Court proceedings generally, and even more so jury trials, are materially different from

administrative hearings, especially Pitt's ill-defined student disciplinary proceedings. Pitt cites no authority for the analogy. And even if the analogy applied, Pitt's conduct rules are insufficiently tailored to the goal of protecting the fair administration of justice needed to satisfy the First Amendment's stringent scrutiny.

Pitt's argument that SJP-Pitt's Open Letter is not protected speech hinges on the flawed premise that sending the Open Letter to hearing officers is "indistinguishable from jury tampering." *Id*. at 13. But hearing officers are not analogues to jurors, and Pitt's disciplinary proceedings are not analogous to court proceedings, much less a jury trial. Jury trials are superintended by an independent judicial officer (the judge), bound by formal rules of procedure and evidence, who directs a carefully selected jury of the accused person's peers. Judge and jurors can have no affiliation with any of the parties, including the prosecution, which operates separately and independently of the court and jury. Parties can employ lawyers, and criminal defendants have a constitutional right to appointed counsel. Judges give jurors instructions, closely hemmed by well-known law and subject to challenge by lawyers for all parties. The entire proceeding is tightly regulated by rules and law.

Pitt's disciplinary hearings lack all of these traditional judicial trappings. Pitt directs the prosecution, selects a lay hearing manager to run the proceeding, and recruits University employees to be hearing officers. The hearing officers are university employees, and decidedly not the students' peers; they are the students' superiors—faculty, staff, and University officials. Students have no say in selecting the hearing officers. ECF No. 54 ¶¶ 15-19; *see also Commonwealth v. Bouie*, 398 A.2d 716, 717 (Pa. Super. Ct. 1979) (describing "a jury of one's peers" and the opportunity for the accused "to participate in the selection of the jury panel" as "essential" for a jury trial). Hearing officers are not sequestered or prohibited from discussing the

case with others. Nabors Dep., at 93:12-18. No independent judge imposes jury instructions, subject to challenge, that bind the fact finders.

Pitt's disciplinary proceedings also are not governed by any formal rules of procedure or evidence, let alone published rules. *See* ECF No. 57, Ex. 5 at 15-16, 22-25. In fact, Pitt's procedural rules seem to differ from hearing to hearing. *See* Ex. 25, at UPITT_0003015-16 (Defendant Landy admitting that the rules governing the February 4 hearing departed from recent precedent and that he "improperly 'vocalized' procedures" about requirement that SJP-Pitt submit questions in advance); Ex. 26, at UPITT_0002660-61 (presiding mediator claiming, without support, that parties could object to proposed exhibits and he could exclude evidence). The rules are, to put it mildly, *loosey goosey*.

Moreover, students and student organizations, including SJP-Pitt, are not allowed to have attorneys or other "support persons" directly participate during the hearing or at any other stage of the process. ECF No. 57, Ex. 5 at 14-15. The accused has no legal counsel to protect their rights, ensure the proceedings follow clear rules of procedure and evidence, or weigh in on jury instructions setting forth established law to regulate the jury's decision-making; indeed, there are no instructions to the fact finders. In sum, Pitt's disciplinary hearings differ in countless ways from jury trials, eviscerating Pitt's attempted analogy.

Pitt's reliance on nonbinding case law assessing the *facial* constitutionality of narrowly tailored jury tampering statutes also is misguided. SJP-Pitt's request for preliminary relief challenges only the *application* of Pitt's vague and overbroad conduct rules to suspend the group.[1] In its revised preliminary injunction brief, SJP-Pitt argues that overbroad rules are more

---

[1] Contrary to Pitt's assertion, SJP-Pitt raised this as-applied challenge in Count II of its Complaint. *See* ECF No. 1, at 36 (suspension violates the First Amendment because "it punishes

susceptible to applications that do not survive strict scrutiny—like the use of Rule 42 to punish SJP-Pitt—because they offer "the opportunity for abuse" as the enforcing official "may shape his [own] views" on what constitutes a violation. *Minn. Voters All. v. Mansky*, 585 U.S. 1, 4 (2018). Pitt attempts to paint this argument as a facial challenge, which would more neatly correspond to the challenges raised in the jury tampering cases it cites. ECF No. 57, at 19-22. Rather than engaging with the merits of SJP-Pitt's as-applied challenge, Pitt dismisses it in a footnote and summarily concludes that it "would fail for the same reasons that SJP's overbreadth argument fails." *Id.* at 22 n.2. But facial overbreadth challenges are governed by a far more stringent standard than as-applied challenges because "[i]nvalidation for overbreadth is 'strong medicine' that is not to be 'casually employed.'" *United States v. Hansen*, 599 U.S. 762, 770 (2023) (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)).

Putting aside Pitt's flawed analogies to cases bringing facial challenges to jury tampering statutes, Pitt ignores the First Amendment imperative that laws must be narrowly tailored, even regulations of jury tampering. As an initial matter, *Turney* and *Heicklen* do not create a categorical exception to First Amendment protections where speech is intended to influence factfinders, particularly not an exception broad enough to apply to factfinders in administrative proceedings. *See United States v. Heicklen*, 858 F. Supp. 2d 256, 275-76 (S.D.N.Y. 2012) (dismissing an indictment for jury tampering despite evidence of intent to influence jurors). Jury tampering statutes still must comply with the First Amendment, and narrow tailoring is accomplished by requiring that convictions—or the underlying statutes—satisfy a scienter requirement. *See Turney v. Pugh*, 400 F.3d 1197, 1204 (9th Cir. 2005) (noting that the jury-

---

SJP-Pitt for constitutionally protected political speech criticizing Pitt's treatment of the organization").

tampering statute would "rarely" reach "innocent conversations" with jurors "because the speaker will rarely possess the requisite intent"); *Heicklen*, 858 F. Supp. 2d at 274-75 (noting that an overbroad federal tampering statute "would arguably chill protected speech because it could sweep within its prohibitions speech that was not made with the intent of influencing the outcome of a particular case *and* that did not pose a clear and present danger to the administration of justice"). This separates all sorts of communications aimed at jurors from those most likely to harm the administration of justice.

To the extent Pitt's Rule 42 is aimed at goals like protecting the process by ensuring witnesses are not threatened or coerced or that hearing officers only hear the case, the First Amendment requires that more narrowly tailored rules be adopted to satisfy these aims. *See, e.g.*, *Doe v. Schorn*, 711 F. Supp. 3d 375, 407 (E.D. Pa. 2024) (rejecting confidentiality requirement for administrative proceedings as insufficiently tailored where it was "both over and under inclusive" in how it protected the purported state interest). Pitt's current rule sweeps far beyond possibly legitimate applications and could be applied to editorials, social media posts, and open letters. Furthermore, Pitt's own application of its rule suggests the aim is narrower than influencing any participant, as it did not charge SJP-Pitt with communicating with Defendants Vincent-Bryan and Asher—both involved in prosecuting the case—in the same mass email. Nabors Dep., at 90:23-92:12. Pitt's Rule 42 thus lacks the necessary tailoring that balances the tension between the First Amendment and fair proceedings in Pitt's cited jury tampering cases.

"As the Supreme Court recognized, restrictions on speech concerning pending judicial proceedings are likely to impede discussion of important public issues 'at the precise time when public interest in the matters discussed would naturally be at its height.'" *Turney*, 400 F.3d at 1205 (quoting *Bridges v. State of California*, 314 U.S. 252, 268 (1941)); *see also Bank of Hope*

*v. Miye Chon*, 938 F.3d 389, 392 (3d Cir. 2019) (explaining that "[t]he First Amendment requires courts to tread warily when restricting litigants' speech" before applying strict scrutiny). SJP-Pitt's Open Letter and in-hearing advocacy on February 4 were at the "precise time" that public interest in Pitt's treatment of the student group was "at its height." Comments made during the hearing and through the publicly delivered and subsequently posted Open Letter do not present an "imminent" and "likely" threat to the process, and thus cannot be sufficient justification to punish SJP-Pitt's expression. Pitt's citations are simply inapposite.

### C.    SJP-Pitt is Suffering Irreparable Harm Warranting Relief.

Pitt argues that SJP-Pitt is not suffering irreparable harm because it has not "planned any events or activities in the immediate future." ECF No. 57, at 23. That SJP-Pitt had not begun to plan fall events in March, prior to the suspension, or planned any future events during their suspension, is not surprising. SJP-Pitt did not and could not know how long the interim suspension would last, or even if the group's registration status would be terminated given the sanction Pitt initially threatened. *See* Ex. 27 (April 14, 2025 disciplinary charge reflecting recommended sanction of two-year *termination*). The suspensions, first interim and then final until September 18, specifically restrict SJP-Pitt's ability to engage in any on-campus advocacy or membership recruitment—which are First Amendment protected activities.

As detailed in SJP-Pitt's opening brief and supporting declaration, ECF No. 46-2, at 7-8 and Ex. 19, ¶¶ 11-20, specific impending harms include an inability to participate in Welcome Week's Involvement Fair (set to occur August 24), where the organization could recruit new members,[2] or hold any events or demonstrations on campus until after September 18, when the

---

[2] *Welcome Week 2025*, Univ. of Pittsburgh, Division of Student Affairs, https://www.studentaffairs.pitt.edu/new-student-programs/welcome-week-2025.

suspension lifts. Pitt unjustifiably suspended SJP-Pitt in violation of the First Amendment and then faults the group for not planning events it told them they could not hold.

The Third Circuit has regularly reaffirmed the proposition from *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.), that restrictions on First Amendment speech rights, like bans on speech, "unquestionably constitute[] irreparable injury." *See*, *e.g.*, *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 323 (3d Cir. 2013) (en banc) (quoting *K.A. ex. rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 113 (3d Cir. 2013), which quotes *Elrod*, 427 U.S. at 373)). Pitt's only authority to the contrary is an unpublished, non-precedential decision, which concerned a pre-enforcement facial challenge under the First Amendment. *Conchatta, Inc. v. Evanko*, 83 F. App'x 437, 442-43 (3d Cir. 2003) (per curiam). However, as other courts within the Third Circuit have noted, *Conchatta*'s "fact specific holding does not mark a retreat from the automatic presumption principle enounced in *Elrod*." *Am. Freedom Def. Initiative v. Se. Pa. Transp. Auth.*, 92 F. Supp. 3d 314, 330 (E.D. Pa. 2015); *see also One Three Five, Inc. v. City of Pittsburgh*, 951 F. Supp. 2d 788, 823 (W.D. Pa. 2013) (distinguishing *Conchatta* where challenged governmental action has already happened and continues to directly affect plaintiff).

Finally, SJP-Pitt's loss of its ability to speak as an organization is undoubtedly a harm to its constitutionally protected right and hinders its members' rights to expressive association, even if its individual members retain their own individual speech rights. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 279 (3d Cir. 2014) (explaining organizations have standing where "the organization itself has suffered injury"). SJP-Pitt's loss of the "privileges" conferred by registration status are not minimal and plainly curtail the group's First Amendment protected expressive and associational activities. ECF No. 46-2, Ex. 19 (SJP-Pitt Decl.), at ¶¶ 11-12; *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("[T]he government . . . may not deny a

benefit to a person on a basis that infringes his constitutionally protected interests."). SJP-Pitt's harm is irreparable and beyond dispute.[3]

## CONCLUSION

For the foregoing reasons, SJP-Pitt respectfully requests that this Court grant the requested preliminary injunctive relief.

Dated: August 6, 2025                        Respectfully Submitted,

By: _/s/ Witold J. Walczak_

Witold J. Walczak
PA Bar No. 62976
Ali Szemanski
PA Bar No. 327769
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
P: 412-681-7864
F: 267-573-3054
vwalczak@aclupa.org
aszemanski@aclupa.org

Solomon Furious Worlds
PA Bar No. 333677
Kirsten M. Hanlon*
PA Bar No. 336365
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
P: 215-592-1513
F: 267-573-3054
sfworlds@aclupa.org

---

[3] The remaining two preliminary injunction factors favor issuance of an injunction. Any harm to Pitt here would be minimal because Pitt would remain "free to attempt to draft new regulations that are better tailored" to serve its interests. *Swartzwelder v. McNeilly*, 297 F.3d 228, 242 (3d Cir. 2002). Given the significant harms faced by SJP-Pitt, the balance of equities favors injunctive relief. Similarly, the public interest will be "best served by eliminating the unconstitutional restrictions" imposed by the suspension while at the same time permitting Pitt "to frame a more tailored [rule] that serves its legitimate interests." *Id.*

khanlon@aclupa.org

Jules Lobel, Esq.
NY Bar No. 1262732
P.O. Box 81918
Pittsburgh, PA 15217
juleslobel73@gmail.com

* *Pro hac vice*

*Counsel for Plaintiff*