```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF PENNSYLVANIA


     STUDENTS FOR JUSTICE IN
     PALESTINE AT PITT,
                      Plaintiff
        vs.                            Civil Action No. 25-524

     UNIVERSITY OF PITTSBURGH,
     et al.,
                    Defendants.

                          - - -


        Transcript of Telephonic Status Conference on
     July 17, 2025, in the United States District Court,
     700 Grant Street, Pittsburgh, PA 15219, before
     Honorable J. Nicholas Ranjan, United States District Judge.


     APPEARANCES:

        For the Plaintiff:      Kirsten Marie Hanlon, Esq.
                                Ali N. Szemanski, Esq.
                                Solomon Furious Worlds, Esq.
                                Jules Lobel, Esq.


        For the Defendants:     Alexander Robert Bilus, Esq.
                                Joshua W.B. Richards, Esq.

        Court Reporter:         Veronica R. Trettel, RMR, CRR
                                U.S. Courthouse
                                700 Grant Street
                                Suite 6260
                                Pittsburgh, Pennsylvania 15219




        Proceedings recorded by mechanical stenography;
     transcript produced by computer-aided transcription.
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

P-R-O-C-E-E-D-I-N-G-S

Thursday Morning, July 17, 2025

THE COURT:  Good morning, everyone.  This is Judge Ranjan.  This is a status conference in Students for Justice in Palestine at Pitt versus the University of Pittsburgh, et al. at case 25-524.

THE COURT REPORTER:  Judge, Mr. Lobel dropped from the call.

THE COURT:  Well, why don't we wait until he gets back on the call.

(Pause noted)

THE COURT:  All right.  Good morning, everyone. Let's go on the record.  I think we have everybody on the line, but let's start by having counsel enter their appearances beginning with counsel for SJP.

MS. SZEMANSKI:  Good morning, Your Honor.  This is Ali Szemanski on behalf of SJP.  I'll let my co-counsel enter their appearances.

MR. LOBEL:  This Jules Lobel on behalf of plaintiff SJP.

THE COURT:  All right.

MR. WORLDS:  Good morning, Your Honor.  This is Solomon Furious Worlds, counsel for plaintiff SJP.

MS. HANLON:  Good morning, Your Honor.  This is Kirsten Hanlon on behalf of plaintiff SJP and I have two legal

1    interns with me as well.

2          THE COURT:  All right.  Great.  Good morning and

3    welcome.

4          For the defendants, who do we have on the line?

5          MR. RICHARDS:  Good morning, Your Honor.  Josh

6    Richards for all defendants.

7          MR. BILUS:  Good morning, Your Honor.  This is Sandy

8    Bilus for all defendants.

9          THE COURT:  All right.  Great.  Good morning to both

10   of you as well.

11         So the reason for this conference was that I received

12   an email from defense counsel indicating that there might be

13   one discovery dispute that needed my attention prior to I

14   think some depositions occurring on Friday.

15         So I guess I'll hear from the defendants maybe as to

16   the nature of the dispute.

17         Mr. Richards or Mr. Bilus, do you want to address it?

18         MR. RICHARDS:  Thank you, Your Honor.  This is

19   Mr. Richards.  I'll try to address it briefly.

20         We held the 30(b)(6) deposition of plaintiff on

21   Tuesday, and during the course of that deposition, a few

22   issues arose which defense counsel conferred with plaintiff's

23   counsel during and after the deposition about an intent to

24   likely raise those issues with the Court.

25         Two of those issues continue to be discussed, have

1    not been fully resolved yet, but we're not bringing those to

2    the Court's attention at this time.

3            I raise it only because there may be additional

4    issues after the depositions which I think are relevant in

5    part for how we may want to resolve this.

6            The issue that wasn't resolved was sort of a

7    combination of a number of instructions to the witness to not

8    answer questions within the scope of internal communications

9    and the associational privilege that has been raised by

10   plaintiffs and provisionally ruled upon by the Court in its

11   June 9th order in this case.

12           What also became clear during the deposition is that

13   there were a number of what we would consider to be highly

14   relevant communications about key events in this case,

15   including the disciplinary hearings, the interim suspension,

16   the full suspension, the open letter, et cetera, and in light

17   of the fact that the Court's order was issued provisionally

18   and at a time when I believe as of June 9th we were shooting

19   for a July 3rd evidentiary hearing, we had depositions

20   scheduled for the following two weeks, the parties had asked

21   the Court to rule on the issue expeditiously in order to allow

22   us to move forward.  The Court graciously obliged, but we're

23   now in a different posture.

24           We have a non-evidentiary hearing on the papers to

25   occur August 28th.  There are six weeks between now and then,

1       and it is our view that in light of the information that was

2       elicited during the 30(b)(6) deposition and we believe will

3       continue to be elicited during the continuation of that

4       deposition tomorrow, we think that this issue of whether or

5       not internal communications about the key issues in this case

6       among SJP members really ought to be revisited in light of

7       additional information and additional time.

8            In concert with what I think have been some pretty

9       reasonable proposals from the defense to dramatically limit

10      any exposure that would cause chill or individual exposure for

11      SJP members by, for instance, applying unique identifiers,

12      it's not our desire to get names, dates, and serial numbers

13      here.  We just want to know what the substance of the

14      discussion was.

15           And in having this meet and confer with plaintiff's

16      counsel after the deposition yesterday, it was really

17      plaintiffs who pushed to bring this to the Court's attention

18      right away.

19           We obliged in the interest of getting this worked

20      out, but I would just say from the defense perspective, we

21      think that this is an important issue, it's a difficult issue,

22      there's not a lot of precedent on this issue, and we want to

23      get to the right answer here, and for our part, we don't think

24      there's a need to rush that decision.  These depositions can

25      be held open, completed after the Court has issued its order

1    in plenty of time to not move the August 28th hearing.

2         If that necessitates supplemental briefing on very

3    brief issues, that's totally fine with us.  But you know, we

4    think that the internal communications that were had among SJP

5    members, particularly when those things took place months ago,

6    there's testimony that they were taking place on a Signal

7    chain -- we're not sure if there are other communications

8    about it -- are necessary for us to be able to meaningfully

9    examine the witnesses about those communications, and even if

10   we were able to do so in deposition, if counsel would permit

11   us to simply ask about the substance, you know, asking about

12   the substance in the absence of actually having the documents

13   that they have in front of them in front of us, seems unfair,

14   inequitable, and the fact that those communications may be

15   embarrassing to plaintiffs isn't sufficient, in our view, to

16   shield them from discovery.

17        Their argument is it's going to chill participation,

18   and our view is we can certainly either agree to a defense

19   eyes only, "defense counsel eyes only" designation or even a,

20   as I said, unique identifier designation of who is actually

21   seeing what.

22        So that's sort of it in a nutshell as far as the

23   defense position and I'll let the Court ask questions.

24        THE COURT:  Okay.  All right.  Thank you.  I

25   appreciate it.  Let me ask you this.  I had not -- so I went

back prior to this hearing and I tried to skim through some of the prior briefs on the discovery issue and looked at my prior orders.

The one thing that I neglected to do I realized was to look at the revised motion for preliminary injunction that was filed.  So I don't have a good sense as to what -- how the nature of the dispute has changed, if at all.

I recall when I -- I think we had a call previously of counsel, maybe I just received a written document that the issues had been narrowed in this case, and I didn't know if the defense had a view as to whether or not the narrowing of the issues here had any impact on this associational privilege issue.

MR. RICHARDS:  Well, the short answer is we can't know.  It certainly might.  But narrowed issues on the new PI dramatically impact the temporal scope of what we are looking at.  So the discrete events that we would be looking at communications about I think have narrowed.  So the scope of time is narrower.

Now, whether or not that meaningfully impacts the concerns about the substance of the communications, the participants in the communications is something that plaintiff's counsel would know, but we don't.

THE COURT:  Okay.  All right.  Thank you.  Appreciate it.  I'll hear from plaintiff's counsel.  I don't know who on

1    the plaintiff's side is taking the lead on this.

2    MS. SZEMANSKI:  Yes, Your Honor.  Ali Szemanski on

3    behalf of the plaintiff.  I'll actually start with the last

4    issue you raised, just the current scope.

5    In the June 26th filing from the parties on, you

6    know, a revised scheduling order, we did outline that the only

7    issues to be resolved at this phase are the February 4th open

8    letter and the associated suspension.

9    After the second disciplinary proceeding, the

10   suspension that was imposed until mid September was only for

11   the open letter, and so the parties believed that narrowing

12   the scope of discovery was appropriate to just the open letter

13   and associated suspension, and that was what we submitted to

14   the court.

15   But a few thoughts on the issues raised by

16   defendants.  First, on the issue of the Court's earlier ruling

17   on the issue of associational privilege.  We did not read that

18   as a provisional order.  We read the order at face value.  It

19   said it resolved the issue, but considered a fully briefed

20   issue, and the privilege log, and granted in part, and denied

21   in part a protective order, and required release of some

22   documents.

23   But you know, we saw that the Court reserved the

24   right to issue a more fulsome ruling, but we didn't read that

25   to say that it was preliminary, temporary, or open to

1    revisiting the issue necessarily, but that a ruling had been

2    reached, and importantly here, none of the internal

3    communications for SJP were ordered to be released.

4            So we viewed that as a conclusion that they were both

5    privileged and that there was an insufficient showing to

6    overcome the privilege such that we had to turn them over.

7            Because of that protective order, we did raise this

8    objection during the deposition to the substance of internal

9    communications amongst SJP because we viewed that as kind of

10   part and parcel with the same issues that were resolved in the

11   associational privilege protective order motion.

12           So you know, I'm fully open to being told that I

13   mis -- been told that I misread the order, and, of course, you

14   know, that can be revisited, but like when we came into the

15   deposition, we had just assumed that that order meant what it

16   said, and that those things were privileged, and that was the

17   nature of our objections and instructions not to answer.

18           On the communications themselves, I wanted to just

19   make a distinction, and I think this also came up a bit in the

20   briefing on the associational privilege.

21           There's kind of two sets of communications that I

22   think it's important to differentiate between.  There are

23   internal communications that were preserved and included on

24   the privilege log and that, you know, theoretically could be

25   turned over to defendants.

1          There are also communications that occurred on

2    Signal, the messaging platform, and were mentioned briefly in

3    that kind of dispute, that because of the nature of the

4    settings on that chat were deleted automatically by settings

5    and they aren't produceable in this matter, our understanding

6    of the technology is that they simply can't be recovered, and

7    we made as much known.  We disclosed that in our discovery

8    responses.

9          But I would say like some of the questions during the

10    depositions, like it was not -- there was no attempt to

11    differentiate between like whether those were communications

12    that still existed and could be turned over or whether the

13    deponent was testifying about communications that actually

14    don't exist anymore.

15          So I just wanted to kind of raise that.  It's a

16    difficult issue in this case, that there are communications

17    that have been withheld as privileged, but also some that we

18    would also claim privilege over, but no longer exist and

19    cannot be recovered.

20          I will say that during the deposition, in the

21    interest of, you know, not holding these open to let the

22    matter proceed, we did offer to kind of maintain our privilege

23    objection, but permit counsel to inquire about the substance

24    of the privileged communication, you know, maintaining our

25    objection, but trying to reach some sort of efficient

compromise, and I think as you heard Mr. Richards say, their
position was without the actual communications themselves,
they were not comfortable doing that examination at that time,
but we did make that offer.

And finally, just generally, we hear what opposing
counsel is saying about their willingness to kind of minimize
any chill associated with any sort of disclosure, and we
appreciate their kind of willingness to work with us on that,
but these are fairly internal communications about, you know,
kind of the group operations, you know, how they, you know,
carry out their mission, how they, you know, do the things
that they want to do.

So those are very within the, we think the core of
the associational privilege.  Like, it's very at the heart of
the organization, and internal communications are not required
to be turned over as opposed to communications with other
external parties which were.

But you know, having reviewed what is on the
privilege log, we don't think they really even the
communications are there touch barely, if at all, on the open
letter, particularly not the issue of the students in Kent
with the open letter, which, you know, we dispute that that is
actually an issue for the PI.

But when we reviewed the privilege log with an eye
toward the documents in the privilege log that were withheld

1    with an eye towards that, it's simply we didn't see much there

2    and, you know, things haven't really changed.

3          We are set to take a deposition tomorrow where we're

4    on kind of -- we're in the middle of a briefing timeline.  So

5    we just haven't seen that anything has changed that would

6    warrant revisiting this issue, but those, I would say, are our

7    positions on kind of the associational privilege issue and how

8    coming into the deposition, we saw kind of the state of

9    affairs.

10          THE COURT:  Okay.  Can I ask -- obviously I wasn't

11    there during the deposition, but in terms of instructions not

12    to answer, I don't -- I mean, I guess can you give me an

13    example of where you were going with that?

14          Obviously, my prior order wasn't very detailed and I

15    was trying to get something out to kind of resolve this to

16    move things along, but I sense both sides sort of understood

17    the gist behind where I was going on the associational

18    privilege issue, which would be, at least as it currently

19    stands, internal communications here about the open letter,

20    would, in my view, be highly relevant to some of the claims,

21    and primarily, I guess, the defenses here in this case.

22          Did any of the instructions, you know, instruct the

23    witness not to disclose discussions or communications about

24    sending the open letter, things of that nature?

25          I mean, I don't know if you can give me a sense as to

what the instructions were to the witness at the last
deposition and maybe just generally what your position would
be on questions like that.

MS. SZEMANSKI:  Sure.  My recollection was that the
deponent answered questions about the drafting process for the
open letter, but I believe the instruction not to answer as to
like the specific rationale under -- that were at issue in the
group's communications about how to proceed with the open
letter in terms of like the framing, but you know, they
answered questions about their intent of sending it to various
recipients, their decision to send it to various recipients,
but -- and then, as I said, we did offer to let them inquire
about the substance of those conversations.

We just kind of revisit our position in the interest
of efficiency while maintaining the objection because the
internal communications are privileged.

THE COURT:  Okay.

MS. SZEMANSKI:  But I also -- to the extent defense
counsel has any specific recollection, I assume you'll also
ask, but I also defer to them as well.

THE COURT:  Okay.  All right.  Thank you.

Mr. Richards, any reply, I guess, or anything else to
add on this issue?

MR. RICHARDS:  Just very briefly, Your Honor.  The
Court is obviously the arbitrator of its own order and will

determine what is appropriate.  I would just point out that

paragraph 4 of the Court's order explicitly says that the

order is provisional.  It's the first four words of the

paragraph.

And the second thing that I would just raise is with

respect to Ms. Szemanski's recollection yesterday, we expect

to have an expedited copy of the transcript this afternoon.

I would hate to try and shoot from the hip and get it

wrong, but, you know, my recollection is that there were some

questions about why certain things were or were not pursued

and that there were instructions not to answer on those, but I

would like to, you know, have the opportunity to re-review the

transcript and provide it to the Court, if necessary, so we

can nail those issues down.

THE COURT:  Okay.  All right.  Thank you.  I guess

this is -- I suppose where I am at on this particular issue, I

remember from the briefs before, I was fairly convinced,

although I appreciate there's probably not circuit precedent

on it, but I was fairly convinced by Judge Marston's decision

about the existence of the associational privilege, which is

why I kind of just cut to whether or not the documents at

issue were highly relevant.

And then in my mind, as I recall, looking at the

privilege log and essentially sort of through the privilege

log and found that, you know, the more specific descriptions

that related to the particular issues here were highly
relevant, but that -- and so needed to be produced, but, of
course, as I think you all know from the order, I put some
extra protections surrounding those documents, including the
ability by plaintiff to redact names, the ability to designate
certain documents as "outside counsel only" and also designate
portions of the transcript as "outside counsel only."

In my view, based on my prior decision, you know,
communication, internal communication by the plaintiff here
now that concern the open letter and that particular six-
month suspension or, you know, communication about the open
letter, what was going into the letter, whether or not it was
a form of protected speech or some type of, you know, attempt
to interfere with the process, to me, is all highly relevant
here to the claims and defenses, at least as presented by the
preliminary injunction motion.

So to the extent any witnesses ask questions about
those documents, about the open letter and the process that
went into it and any intent to exercise speech or to influence
any ongoing processes, to me, that's all fair game, and that
the substance of those communications should be and can be
explored at a deposition.

However, I do think it's important to minimize any
questions about particular members and their identities.
There's still an ability to designate portions of the

transcript to be "outside counsel only," and I do like the
idea that, if necessary, to get into a particular individual,
to have maybe an identifier as opposed to a name, which, to
me, kind of balances any chilling effect versus the relevance
that I find as to those particular communications and
documents.

So with that guidance, I'd hope counsel can proceed
with the depositions accordingly.  If there's still -- if
anyone believes there's still really a need to get into this
at a more granular level or if this will become a recurring
issue throughout this case, I'm fine if, you know, if anyone
wants to file supplemental briefs on this particular issue and
I can resolve them as quickly as I can, but I wanted to at
least provide my, I guess my guidance and more of an
explanation as to my prior order, particularly in the context
of the revised preliminary injunction motion.

Any responses or questions or objections to any of
that, Mr. Richards, from the defense side?

MR. RICHARDS:  No, Your Honor, I don't believe so.
We'll confer with counsel for the plaintiffs about getting
some documents produced then and getting these depositions
wrapped up.

THE COURT:  Okay.  Ms. Szemanski, anything?  Any
questions or responses, anything?

MS. SZEMANSKI:  Just two brief questions.  We just

wanted to be completely sure as to whether you were ordering

us to produce the chats as well or just permitting examination

as the topic of deposition.

THE COURT:  I'm sorry, did you say the chats?

MS. SZEMANSKI:  Yes, I'm sorry, the internal

communications.

THE COURT:  Yeah, I mean, I think -- I don't know if

those were on the prior log or if those just kind of come up

during the course of communications, but, to me, if there are

any discussions, internal discussions, again, pertaining to

this particular open letter, you know, then those would follow

my prior ruling and should be produced.  Again, they can be

redacted and also designated as "outside counsel only."

MS. SZEMANSKI:  Okay.  A follow-up question on that.

Having looked at the documents, I'll represent to you and

opposing counsel that some of the documents are quite long and

cover, you know, months of the timeframe in a single document.

You know, typically you would hand over both

responsive and nonresponsive materials, but we were wondering

whether we can hand over just those communications around the

open letters themselves, like a subset, and kind of it was --

they were group chats among students.  So the discussion would

ping-pong to various topics.

And so because some of the discussions that are mixed

in with the highly relevant discussions on the open letter

1    itself are kind of mixed in, we were wondering whether because

2    those are not highly relevant, they could be redacted as

3    privileged?  So not kind of responsive --

4        THE COURT:  In my view, if you are talking about a

5    voluminous document that contains -- particularly contains

6    associational information that is not precise and targeted to

7    this open letter issue, you know, to me, that would not fall

8    within my prior order and would not need to be -- would not

9    need to be produced or could be redacted if it's interspersed

10   within another document.

11       Obviously, I think, you know, redactions, everybody

12   has to use some judgment and common sense such that it is not

13   a -- becomes a completely unreadable document also, but that

14   would be consistent with my thoughts today and my prior

15   ruling, which would be, again, to me, what are the disputes

16   here at issue and are specifically reflected in these

17   documents and that really go to the heart of any of the claims

18   and defenses in this case, to me would be, as it stands now,

19   you know, communications pertaining to the open letter and the

20   resulting, you know, suspension, six-month suspension.

21       MS. SZEMANSKI:  Great.  Thank you for letting me ask

22   those clarifying questions.  I didn't want to end up with a

23   conversation with opposing counsel and potentially having to

24   come back if the parties disagreed about things like that,

25   redacting other chats.

1    So I don't have any other questions, but I don't know

2    if Mr. Lobel had any questions.

3    MR. LOBEL:  Yes, Your Honor.  This is Jules Lobel for

4    the plaintiff also.

5    I had a comment on Mr. Richards' timing scenario.

6    Two things have occurred which I think relate to timing.  The

7    first is that the suspension is six months, but it ends on

8    September 18th.

9    Starting on August 18th is the critical period for

10   our client to meet with students, recruit students, hold

11   events.  And so, therefore, a hearing or argument on August

12   28th, 29th would, in our view, cause our plaintiff to suffer

13   irreparable harm which couldn't be rectified obviously.

14   And the second point is that we have already filed

15   our modified preliminary injunction brief, and as we went

16   through that, it became clear that, at least in our view, the

17   facts, the key facts are undisputed, and that we tentatively

18   were thinking of -- this could change, given their brief and

19   given our reply brief, but we were tentatively thinking of

20   asking the court to decide this quickly on the papers itself

21   without any hearing because we understood that your first

22   available hearing date was the 28th of August, and as I said,

23   August 18th starts a critical period for the organization to

24   begin to meet and recruit and engage in activities with other

25   students.

1           So I just wanted to make that observation in response

2      to the timing issue that Mr. Richards pointed out.

3           THE COURT:  Let me ask you this.  Will the motion

4      become moot then in September?  I mean, I'm just looking at

5      the proposed order, which asked for the reinstatement of SJP

6      or the full privileges.

7           MR. LOBEL:  It might.  I'm not sure if it would, but

8      it might.

9           THE COURT:  Okay.  Mr. Richards, any response to any

10     of that to Mr. Lobel's comments as well as the discussion with

11     Ms. Szemanski?

12          MR. RICHARDS:  Yes, Your Honor, just very briefly.

13     On Ms. Szemanski's points, we're obviously comfortable with

14     plaintiffs producing the portions of those discussions that

15     are relevant to the PI.

16          In our view, we would offer a friendly amendment to

17     the Court's construction, which is obviously the open letter

18     and the suspension, but in addition, any messages that relate

19     to any facts that plaintiff intends to try to show at the

20     hearing, this sort of privilege can't be used as both a shield

21     and a sword.

22          If the plaintiff is going to try to establish facts

23     through either declaration or otherwise, then it's our view

24     that any fact related to those should be unredacted and

25     provided.  So that's just a friendly amendment proposed.

The second point is that for limited purposes, you know, for these purposes, the scope of that disclosure makes sense. The scope of disclosure may need to increase later in the case if it proceeds past the PI stage as additional facts become relevant.

And so, defense is comfortable with those redactions at this time, with the caveat that they would, of course, need to be logged and that they would be subject to, you know, additional D redaction, as it were, later on in the case potentially.

THE COURT: Okay. Let me pause. Let me stop there now. I think that makes sense on my end.

Ms. Szemanski, any response to that or issues with any of that? (No response). Hello?

MS. SZEMANSKI: I'm sorry, I was on mute.

I think that makes sense given the scope of the PI at this time. You know, our motion is focused on kind of see is still impending irreparable harm, and because of the date range of many of these communications, these focus on like harms that have already occurred and will not reoccur.

So just with that kind of caveat. We'll obviously do another check as to whether there's any, you know, things that weren't previously logged, like recent communications, for instance, that are responsive, but I think we don't have an objection to that.

1          Also, I just want to make clear on the record, and

2    we'll obviously confer with defendants on this later, we had

3    left some topics open for tomorrow's deponent.

4          So we'll obviously -- you know, and if we need to

5    make available again the 30(b)(6) deponent, and we can talk

6    about the answer, we can work with defense counsel on that as

7    well.

8          THE COURT:  Okay.  All right.  Thank you.

9          Mr. Richards, on the timing issue, I don't know if

10   you had anything additional on that?

11         MR. RICHARDS:  I don't have any particular view on it

12   at this moment.  We haven't completed our discovery on our

13   side.  We're still waiting for some key documents.  We're

14   still waiting to take one-half of the depositions that we

15   tried to take.  I don't have a position on whether this case

16   can be decided without argument.

17         THE COURT:  Okay.  I mean, the reality would be --

18   I'll tell you now, for me to decide this before August 18th,

19   everything will have to be probably done, discovery done and

20   everything briefed in about eight days I would say so that I

21   have the week of July 28th really to dive into it, and there

22   would be no argument or hearing, and to me, based on I think

23   the prior schedule and the issues here and the discovery that

24   needs to happen, I just don't see that as feasible here.  I

25   mean, you all tell me otherwise.

1         MR. RICHARDS:  Your Honor, this is --

2         THE COURT:  Go ahead.

3         MR. RICHARDS:  I apologize.

4         THE COURT:  Go ahead, Mr. Richards.

5         MR. RICHARDS:  I was just going to say the defendants

6    would object strongly to that timeframe.  The parties have

7    agreed to a schedule.  The defendants have planned

8    accordingly.  Our brief isn't even due for 10 days.

9         THE COURT:  Yeah, it would be a massive modification

10   here, obviously, to the schedule, and I don't know where you

11   all are in the midst of discovery, but I note your objection.

12        So from the plaintiff's side?

13        MR. LOBEL:  Well, the end of discovery is tomorrow

14   and our brief is done.  We probably would be willing to

15   shorten the time for our reply brief.

16        I couldn't quite hear.  Did you -- what was the date

17   that you would have to have everything submitted in order for

18   you to make a ruling before August 8th?

19        THE COURT:  The 25th.

20        MR. LOBEL:  The 25th.

21        MR. RICHARDS:  Your Honor, to that point, again, from

22   the defense, I would say discovery may end tomorrow, but we

23   are still awaiting important and significant documents to be

24   produced.

25        Our second deposition has not taken place yet.  The

first deposition was deeply problematic in terms of witness

preparation.

I think it would be completely inequitable to allow

plaintiff the time that they had to put their papers together,

take first discovery, and then halfway through our portion of

discovery, suddenly spring a 10-day deadline on us.

THE COURT:  So why don't I leave it at this.  I'm not

inclined to move the schedule for those reasons in such a

dramatic way.

If you all want to confer on some modifications, if

that makes sense, and you can confer and file something

jointly, that's fine by me.  But we'll leave the discovery

schedule as is.

I will say, I think -- I would like some clarity at

some point, though, on the one question I had asked on

mootness.

I would hate for everybody to move forward on this on

an expedited basis here for an argument on August 28th for --

obviously for the Court to decide everything on an expedited

basis.

And as I understand, September 18th comes around and

SJP is reinstated in any event, I'm not sure if there's any --

if that would be a natural and complete mooting of the motion

or not, but it's something I would need some clarity on at

some point.

So why don't we leave it -- why don't we leave it at
you all can confer further if you think there's a mutually
agreeable way to make a decision or to wrap up everything up
sooner rather than later, but it sounds like there's a need,
at least by the defense, to still do a lot of preparation
here.

Anything else anyone wants to raise and discuss here?
From the plaintiff's side, anything else?

MS. SZEMANSKI:  No, Your Honor.  I think, if
anything, after the defendants' response on the current
timeline, perhaps we would like to renew our request for
consideration on the papers.

You know, we did raise the unique harm of our client
being suspended during welcome week, but there's still a month
between welcome week and the end of the suspension.

So we only wanted to put on your radar that we may
make a request to perhaps rule without a hearing, but we can
renew that or make that request after discovery is complete.

THE COURT:  Okay.  Thank you.

From the defense, anything else?

MR. RICHARDS:  No, Your Honor.  Thank you very much
for meeting with us so quickly.

THE COURT:  Okay.  Thank you.  What I'm going to do,
just so we have it, I will order a copy of this transcript,
with the cost to be split equally between the parties, so that

**26**

1    it is on the record, including if some of the discovery issues

2    pop up or percolate again in the future, there will be a

3    transcript of this that's on the record.

4         So thank you everyone.  I appreciate it.  Take care.

5         MR. RICHARDS:  Thank you, Your Honor.

6         MS. SZEMANSKI:  Thank you, Your Honor.

7         MR. LOBEL:  Thank you, Your Honor.

8         (The hearing concluded at 11:47 a.m.)

9              C E R T I F I C A T E

10        I, VERONICA R. TRETTEL, RMR, CRR, certify that
     the foregoing is a correct transcript from the record of
11   proceedings in the above-entitled case.

12

13   __\s\ Veronica R. Trettel____        08/20/2025_____
     VERONICA R. TRETTEL, RMR, CRR          Date of Certification
14   Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25