IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| STUDENTS FOR JUSTICE IN PALESTINE AT PITT, <br><br> *Plaintiff*, <br><br> v. <br><br> UNIVERSITY OF PITTSBURGH, JOAN GABEL, MARLIN NABORS, KARIN ASHER, DaVAUGHN VINCENT-BRYAN, MATTHEW LANDY, and JAMEY MENTZER, all in their official and individual capacities, <br><br> *Defendants*. | CIVIL ACTION NO. 2:25-cv-00524-NR <br> Judge J. Nicholas Ranjan |

**DEFENDANTS' SURREPLY IN FURTHER OPPOSITION TO
PLAINTIFF'S REVISED MOTION FOR PRELIMINARY INJUNCTION**

Recently, this Court correctly questioned whether Plaintiff Students for Justice in Palestine at Pitt's ("Plaintiff" or "SJP") Revised Motion for Revised Preliminary Injunction (Dkt. No. 45) ("PI Motion") would become moot. SJP's PI Motion is, in fact, now moot. The purported harm that SJP has argued it would suffer has already occurred.

SJP's claims of irreparable harm focus on its inability to participate in the University of Pittsburgh's ("Pitt" or the "University") Welcome Week for incoming students. Welcome Week is over; SJP did not participate. Injunctive relief cannot prevent harm that has already occurred, therefore, there is no basis to order a preliminary injunction. Denial of SJP's Motion is proper for mootness alone.

Additionally, the Court should reject SJP's contention that it will suffer any other harm for the remaining days of its suspension. SJP has a duty to mitigate its harm, including with respect to

alleged irreparable harm argued in support of its request for a preliminary injunction. SJP was given that opportunity by being allowed to meet, plan, and even reserve campus space for events – even while on suspension – provided that SJP completed "educational conversations," *i.e.* meetings with Pitt administrators. SJP has not completed these conversations despite ample opportunity to do so.

I.   **FACTUAL BACKGROUND**

   A. **SJP has Failed to Complete the Educational Conversations that Would have Allowed it to Meet, Plan, and Reserve Space for Events Even While Suspended.**

SJP's current suspension was imposed on June 18, 2025. Joint Statement of Facts ("JSF") at ¶ 61 (Dkt. No. 54). SJP's leadership was offered the opportunity, even while suspended, to meet and plan campus events, and even reserve space for events to occur after September 18, 2025, provided that SJP participated in, and completed, "educational conversations" with University staff. *Id.* These "educational conversations" are discussions between organizational leadership and Pitt administrative staff to discuss Pitt's expectations of its registered student organizations. *Id.* They include discussions of school policy and real-time guidance about how to comply, available school resources and how to obtain and use them. Supplemental Declaration of Carla Panzella, attached hereto as Def. Ex. 47 at ¶ 2.

On July 14, 2025, one of SJP's Co-Presidents emailed Pitt to schedule the educational conversations. Def. Opp. to Pl. Revised Mot. for Preliminary Injunction ("Opposition"), Def. Ex. 32 at ¶ 53 (Dkt. No. 57-10). Pitt suggested a time on July 23, 2025, when it would be able to meet to conduct an educational conversation. *Id.* at ¶ 54. SJP did not respond to Pitt's suggested meeting on July 23, 2025. *Id.* at ¶ 55. On August 11, 2025, Pitt followed up and requested SJP schedule the educational conversation, which was left unanswered until a week later, on August 18, 2025. Pitt suggested two other dates on August 20, 2025, and as of the date of this filing, SJP has not

responded to that suggestion, proposed an alternative time, or followed up to schedule an educational conversation. *See* Supp. Panzella Decl. at ¶¶ 3-4. Consequently, as of the date of this filing, SJP has not completed the educational conversations that would have allowed it to meet, plan, and reserve campus space to hold events, even while on suspension. *Id.* at ¶ 5.

### B. Welcome Week has Passed.

In support of its Revised Motion for Preliminary Injunction, SJP has argued that its suspension would preclude its ability to participate in Pitt's Welcome Week for incoming first-year students. Pl.'s Memo. in Support of its Revised Mot. for Preliminary Injunction at 2-3, 7-8, 20 (Dkt. No. 46-2) ("PI Memo"). At the beginning of each academic year, Pitt hosts a "Welcome Week" for its incoming first-year students that offers programs are meant to help those students learn more about life at Pitt and engage with their fellow new students. Supp. Panzella Decl. at ¶ 6. During this Welcome Week, first-year students have the opportunity to "learn about the various registered student organizations at Pitt and how they can get involved." PI Memo at 2. For the 2025-26 Academic Year, Pitt's Welcome Week occurred between Monday, August 18, 2025, and Sunday, August 24, 2025. Supp. Panzella Decl. at ¶ 7. Welcome Week has concluded. *Id.* at ¶¶ 8-9.

## II.    ARGUMENT

### A. SJP's Purported Irreparable Harm is Moot.

"If a claim does not present a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it." *United States v. Virgin Islands*, 363 F.3d 276, 284–85 (3d Cir. 2004). A plaintiff's claim is rendered moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of the Virgin Islands*, 842

F.3d 201, 208 (3d Cir. 2016) (internal quotations omitted). "It is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'" *United States v. Juv. Male*, 564 U.S. 932, 936, 131 S. Ct. 2860, 2864 (2011). Mootness is a jurisdictional issue. *United States*, 363 F.3d at 284–85. As such, its application is fundamental, and not, as SJP has quipped, "overly formalistic." *See* Pl. Reply in Support of its Revised Mot. for Preliminary Injunction ("Reply") at 5 (Dkt. No. 65). "[J]urisdiction is power to declare the law," and "'[w]ithout jurisdiction the court cannot proceed at all in any cause,'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). "The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "**inflexible and without exception**." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (emphasis added) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

Here, SJP's primary argument of irreparable harmed is being precluded from participating in Welcome Week. PI Memo at 7-8, 20. Through its PI Motion, SJP has asked this Court to lift its suspension so that it can participate in Welcome Week. *Id.* at 2-3. Welcome Week, however, is over. Supp. Panzella Decl. at ¶ 7. Consequently, SJP is asking this Court to lift its suspension so it can participate in an event that has already passed. In other words, the alleged irreparable harm that SJP's Revised Motion for Preliminary Injunction seeks to prevent is not a live issue and, therefore, is moot. *See Juv. Male*, 564 U.S. at 936; *United States*, 363 F.3d at 284–85; *United Steel*, 842 F.3d at 208. Mootness deprives this Court of jurisdiction to order the requested relief; consequently, this Court should deny SJP's PI Motion.

It bears emphasis that SJP filed its Complaint and original request for a preliminary injunction on April 15, 2025. It then revised that request on June 27, 2025. It then presented a joint

4

schedule setting the hearing on its PI Motion for or August 28, 2025, a full ten days after the start of Welcome Week. *See* Order (Dkt. No. 43); Status Report and Joint Proposed Discovery and Briefing Schedule (Dkt. No 42).

### B. SJP has Failed to Mitigate any Alleged Harm.

To the extent that SJP has demonstrated any harm beyond Welcome Week, SJP has failed to mitigate that harm, which balances strongly against the equities of awarding injunctive relief. "Any party claiming an injury is under a duty to mitigate its damages. A movant for extraordinary relief cannot mask an ongoing failure on its part to mitigate its damages as an ongoing instance of irreparable harm." *Lanvin Inc. v. Colonia, Inc.*, 739 F. Supp. 182, 192–93 (S.D.N.Y. 1990) (citing *American Brands, Inc. v. Playgirl, Inc.*, 498 F.2d 947, 949–50 (2d Cir.1974)). "Nor can it claim irreparable harm when its delay is itself the cause of whatever harm it alleges." *Id.* at 193 (citing *Gianni Cereda Fabrics, Inc. v. Bazaar Fabrics, Inc.*, 335 F. Supp. 278, 280 (S.D.N.Y. 1971).

Defendants' Opposition noted that SJP: (1) did not have any events planned for the Fall 2025 semester, even before its interim suspension was imposed; (2) did not plan any events upon imposition of that interim suspension; and (3) had no planned events or activities in the immediate future. Opposition at 23; Deposition of SJP Transcript at 35:7-12 ("Q: What events had SJP planned for this year prior to its suspension? A: Because SJP has been unsure about the status of the organization upon returning for the fall semester, **nothing concretely has been planned**.") (emphasis added); *id.* at 112:19-25 ("Q. What about events that would happen after the interim suspension? A. There had been talk or ideas of events, but nothing concretely planned. If you're referencing the upcoming fall semester, like I said earlier, there's been no concrete plans put in place."). As a result, SJP cannot show any "imminent" harm. *See* Opposition at 22-23. In SJP's Reply, it argues that these facts are "not surprising" because SJP "did not, and could not know

how long the interim suspension would last. . . ." Reply at 10. First, SJP's argument ignores the fact that SJP had no events planned *even before the interim suspension was imposed*; it addresses only the period *after* the interim suspension was imposed.

Second, this argument sweeps aside the fact that SJP has had the opportunity to meet, plan events, and even reserve campus space for events, *even while on suspension*. *See* JSF at ¶ 61. Pitt crafted this allowance specifically to allow SJP to be able to be up-and-running upon the expiration of its suspension. *See* PI Memo, Exhibit 18 at 3 (Dkt. No. 46-21). This required SJP only to complete "educational conversations" with Pitt staff. *Id.*; JSF at ¶ 61. SJP has made no effort to do so. Supp. Panzella Decl. at ¶¶ 3-5. Pitt, therefore, expressly created a means by which SJP could mitigate the supposed harm of its suspension, and, despite invoking the time and resources of the Court and Defendants, SJP has shown no urgency in pursuing a remedy over which it has complete control. Consequently, SJP's claims of irreparable harm that arise from this failure cannot be the basis for its PI Motion, and the motion should be denied. *See American Brands*, 498 F.2d at 949–50. *Gianni Cereda Fabrics*, 335 F. Supp. at 280.

### C. SJP's "Process" Arguments are Irrelevant and Inconsistent with its Own Argument.

After devoting four-and-a-half pages to arguing that Pitt's conduct review process is akin to a court proceeding for the purpose of analogizing SJP's Open Letter to speech criticizing judicial proceedings, *see* PI Memo at 8-12, SJP has now taken the opposite position: that "Pitt's disciplinary proceedings are ***not*** analogous to court proceedings." Reply at 6, 7-8. These contradictory positions cannot be squared and SJP's about-face is transparently self-serving.

The analogy of Pitt's conduct review process to a court proceeding was useful for SJP when arguing that direct communications with an effective jury panel was the same thing as a newspaper article criticizing a particular civil trial. *See* PI Memo at 8-12. Defendants pointed out

that the "clear and present danger" test – upon which SJP had so thoroughly relied – had *no application* to this matter because that test has *never* been used in the context of juror communications. Opposition at 12-16. SJP's about-face begs the question of what SJP's substantive argument justifying the Open Letter is at all.

The salience of SJP's "process" arguments are also elusive. SJP spends multiple pages in its Reply introducing facts and argument about Pitt's conduct process, but this is not a procedural due process challenge. Pitt's process has nothing to do with whether the Open Letter was protected speech. SJP was suspended, both temporarily and currently, for sending the Open Letter; not for any of the process issues SJP now decries. SJP has offered no evidence that those process issues: informed any Pitt administrator responsible for the initial decision to suspend SJP; were presented to, or informed, the decision by the second conduct hearing board panel to find SJP responsible for violating Pitt policy and recommending suspension; or informed any Pitt administrator responsible for SJP's ultimate current suspension. *See* PI Memo at *passim*; Reply at *passim*. All of those decisions arose from SJP's Open Letter, which started a new causal chain of events separate from the process leading up to the February 4, 2025 hearing, which concerned only the December 2024 Study-In. JSF at ¶¶ 13-14. Consequently, those process issues have no bearing on whether this Court should lift SJP's suspension and the Court should disregard those issues and SJP's arguments based thereon.

Further, SJP has not raised these process issues as the basis for any of its claims against Pitt. *See* Compl. at ¶¶ 141-145. Not one of the counts, or theories of liability within each count, of SJP's complaint concerns Pitt's conduct process as experienced by SJP. *Id.* These process issues, therefore, are not only irrelevant to SJP's PI Motion, but beyond the scope of the Complaint and therefore not properly before the Court. *See* Opposition at 10-11 (citing the rule that the Court

lacks jurisdiction over claims raised in a motion for injunctive relief, but not made in the underlying complaint). There is accordingly no reason for this Court to consider them.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Revised Motion for Preliminary Injunction.

Dated: August 25, 2025                           SAUL EWING LLP

                                                 By: /s/ Joshua W. B. Richards

                                                 Joshua W. B. Richards
                                                 PA Bar No. 204315
                                                 1500 Market Street
                                                 Centre Square West, 38th Floor
                                                 Philadelphia, PA 19102
                                                 Phone: 215-972-7737
                                                 Joshua.Richards@saul.com

                                                 Alexander R. Bilus
                                                 PA Bar No. 203680
                                                 1500 Market Street
                                                 Centre Square West, 38th Floor
                                                 Philadelphia, PA 19102
                                                 Phone: 215-972-7177
                                                 Alexander.Bilus@saul.com

                                                 Peter C. Nanov*
                                                 PA Bar No. 333397
                                                 1919 Pennsylvania Avenue, N.W.
                                                 Suite 550
                                                 Washington, D.C. 20006-3434
                                                 Peter.Nanov@saul.com

                                                 *admitted pro hac vice

                                                 Counsel for Defendants

# EXHIBIT TABLE OF CONTENTS FOR
# DEFENDANTS' SURREPLY IN OPPOSITION TO
# PLAINTIFF'S REVISED MOTOIN FOR PRELIMINARY INJUNCTION

**Def. Exhibit 47**
Supplemental Declaration of Carla Panzella

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Defendants' Surreply in Further Opposition to Plaintiff's Revised Motion for Preliminary Injunction was filed via the Court's electronic case management system and served via electronic mail on the following counsel of record:

Witold J. Walczak, Esquire
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
vwalczak@aclupa.org


Jules Lobel, Esquire
6938 Rosewood Street
Pittsburgh, PA 15208
jll4@pitt.edu


Solomon Furious Worlds, Esquire
ACLU of Pennsylvania
Legal
P.O. Box 60173
Philadelphia, PA 19102
sfworlds@aclupa.org


Ali N. Szemanski
ACLU of Pennsylvania
P.O. Box 23058
Pittsburgh, PA 15222
aszemanski@aclupa.org


*Attorneys for Plaintiff*


Dated: August 25, 2025                     /s/ *Joshua W. B. Richards*
                                           Joshua W. B. Richards