# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| _____<br><br>**STUDENTS FOR JUSTICE IN**<br>**PALESTINE AT PITT,**<br><br>       *Plaintiff,*<br><br> **v.**<br><br>**UNIVERSITY OF PITTSBURGH,**<br>**JOAN GABEL, MARLIN NABORS,**<br>**KARIN ASHER, DaVAUGHN**<br>**VINCENT-BRYAN, MATTHEW**<br>**LANDY, and JAMEY MENTZER,**<br>all in their official and individual<br>capacities,<br><br>       *Defendants.*<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION NO. 2:25-cv-00524-NR**<br>**Judge J. Nicholas Ranjan** |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
## <u>MOTION FOR SPOLIATION SANCTIONS UNDER RULE 37(e)</u>

Defendants, University of Pittsburgh ("Pitt" or "the University"), Joan Gabel, Marlin Nabors, Karin Asher, DaVaughn Vincent-Bryan, Matthew Landy, and Jamey Mentzer, hereby submit this Memorandum in support of their Motion for Sanctions Under Rule 37(e) against Plaintiff, Students for Justice in Palestine at Pitt ("SJP") for failure to preserve evidence and state as follows:

## I.    INTRODUCTION

Discovery in this action has been actively litigated. SJP has asserted, and this Court has overruled, overbroad claims of privilege regarding SJP's communications – both internal and external. Both before and after this Court ordered SJP to produce those communications, SJP has conceded an increasing volume of relevant communications were not preserved. One likely reason for SJP's broad privilege claims and failure to preserve became evident when it produced what it had not already destroyed: SJP's internal communications do not reflect well on SJP or its claims in this lawsuit. But by its clear and unambiguous admission, SJP has failed to preserve most of its communications, so Defendants have seen only a fraction of what there was.

The Federal Rules of Civil Procedure authorize this Court to impose sanctions on a party that fails to preserve evidence consistent with its obligations. The greater the prejudice and more egregious the intent, the harsher the sanction. Here, SJP deliberately communicated at all times relevant to its Complaint through chat messages that SJP intentionally had set to automatically "disappear" – *i.e.*, delete – after, at most, a couple of weeks. Those communications concerned, among other things, issues that this Court has already ruled are highly relevant to SJP's request for a preliminary injunction. From the few chats that SJP did preserve, it is evident that the communications that SJP did not preserve included numerous statements against interest.

At all times relevant to this civil action, SJP had the opportunity to communicate through a different messaging system or turn off the automatic delete function. As to the former, and as discussed below, SJP deliberately reserved its most revealing and consequential communications for the automatically deleting applications. As to the latter, SJP did not turn off the auto delete function: (a) in January 2025, when it received notification of Pitt's conduct charges; (b) in February 2025, when it participated in Pitt's conduct hearing (with one of its lawyers present); (c) in March 2025, when SJP executed a retainer letter with counsel; or even (d) in April 2025, when SJP filed this lawsuit and its original motion for preliminary injunction. In fact, SJP did not begin to preserve this evidence until May 2025, a month after it filed suit. The majority of SJP's internal communications about the substance of this case had, by then, long since been deleted.

This Court should not permit SJP's bad faith disregard for preservation obligations. Defendants have been prejudiced by SJP's failure to preserve evidence relevant to all of SJP's claims and highly relevant to SJP's request for a preliminary injunction because that evidence has been lost. SJP's actions and statements make clear that it intentionally did not preserve its communications, even after initiating litigation.

Given the failure to preserve evidence by both SJP and its counsel, the prejudice to Defendants, and SJP's clear intent to deprive Defendants of evidence relevant to SJP's claims, various sanctions are appropriate. Denial of SJP's request for a preliminary injunction and dismissal of its claims would hold SJP accountable for its intentional failure to preserve evidence and deprivation of that evidence from Defendants' use, and would also deter such conduct by others. Striking SJP's claims for attorneys' fees would hold SJP's counsel accountable for their apparent failure to instruct their client of their preservation obligations, if in fact no such advice was given. Plaintiff's failure to preserve and produce evidence has placed Defendants at a material

disadvantage in defending SJP's claims, and, pursuant to Rule 37, this Court is authorized to, and should, impose all of these sanctions.

## II.    FACTUAL BACKGROUND

### A.    Despite Retaining Counsel, SJP Destroyed Communications Regarding the Central Issue of its Revised Motion for Preliminary Injunction and its Broader Claims Asserted in its Complaint, Choosing to Make the Communications "Disappear."

The central issue to SJP's Revised Motion for Preliminary Injunction is the Open Letter that it sent to February 4, 2025 conduct hearing board. SJP's Complaint, however, has raised various other issues as well. While SJP's Complaint delves into facts going as far back as August 2024, the bulk of the facts of SJP's Complaint concerns SJP's December 2024 "Study-In," and resulting conduct process, which resulted in SJP's Open Letter. Compl. at ¶¶ 1-4, 53-119, 141-143. Going back to August 2024, SJP has described its relationship with Pitt as "antagonis[tic]." *See* Pl.'s Memorandum in Support of Revised Motion for Preliminary Injunction ("Pl. PI Memo") at 1, 4, 15, 19 (Dkt. No. 46-2).

At all times relevant to the Complaint, SJP's leadership and membership frequently communicated via the chat-style messaging applications Signal and WhatsApp. Deposition of SJP, attached hereto as Exhibit A, at 22:9-14; Deposition of █████████, SJP's Co-President, attached hereto as Exhibit B, at 44:11-45:16; Exhibit H at 5 n.1. SJP's Co-President had "dozens" of Signal chats with members of SJP and used Signal throughout his time as a member of SJP's executive board. Exhibit B at 44:11-45:10. The messages contained in these Signal and WhatsApp chats automatically disappear and delete after a period of time, unless the user affirmatively changes the settings to not delete the messages. *Id.* at 47:17-48:4; Exhibit H at 5 n.1. As discussed in more detail below, none of the participants of these chats changed the deletion settings until well after

the commencement of this lawsuit. Consequently, the messages contained in these chats were not preserved. Exhibit B at 48:5-14; Exhibit H at 5 n.1.

On January 16, 2025, Pitt brought disciplinary charges against SJP for violations of University Policy alleged to have been committed by SJP relating to its December 2024 "Study-In." Joint Statement of Facts ("JSF") at ¶ 12 (Dkt. No. 54). SJP had used Signal before and during its "Study-In". ███████████████████████████████████████████████

███████████████████████████████████████████. ████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████.

SJP's conduct hearing occurred on February 4, 2025. JSF at ¶¶ 13-14. SJP counsel Jules Lobel attended that hearing with SJP. Exhibit A at 18:16-19:22. SJP used Signal to prepare for and communicate about the February 2025 conduct hearing. *Id.* at 22:5-23; Exhibit B at 45:17-23. Those communications were not preserved. *Id.* SJP also used Signal to communicate with its three witnesses for the hearing, two of whom were Pitt professors. Exhibit A at 24:1-26:8. Those communications were not preserved. *Id.* at 26:9-12. SJP also used Signal to communicate internally about the drafting of its February 4 "Open Letter." Exhibit B at 48:15-49:3. Those communications were not preserved. *Id.*

On March 18, 2025, Pitt notified SJP of its interim suspension. JSF at ¶¶ 38-39. When SJP received that notification, it had already engaged counsel. Exhibit A at 97:7-25. SJP had executed an engagement letter with counsel sometime between February 4 and March 18, 2025. *Id.* at 74:23-75:7. SJP retained counsel because it "felt as though this was a legal matter." *Id.* at 75:8-13.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████. SJP also communicated internally about the suspension via Signal. Exhibit A at 97:16-98:3. Those communications were not preserved. *Id.* at 97:20-22.

To summarize, SJP communicated via Signal about: the December Study-In; the February 4 hearing; the Open Letter; and SJP's interim suspension. *None* of those communications were preserved. Continued Deposition of SJP, attached hereto as Exhibit J, at 7:20-8:16.

The Signal application's auto-delete function is a user setting that can be turned on or off. Exhibit B at 54:5-7; *see also* https://support.signal.org/hc/en-us/articles/360007320771-Set-and-manage-disappearing-messages (describing how to "[s]et and manage disappearing messages"). In one of its chats, created on September 3, 2024, SJP set the messages to automatically disappear after two weeks. Exhibit B at 55:19-56:9. In October 2024, SJP shortened that time frame so that messages would disappear more quickly – they changed the setting so that the messages would delete after one week. *Id.* at 56:5-23. SJP leadership eventually turned off the auto-delete function on that particular chat, but not until May 16, 2025. *Id.* at 54:5-56:4. Similarly, SJP's WhatsApp messages were set to delete within days or weeks of the messages. Exhibit H at 5 n. 1; *see also* https://faq.whatsapp.com/673193694148537 (describing "[a]bout disappearing messages" and how to change settings for disappearing message).

SJP filed suit in this matter on April 15, 2025. Pitt's Spring 2025 semester ended on May 4, 2025. *See* Univ. of Pittsburgh Academic Calendar 2024-25, available at https://www.registrar.pitt.edu/sites/default/files/pdf/Academic%20Calendar%202024-

2025_Apple.pdf (reflecting that undergraduate commencement occurred on May 4, 2025 and the summer term began on May 7, 2025). SJP, therefore, did not change the auto-delete function of its Signals chat until two months after it had retained counsel, a month after it initiated this matter, and after the Spring 2025 semester had already ended.

SJP has admitted that it chose to make this evidence disappear into the ether. Through Requests for Production, Defendants requested SJP's communications since August 2024, but particularly regarding the February 4, 2025 hearing, SJP's Open Letter, and SJP's suspension. *See* Exhibit I. In response, SJP admitted:

> Many communications potentially responsive to [Defendants' Requests for Production] are no longer in the possession, custody, or control of SJP-Pitt because they occurred on an ephemeral messaging application, including Signal and WhatsApp, and were automatically deleted within one day or one week of the communications, depending on the group's messaging settings at the time, using the respective application's "disappearing messages" setting. Disappearing messages disappear from users' devices automatically once the time period selected by the group has elapsed without any action by the users. Disappearing messages can only be preserved if a user takes affirmative steps to do so before the message disappears, such as by taking a screenshot or takes a photo of their device screen. Unless a user captured the messages in this way, there is no way for a user to recover or restore the contents of disappearing messages. Based on SJP-Pitt's group settings, disappearing messages about the Subject Events disappeared automatically. . . .

*    *    *

> Recovering associated data would require retention of a mobile forensics analyst with access to a proprietary platform. Even still, recovery of message data concerning the Subject Events may be limited or impossible, with message content being virtually unrecoverable even using advanced forensic techniques. The actual usefulness of data that could be recovered, if any, cannot be predicted given the limits on data recovery. Therefore, many of the potentially responsive communications concerning the Subject Incidents, reservations, alerts, and the Open Letter are no longer in SJP-Pitt's possession, custody, or control.

> Recovery of this data would be also be unduly burdensome and disproportionate to the needs of the case, as it would require retention of a specialist, the likelihood of recovering usable data is very low. . . .

6

Exhibit H at 5 n.1 (internal citations omitted). Because of its failure to preserve this evidence, SJP has not produced communications from Signal or WhatsApp applications, admitting that those communications no longer exist and cannot be recovered. *Id.*

### B. The Communications that SJP Disappeared Likely Contain Evidence Against SJP's Interest.

The Court will recall the steps that SJP took to avoid producing communications in this case. SJP started by refusing to produce *any* of its communications, both internal and external, claiming that all such communications were protected by associational privilege and "not relevant to any party's claim or defense." Exhibit H at 3-5; Exhibit L (privilege log reflecting privilege claims over external communications). Next, when Defendants challenged SJP's claims of privilege and relevance, SJP filed a Motion for Protective Order with the Court. Dkt. No. 33. This Court rejected SJP's blanket claim of associational privilege and relevance argument, finding specific "documents on Plaintiff's privilege log to be highly relevant to the pending motion [for preliminary injunction]" and ordering production of those documents. Order (June 9, 2025) (Dkt. No. 40). During Defendants' deposition of SJP's corporate designee, SJP's counsel instructed the designee not to answer various questions regarding SJP's communications. Exhibit A at 20:20-22:3, 22:24-23:10, 26:13-21 (specifically asking "what was discussed in the Signal chats leading up to the [February 4] hearing"), 59:24-61:5, 103:8-104:3. Those instructions caused Defendants to raise SJP's privilege claims and relevance arguments with the Court *again*. Order (July 16, 2025) (Dkt. No. 48). The Court reiterated its previous Order, instructing SJP that all communications, even internal, concerning the February 4 hearing, the Open Letter, and the interim suspension were highly relevant and must be produced. Order (July 17, 2025) (Dkt. No. 51). Only then, two months after first refusing to produce its communications, and after being

ordered to produce those documents twice, did SJP begin to actually produce those communications.

The limited communications that SJP produced in response revealed a pattern of deceptive and extreme behavior that SJP used Signal to communicate about. ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████.

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████. On the same day as these exchanges, SJP's co-president acted upon this planned deceit and lied to Defendant Karin Asher, Assistant Dean of Student Engagement and Professional Development, Division of Student Affairs, stating that "[t]he 'week of rage' is not an SJP at Pitt event and we suggest that you contact the group that originally posted about it to share any concerns and resources you may have pertaining to the events that they have organised [*sic*]." Exhibit F.



At this point in the case, the parties have engaged in only limited discovery concerning the issues relevant to SJP's Revised Motion for Preliminary Injunction. Defendants have not had the opportunity to fully explore the nature of SJP's actions and communications regarding the various other issues that SJP raised in its Complaint. Based on what little SJP has produced, it is likely that the communications that SJP failed to preserve would consist of a high volume of admissions and evidence against SJP's interest.

## III.    LEGAL STANDARD

"Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). "[W]ith respect to the third factor—"actual suppression"—"a finding of bad faith is pivotal." *Blakeney v. Packaging Corp. of Am.*, No. 2:23-cv-1453-NR, 2024 WL 1930522, at *4 (W.D. Pa. May 1, 2024) (quoting *Bull*, 665 F.3d at 79). "Bad faith, in this context, means that the defendant intentionally withheld the evidence." *Yoho v. Bank of New York Mellon Corp.*, No. 2:17-cv-917-NR, 2020 WL 7336579, at *10 (W.D. Pa. Dec.

14, 2020), *aff'd*, No. 21-1071, 2022 WL 296637 (3d Cir. Feb. 1, 2022) (quoting *Rega v. Armstrong*, No. 08-cv-156, 2016 WL 10999995, at *1 (W.D. Pa. June 20, 2016)).

"Whether a duty to preserve evidence is reasonably foreseeable is evaluated objectively." *Bozic v. City of Washington, Pa.*, 912 F. Supp. 2d 257, 267 (W.D. Pa. 2012) (citing *Bull*, 665 F.3d at 78). "[T]he question of reasonable foreseeability is a 'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.'" *Bull*, 665 F.3d at 77–78 (internal quotation omitted). "While a litigant is under no duty to keep or retain every document in its possession, even in advance of litigation, it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004).

The duty to preserve does not trigger "from the mere existence of a potential claim or the distant possibility of litigation" but also does not require that litigation "be imminent, or probable without significant contingencies," *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011). "The duty to preserve arises no later than when a lawsuit is filed but may be triggered earlier than the filing of the complaint depending on the particular circumstances." *Bistrian v. Levi*, 448 F. Supp. 3d 454, 468 (E.D. Pa. 2020). Mere knowledge of a potential claim can be deemed sufficient to impose a duty to preserve evidence, for example, where there is: "(1) pending or probable litigation involving the defendant; (2) knowledge of the existence or likelihood of litigation, (3) foreseeable prejudice to the other party if the evidence were to be discarded and (4) evidence relevant to the litigation." *Winters v. Textron, Inc.*, 187 F.R.D. 518, 520 (M.D. Pa. 1999) (citations omitted).

Federal Rule of Civil Procedure 37(e) allows for sanctions to be awarded for spoliation of electronically stored information ("ESI"). "Courts undertake a two-step process in applying Rule 37(e). First, it must be determined whether spoliation of ESI occurred. Second, if so, the court must determine the appropriate sanction." *Profit Point Tax Techs., Inc. v. DPAD Grp., LLP*, No. 2:19-cv-698, 2023 WL 11968310, at *2 (W.D. Pa. Apr. 26, 2023), *report and recommendation adopted*, No. 2:19-cv-698, 2023 WL 11968047 (W.D. Pa. May 16, 2023), *reconsideration denied*, No. 2:19-cv-698, 2023 WL 11968110 (W.D. Pa. June 8, 2023). "The burden is on the moving party 'to show that spoliation occurred and what sanctions are appropriate.'" *Id.* (quoting *Fuhs v. McLachlan Drilling Co.*, No. 16-376, 2018 WL 5312760 at *13, 2018 U.S. Dist. LEXIS 184264 at *39 (W.D. Pa. Oct. 26, 2018)).

"If the moving party establishes the . . . elements of spoliation, there are two levels of sanctions that may be imposed under Rule 37(e)[:]" (1) "upon finding that the loss of information has prejudiced a party, the court may order measures no greater than necessary to cure the prejudice;" and (2) "if the court finds that the spoliating party acted with the intent to deprive another party of the information's use in the litigation," then "more severe sanctions listed in Rule 37(e)(2), including the entry of judgment, are available." *Profit Point*, 2023 WL 11968310, at *3.

For an opposing party to be prejudiced, the spoliation must have "materially affected the substantial rights of the adverse party and is prejudicial to the presentation of [the party's] case." *Bistrian*, 448 F. Supp. 3d at 477 (internal quotations omitted) (finding the loss of a video showing the alleged events was prejudicial because it "substantially hampered" the presentation of the other party's case). To determine a party's intent, a district court "has discretion to draw inferences from the record" but must have a "factual basis to do so." *Bull*, 665 F.3d at 74. The appropriate sanction under Rule 37(e) will depend on the facts and circumstances of the case. *Schmid v. Milwaukee*

11

*Elec. Tool Corp.*, 13 F.3d 76, 81 (3d Cir.1994). "A district court has broad discretion in crafting a proper sanction for spoliation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).

The Third Circuit has identified three factors that a court contemplating the imposition of Rule 37 sanctions should consider:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the aggrieved party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (quoting *Schmid*, 13 F.3d at 79.

## IV.    ARGUMENT

### A. SJP has Failed to Preserve Evidence that has Been Lost and is Unrecoverable.

Given the self-described "antagonistic" nature of the relationship between SJP and Pitt, SJP's duty to preserve triggered on January 16, 2025, when Pitt brought conduct charges against SJP. *See* Pl. PI Memo at 1, 4, 15, 19; JSF at ¶ 12; *Bull*, 665 F.3d at 77–78; *Micron Tech.*, 645 F.3d at 1320; *Winters*, 187 F.R.D. at 520; *Bozic*, 912 F. Supp. 2d at 267; *Bistrian*, 448 F. Supp. 3d at 468; *Mosaid*, 348 F. Supp. 2d at 336. By that time, SJP had already engaged in contentious exchanges with Pitt regarding the December 2024 Study-In, SJP was on notice that its actions were subject to conduct review, and SJP was preparing its own defense against Pitt. *See Winters*, 187 F.R.D. at 520. Consequently, the obligation to preserve was triggered. *See id.*; *Bull*, 665 F.3d at 77–78; *Micron Tech.*, 645 F.3d at 1320; *Bozic*, 912 F. Supp. 2d at 267; *Bistrian*, 448 F. Supp. 3d at 468; *Mosaid*, 348 F. Supp. 2d at 336.

Even if the antagonism SJP itself has described did not trigger a duty, a duty to preserve arose as of the date of February 4, 2025 hearing – at which it appeared with Counsel Jules Lobel – but, *at the latest* when SJP retained its ACLU counsel, sometime between the February 4, 2025 hearing and the imposition of the interim suspension on March 18, 2025. Exhibit A at 74:23-75:7, 97:7-25. When SJP retained counsel, it did so because it had determined that this was a "legal matter." *Id.* at 75:8-13. When SJP made that determination: SJP knew that the lawsuit it would ultimately file was likely; SJP knew that the likely litigation would involve Pitt; SJP was on notice that Pitt would be prejudiced by destruction of evidence; and SJP was also on notice that its communications would be relevant to that litigation. *See Winters*, 187 F.R.D. at 520. SJP's duty to preserve, therefore, was triggered, at the latest, when it retained counsel. *See id.*; *Bull*, 665 F.3d at 77–78; *Micron Tech.*, 645 F.3d at 1320; *Bozic*, 912 F. Supp. 2d at 267; *Bistrian*, 448 F. Supp. 3d at 468; *Mosaid*, 348 F. Supp. 2d at 336.

It is not in dispute that relevant communications have been lost. SJP frequently communicated via Signal and WhatsApp, through *dozens* of chat threads, about the February 4 hearing, the Open Letter, and SJP's interim suspension, *none* of which were preserved. Exhibit A, at 22:5-23, 24:1-26:12, 74:23-75:13, 97:7-98:3; Exhibit B, at 44:11-45:23, 47:17-49:13; Exhibit J at 7:20-8:16; Exhibit H at 5 n.1. Those communications were automatically deleted within weeks. Exhibit B at 47:17-48:14, 56:5-23; Exhibit H at 5 n.1.

The relevant communications were lost because SJP failed to take reasonable steps to preserve them – indeed, SJP *intended* to destroy the communications. SJP appears to have used Signal and WhatsApp precisely *because* these apps allow for messages to be permanently deleted. The auto-deletion that affected the communications was a user setting that SJP was able to change, and which it did change, first to *decrease* the amount of time messages were held, and then

13

ultimately, but only well after suit was filed, to not delete messages at all. Exhibit B at 54:5-56:23. Had SJP changed this setting when its obligation to preserve evidence was triggered, the communications would not have been lost.

Those relevant communications cannot be recovered. SJP has stated that these communications are no longer in its possession, custody, or control. Exhibit H at 5 n.1. SJP has stated that it cannot recover these communications. Spoliation, therefore, has occurred. *See Profit Point*, 2023 WL 11968310, at *2; *Fuhs*, 2018 WL 5312760, at *13; Fed.R.Civ.P. 37(e) Advisory Committee's note to the 2015 amendment.

**B. Defendants have Suffered Prejudice.**

Defendants requested, among other things, SJP's communications regarding the February 4, 2025 hearing, the Open Letter, and its suspension. *See* Exhibit I. This Court has already ruled that SJP's communications on those topics are highly relevant and must be produced. *See* Order (June 9, 2025) (Dkt. No. 40); Order (July 17, 2025) (Dkt. No. 51). Where those communications occurred on Signal and WhatsApp, however, SJP has intentionally preserved *none* of those *highly relevant* communications. Exhibit A, at 22:5-23, 24:1-26:12, 74:23-75:13, 97:7-98:3; Exhibit B, at 44:11-45:23, 47:17-49:13; Exhibit J at 7:20-8:16; Exhibit H at 5 n.1. ███

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

Because those communications are highly relevant, SJP's lack of preservation of the most consequential of those communications has materially affected the substantial rights of Defendants and prejudiced their ability to present their case. *See Bistrian*, 448 F. Supp. 3d at 477. As noted

above, based on what little communications SJP has produced, the communications it failed to preserve contained highly relevant information that would have undermined SJP's case. The documents SJP has produced reflect that, for example, with respect to the "Study-In," it was well aware of Pitt policy under the Code of Conduct, meaning that SJP consciously and deliberately violated that policy for the explicit purpose of causing a disruption, which SJP believes it has a duty to do. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████. It is likely, therefore, that SJP's deleted communications likely included a greater volume of admissions against interest, such as: a discussion of deliberately including the hearing board panel on the Open Letter and the decision to do so for the express purpose of intimidation; admissions that SJP knew that sending the Open Letter to the hearing board panel was a violation of the Student Code of Conduct; discussions of actions to circumvent its interim suspension; and the like. Lack of access to such evidence has prejudiced Defendants, who are entitled to a sanction that cures that prejudice. *See* Fed. R. Civ. P. 37(e)(1); *Profit Point*, 2023 WL 11968310, at *3. It is worth underscoring that because of the failure to preserve, Defendants have received effectively no written discovery concerning the drafting of the Open Letter, the central topic of the motion for preliminary injunction.

### C. Acting in Bad Faith, SJP Intended to Deprive Defendants the Use of its Communications.

SJP deliberately used its auto-deleting messaging applications for its most relevant communications. ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ The most plausible

inference to draw is that SJP leadership gave that instruction because it knew that the messages would be encrypted and, once deleted, unrecoverable. As discussed above, SJP's duty to preserve documents had already been triggered by this point.

SJP could have preserved these communications by turning off the auto-delete function and still maintained all of the functionality of these applications. *See* Exhibit B at 54:5-7. It did not do so. In fact, prior to receiving notice of the conduct charges, SJP had deliberately changed its chat retention period from two weeks to one week, reflecting the active choice, and underlying intent, to destroy those communications. *Id.* at 56:5-23. When SJP received notice of the conduct charges, it could have turned off the auto-delete function. It did not do so. When SJP accused Pitt of "repression" and "erod[ing] [its] free speech and organizational rights" in its Open Letter, it could have turned off the auto-delete function. It did not do so. When SJP retained counsel, it could have turned off the auto-delete function. It did not do so. When SJP filed suit, it could have turned off the auto-delete function. It did not do so. SJP did not turn off that function until at least two months after it had retained counsel and a month after it filed suit. *Id.* at 54:5-56:4.

The record, therefore, demonstrates that SJP intended to destroy its most revealing and consequential communications. *See Bull*, 665 F.3d at 74. SJP's destruction of its communications, particularly after its preservation obligation triggered, was not mere negligence. *See Bozic,* 912 F. Supp. 2d at 267. Its instructions to keep conversations about strategy, laws, conduct, and Pitt administration in automatically deleting message applications, coupled with the timing of its engagement of counsel, reflects conscious and deliberate intent. SJP acted in bad faith and intended to deprive Defendants of review and use of those communications in this lawsuit. *See id.*; *Yoho*, 2020 WL 7336579 at *10; *Blakeney*, 2024 WL 1930522 at *4. Consequently, Defendants are entitled to one of the "more severe sanctions" contemplated by Rule 37(e)(2), including dismissal

of claims or entry of judgment. *See Profit Point*, 2023 WL 11968310, at \*3; Fed. R. Civ. P. 37(e)(2).

**D.  As Sanction for SJP's Destruction of Evidence, this Court should Deny SJP's Revised Motion for Preliminary Injunction and Dismiss SJP's Complaint in its Entirety.**

Rule 37(e) allows this Court to dismiss an action in its entirety in the event that it finds that a party has acted with the intent to deprive an opposing party of access to evidence that should have been preserved, but has not been, and cannot be recovered. Fed. R. Civ. P. 37(e)(2)(C).

Here, SJP has intentionally destroyed evidence that cannot be recovered. Exhibit H at 3-5 n.1. The evidence that was not preserved is not limited to material relevant to SJP's request for a preliminary injunction (although given that the depositions taken to date have been limited to that which is related to the motion for a preliminary injunction, Defendants do not currently know the full extent of SJP's failure here). SJP noted its failure to preserve its communications in response to a request for production that sought *all* of SJP's communications *since August 2024*, the relevant time frame of SJP's Complaint. Exhibit H at 3-5 n.1; Compl. at *passim*. SJP, therefore, has spoliated evidence related to every claim it has made against Pitt and the Defendants. *Id.* The prejudice suffered by Defendants, therefore, is, and has been, extreme because SJP's communications regarding *highly relevant* issues to its request for preliminary injunction, and *all* of the incidents identified in its Complaint, were not preserved. *See GN Netcom,* 930 F.3d at 82.

Thus, it falls to the Court to fashion a sanction that will avoid substantial unfairness to the Defendants and, given the serious fault by SJP, serve to deter such conduct by counsel and others in the future. *See GN Netcom,* 930 F.3d at 82. An appropriate sanction, expressly allowed by Rule 37, that would recognize the extreme prejudice to Defendants and the serious fault of SJP, penalize SJP's intentional destruction of evidence, and deter such conduct by others, would be

denial of SJP's request for a preliminary injunction, and dismissal of SJP's claims in their entirety.[1]

Fed. R. Civ. P. 37(e)(2)(C); *GN Netcom,* 930 F.3d at 82. The Court should do just that.

### E. Alternatively, as Sanction for SJP's Destruction of Evidence, this Court should Strike SJP's Request for Attorney Fees.

"[A party's duty to preserve evidence] extends to that party's attorneys." *Mosel Vitelic Corp. v. Micron Tech., Inc.*, 162 F. Supp. 2d 307, 311 (D. Del. 2000). In fact, "[o]nce on notice, the obligation to preserve evidence runs ***first** to counsel*, who then ***has a duty to advise and explain to the client its obligations to retain pertinent documents*** that may be relevant to the litigation." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 189 F.R.D. 76, 81 (S.D.N.Y. 1999) (emphases added); *see also Mosel Vitelic*, 162 F. Supp. 2d at 311. In its Complaint, SJP has requested an award of reasonable attorneys' fees. Compl. at 38. That award was, of course, requested on behalf of, and for the benefit of, SJP's counsel and if granted would go to SJP's counsel.

One of two scenarios has led to this juncture. *Either* (1) SJP's counsel properly advised SJP to preserve evidence, and SJP failed to do so; or (2) SJP's counsel did not advise SJP to preserve evidence despite counsel's obligation to do so, *see Telecom Int'l*, 189 F.R.D. at 81; *Mosel Vitelic*, 162 F. Supp. 2d at 311. Counsel Jules Lobel attended the February 4 hearing on behalf of SJP. Exhibit A at 18:16-19:22. SJP retained its ACLU counsel sometime between February 4 and March 18. It is of course impossible for Defendants to know whether SJP was advised to preserve evidence, but providing all inferences to counsel in their good faith and diligence leads to the conclusion that SJP intentionally, and against the advice of counsel, destroyed highly relevant evidence. Avoiding that inference necessitates a conclusion that counsel did *not* properly advise SJP to preserve highly relevant communications. If denial of the motion for preliminary injunction

---

[1] Alternatively, Defendants also ask that the Court enter judgment in Defendants' favor on all Counts of SJP's Complaint, if the Court believes that, given the procedural posture of the case and the nature of spoliation that has occurred, judgment is the more appropriate sanction.

and dismissal for intentionally destroying evidence is not the appropriate remedy, then an order striking any request for attorneys' fees must be. *See GN Netcom,* 930 F.3d at 82; Fed. R. Civ. P. 37(e)(2)(C).

**F.    Alternatively, the Sanction for SJP's Destruction of Evidence is an Adverse Inference.**

"The spoliation inference is an adverse inference that permits a jury to infer that 'destroyed evidence might or would have been unfavorable to the position of the offending party.'" *Mosaid*, 348 F. Supp. 2d at 336 (quoting *Scott v. IBM Corp.*, 196 F.R.D. 233, 248 (D.N.J. 2000), *as amended* (Nov. 29, 2000)). The factfinder may conclude "that the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir.1995).

Here, SJP's destruction of evidence is all-encompassing and affects every aspect of its claim. An appropriate adverse inference must, therefore, be equally all-encompassing. *See Brewer*, 72 F.3d at 334; *Mosaid*, 348 F. Supp. 2d at 336. If the Court does not deny SJP's motion for preliminary injunction and dismiss its claims, the Court should draw the following adverse inferences, all of which are supported by the limited evidence that SJP preserved: (1) at all times SJP acted in bad faith and deceit, knowing that its conduct was prohibited by Pitt policy, intending to violate Pitt policy and antagonize and provoke Pitt's administration; (2) that all of SJP's representations to Pitt's administrators and to the Court regarding the nature of its conduct are false; (3) that all of SJP's representations to the Court regarding the nature of Pitt's administrators' conduct are false; (4) that by sending the Open Letter, SJP intended to intimidate, coerce, and influence the hearing board panel; (5) that SJP was not chilled in their expression by University policies or the University's responses to conduct; and (6) that SJP both understood and intended

19

to violate University policy. *See id.* Further inferences may be appropriate at a later date should the case proceed, and Defendants reserve the right to request such further inferences when appropriate.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court GRANT Defendants' Motion for Sanctions Under Rule 37(e) and grant Defendants their requested sanctions.

Dated: August 19, 2025                    SAUL EWING LLP

By: */s/ Joshua W. B. Richards*

Joshua W. B. Richards
PA Bar No. 204315
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA 19102
Phone: 215-972-7737
Joshua.Richards@saul.com

Alexander R. Bilus
PA Bar No. 203680
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA 19102
Phone: 215-972-7177
Alexander.Bilus@saul.com

Peter C. Nanov*
PA Bar No. 333397
1919 Pennsylvania Avenue, N.W.
Suite 550
Washington, D.C. 20006-3434
Peter.Nanov@saul.com

*admitted pro hac vice*

*Counsel for Defendants*

**EXHIBIT TABLE OF CONTENTS FOR**
**DEFENDANTS' MOTION FOR SANCTIONS UNDER RULE 37(e)**

**Exhibit A**
Deposition of Students for Justice in Palestine

**Exhibit B**
Deposition of 

**Exhibit C**
P000339.000737-P000339.000738

**Exhibit D**
P000339.001265 & P000339.001291

**Exhibit E**
P000339.000222 & P000339.000242- P000339.000248

**Exhibit F**
UPITT_1605

**Exhibit G**
P000339.000620-P000339.000622

**Exhibit H**
Students for Justice in Palestine's Supplemental Responses and Objections to Defendants'
Requests for Production

**Exhibit I**
Defendants' Requests for Production

**Exhibit J**
Continued Deposition of Students for Justice in Palestine

**Exhibit K**
P001400-P001402

**Exhibit L**
Students for Justice in Palestine's Privilege Log.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Defendants' Memorandum in Support of Their Motion for Spoliation Sanctions Under Rule 37(e) and was served via electronic mail on the following counsel of record:

Witold J. Walczak, Esquire
ACLU of Pennsylvania
313 Atwood Street
Pittsburgh, PA 15213
vwalczak@aclupa.org


Jules Lobel, Esquire
6938 Rosewood Street
Pittsburgh, PA 15208
jll4@pitt.edu


Solomon Furious Worlds, Esquire
ACLU of Pennsylvania
Legal
P.O. Box 60173
Philadelphia, PA 19102
sfworlds@aclupa.org


Ali N. Szemanski
ACLU of Pennsylvania
P.O. Box 23058
Pittsburgh, PA 15222
aszemanski@aclupa.org


*Attorneys for Plaintiff*


Dated: August 19, 2025                    /s/ *Joshua W. B. Richards*
                                          Joshua W. B. Richards