**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STUDENTS FOR JUSTICE IN PALESTINE AT PITT,** | |
| *Plaintiff*, | **CIVIL ACTION NO. 2:25-cv-00524-NR** |
| **v.** | |
| **UNIVERSITY OF PITTSBURGH; JOAN GABEL, MARLIN NABORS, KARIN ASHER, DaVAUGHN VINCENT-BRYAN, MATTHEW LANDY, and JAMEY MENTZER,** all in their official and individual capacities, | **Judge J. Nicholas Ranjan** |
| *Defendants*. | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SPOLIATION SANCTIONS

With the hearing on SJP-Pitt's preliminary injunction motion fast approaching, the University of Pittsburgh and individual Defendants (hereinafter collectively "Pitt") filed an aggressive motion for spoliation sanctions under Rule 37(e). As this Court has previously observed: "Sanctions motions addressing claimed spoliation of evidence are serious business. They will always implicate professional and personal reputations, and are time-consuming and costly to litigate." *Bozic v. City of Washington*, 912 F. Supp. 2d 257, 260 n.2 (W.D. Pa. 2012). Despite this cautionary language and the lack of cause, Pitt trudges full steam ahead to seek a raft of extreme, dispositive sanctions.

Both the tone and requested relief in Pitt's sanctions motion are excessive given the record Pitt brings before this Court. Pitt has failed to demonstrate the extensive spoliation it believes occurred. SJP-Pitt simply had no duty to preserve automatically-deleting Signal communications when they sent the Open Letter on February 4 or during December's library

1

Study-In, precluding a finding of spoliation, much less sanctions.  While SJP-Pitt had some interactions with counsel in February, they neither engaged counsel nor contemplated litigation before their suspension on March 18.  Consequently, only the auto-deleted Signal messages between March 18 and May 16 are at issue.

But even for the post-March 18 messages, Pitt has not met its burden to show SJP-Pitt acted with intent to deprive Pitt of lost messages in this litigation, a pre-requisite for this court to order the dispositive sanctions Pitt seeks.  Pitt also has failed to describe in concrete terms how any spoliated material has actually impaired its ability to litigate its case, another requirement for this court to order *any* sanctions under Rule 37(e).  SJP-Pitt has turned over communications from the relevant period that were not automatically deleted.  And Pitt had multiple days to depose SJP-Pitt's co-presidents about both the contents of the deleted communications and why the auto-delete function remained on after a preservation duty arguably applied.

Pitt's audacious sanctions motion mirrors its hostile and extreme conduct towards SJP-Pitt's peaceful advocacy about a matter of public concern, which is the subject of this First Amendment litigation.  The extreme remedies Pitt seeks—dismissal of this lawsuit, denial of the preliminary injunction, and/or drawing numerous adverse inferences—are grossly disproportionate to SJP-Pitt's conduct or any harm it may have caused Pitt.  The combination of histrionic tone, absence of evidence, and request for grossly disproportionate sanctions raises the specter that Pitt seeks to distract the Court from focusing on the serious First Amendment allegations pending against it in the revised preliminary injunction motion.  SJP-Pitt respectfully requests that this Court deny Pitt's Motion for Spoliation Sanctions (Dkt. No. 70).

## FACTUAL BACKGROUND

SJP-Pitt communicated on standard messaging apps and apps where messages could be

set to disappear after a certain time period without further user action.  SJP-Pitt's use of disappearing messages was a standard practice: an SJP-Pitt co-president typically set the disappearing messages setting to one week when acting on behalf of SJP-Pitt, but sometimes messages would be set to disappear after a day or less. Ex. 1, SJP-Pitt Co-President Dep. Tr., 117:10-118:6.  That a student group dedicated to advocacy on behalf of a contentious issue—the humanitarian crises in Palestine—would adopt enhanced security measures is not surprising. This is consistent with how other activists, particularly those involved with controversial topics or people from marginalized groups, organize and handle sensitive information.[1]

Turning to the communications at issue in the current motion, on September 3, 2024, SJP-Pitt established a Signal group message titled SJP 24-25 for its board and enabled the setting for all messages to disappear after two weeks.  Ex. 1 at 54:10-56:9.  In October 2024, the group changed the settings so that all messages would disappear after one week.  *Id.* at 56:10-20. Consequently, during the planning and execution of the "Study-In" at Hillman Library in December 2024, the group's messages auto-deleted within a week.  The same one-week setting applied when SJP-Pitt prepared for the February 4 disciplinary hearing and when it drafted the Open Letter at the center of the parties' current dispute.  Thus, the contemporaneous messages to

---

[1] Activists regularly use Signal and its disappearing messages feature in their organizing work; it is not a recent development.  *See, e.g.*, *Signal: Activist Best Practices*, C. L. DEF. CTR. (Sept. 6, 2017), https://cldc.org/signal-activist-best-practices/ (recommending activists set messages to disappear on Signal to avoid leaving sensitive messages on users' devices); Amelia Nierenberg, *Signal Downloads Are Way Up Since the Protests Began*, N.Y. TIMES (Jun. 11, 2020, last updated Jun. 12, 2020), https://www.nytimes.com/2020/06/11/style/signal-messaging-app-encryption-protests.html (noting many activists concerned about "privacy, "data security," and "who may [be] profit[ing] from their use" of specific apps, especially when they organize to support "people of color"); Ryan Gallagher, *Signal App Prized by Activists Central to Houthi Chat Uproar*, BLOOMBERG (Mar. 25, 2025), https://archive.is/3DSjD (describing Signal as "a long time bastion for government dissidents and investigative journalists").  That student activists would also use the technology is unsurprising.

those highly relevant events were long gone before Pitt imposed the interim suspension on March 18 that triggered this litigation.

The messages were already gone when SJP-Pitt first met with counsel from the ACLU of Pennsylvania on February 14, 2025, to learn more about their legal rights.[2]  Contrary to Pitt's suggestions in its motion, Jules Lobel appeared as a "support person" at SJP-Pitt's February 4 hearing and was not acting as their legal counsel. Pitt could have clarified the relationship between SJP-Pitt and Professor Lobel during depositions, but neglected to do so.  And the messages were already gone when SJP-Pitt signed a limited engagement letter with counsel on March 18, 2025.  Ex. 2, SJP-Pitt and ACLU-PA Engagement Letter.[3]  Further details of counsel's engagement are discussed at page 9-10, *infra*.

Neither SJP-Pitt nor its attorneys have tried to hide the group's use of the auto-deleting Signal messages.  Indeed, recognizing the group's use of ephemeral messaging apps might raise questions in discovery, SJP-Pitt was forthcoming in even initial discovery responses by disclosing the issue in May 2025. Ex. 3, Pl.'s Resps. & Objs. to Defs.' First Reqs. for Produc. at 5 n.1.  SJP-Pitt also supplemented its discovery responses a few weeks later to provide more information about the mechanics of ephemeral messaging apps.  Ex. H, Defs.' Mem. in Supp. of Mot. for Spoliation Sanctions, Dkt. No. 71-8.  Pitt failed to proactively and timely address this discovery issue, such as by meeting and conferring with any further questions or serving interrogatory requests to solicit information on the history and extent of the group's

---

[2] Both attorneys and non-attorneys at the ACLU of Pennsylvania regularly meet with individuals and groups to provide information on their constitutional rights and civil liberties. *See, e.g.*, *Know Your Rights*, ACLU OF PA., https://www.aclupa.org/know-your-rights/ (collecting KYR materials).

[3] SJP-Pitt's limited disclosure of privileged attorney-client communication in this response is not intended to and expressly does not waive attorney-client privilege.

communications.  Pitt instead chose to wait until depositions to begin building the record it needed to support the serious sanctions motion it now brings.

Now, curiously less than 10 days before the preliminary injunction hearing, Pitt has filed a motion alleging spoliation and seeking a host of extreme sanctions.  Pitt's motion lacks the factual basis necessary to support a finding of spoliation, let alone the requests for severe sanctions.  This Court should deny Pitt's requests for any sanctions as it has failed to meet the high bars set by the Federal Rules of Civil Procedure and Third Circuit precedent.

## STANDARD OF REVIEW

Rule 37(e) governs failures to preserve electronically stored information, or "ESI." Where this rule applies, it is the exclusive remedy for spoliation of ESI.  *Bistrian v. Levi*, 448 F. Supp. 3d 454, 464 (E.D. Pa. 2020).  Courts considering a spoliation sanctions motion follow a two-step approach: first, the court must determine whether there has been a spoliation of ESI and, only then, does the court proceed to determine what sanctions may be appropriate for the spoliation.  *Bozic*, 912 F. Supp. 2d at 266.  Sanctions may only be ordered if another party has been prejudiced by the loss of evidence, and a court "may order measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).  For more severe sanctions, such as requests for adverse inferences or jury instructions, dismissals, or default judgments, a court must find that the party "acted with the intent to deprive" another party of the evidence's use "in the litigation."  *Id*. (e)(2).  Even if the court finds intent, this finding does not obligate a court to impose any of the more serious sanctions, as any "remedy should fit the wrong" and one of the lesser measures in (e)(1) may be "sufficient to redress the loss."  Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37.

Courts in the Third Circuit must also consider additional factors at the sanctions stage of the Rule 37(e) analysis.  Specifically, courts must consider "(1) the degree of fault of the party

who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).[4] Dispositive sanctions will only be warranted where "the non-responsible party's case is severely impaired because it lacked the information that was not produced." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 83 (3d Cir. 2012). The court must determine the weight to be given the evidence presented and to evaluate its credibility. *Fuhs v. McLachlan Drilling Co.*, No. 16-376, 2018 WL 5312760, at *13 (W.D. Pa. Oct. 26, 2018). "The decision to sanction parties rests in the sound discretion of the District Court." *Bozic*, 912 F. Supp. 2d at 266.

## ARGUMENT

### I.      Pitt has Failed to Establish Widespread Spoliation of ESI.

Pitt fails to marshal a record that meets its burden to demonstrate spoliation regarding most of Plaintiff's communications, which were set to disappear automatically long before the group contemplated litigation.

The advisory committee's notes to the 2015 amendment set forth the elements for spoliation of ESI. First, the spoliating party was under a duty to preserve when the loss occurred. Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37; *see also Bistrian*, 448 F. Supp. 3d at 465. Second, the lost ESI was within the scope of the duty to preserve. Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37. Third, "the information was lost because the

---

[4] "Although the Third Circuit has not specifically clarified this issue, it appears that Rule 37(e) exclusively governs the spoliation inquiry, while both Rule 37(e) and the Third Circuit's own three-factor test govern the sanctions inquiry." *Bistrian*, 448 F. Supp. 3d at 465 n.14.

party failed to take reasonable steps to preserve" it. *Id.* Fourth and finally, because ESI "often exists in multiple locations," spoliation occurs only where the information is truly lost and not recoverable elsewhere." *Id.*

Here, SJP-Pitt does not contest that any lost ESI is truly lost and not recoverable elsewhere, given the limitations of recovering the content of disappearing messages on Signal and Whatsapp. But the potentially most relevant communications were already gone before SJP-Pitt's duty to preserve attached, and Pitt has failed to show that any ESI lost *after* the duty to preserve attached was within the scope of SJP-Pitt's duty to preserve, so any finding of spoliation is not warranted here.

### A. SJP-Pitt's Duty to Preserve had Not Attached When Signal Communications about the Open Letter and Library Study-In were Automatically Deleted.

When SJP-Pitt's duty to preserve was triggered is critical to any finding of spoliation, as SJP-Pitt was not required to preserve disappearing messages until that time and, once the duty was triggered, SJP-Pitt only had a duty to preserve what still existed.

The duty to preserve is triggered when litigation is reasonably foreseeable to a party. Whether litigation is reasonably foreseeable is a "flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Bull*, 665 F.3d at 77-78. Courts may consider a variety of factors in this analysis, including "the type and seriousness of the injury; how often similar kinds of incidents lead to litigation; the 'course of conduct between the parties, including past litigation or threatened litigation'; and what steps both parties took after the incident and before the loss of the evidence." *Bistrian*, 448 F. Supp. 3d at 468 (quoting *Wiedeman v. Canal Ins. Co.*, No. 1:15-cv-4182-WSD, 2017 WL 2501753, at *3 (N.D. Ga. June 9, 2017)).

Pitt identifies several possible dates that triggered Plaintiff's preservation duty, but each

is flawed.  Pitt first suggests the duty to preserve was triggered on January 16, 2025, when conduct charges were brought.  By this point, all SJP-Pitt messages before January 9, 2025, the time period encompassing the Study-In, had already disappeared.  Pitt gives no factual or legal support for the January 16 date.  It merely proclaims that SJP-Pitt had a duty to preserve solely because SJP-Pitt and Pitt had an antagonistic relationship and that SJP-Pitt was preparing to defend itself in an internal conduct proceeding.  Defs.' Mem. at 12, Dkt. No. 75.  But Pitt cites nothing in the record beyond "contentious exchanges" to claim that litigation was reasonably foreseeable, and no law that a student organization defending itself against administrative conduct charges, without more, triggers a preservation duty.  Indeed, in *Doe v. Wesleyan University*, the district court rejected this exact argument.  No. 3:19-cv-01519, 2022 WL 2656787, at *13 n.8 (D. Conn. July 8, 2022).  *Doe* arose from a student's alleged cheating, where was she was accused of accessing the internet on her cell phone during an exam; she was sent before her university's "Honor Board" and the Board concluded that she had cheated on five exams, resulting in her dismissal.  *Id.* at *2.  The student's iPhone internet history was destroyed after the Honor Board process had begun, but the court concluded that it was "not clear from the evidence that she had contemplated litigation when she deleted her internet history."  *Id.* at *13 n.8.  Pitt's failure to adduce any evidence beyond the mere initiation of "contentious" disciplinary proceedings fails to support a January 16, 2025, preservation start date.

Pitt next alleges that the duty to preserve attached on February 4, 2025, the date of SJP-Pitt's conduct hearing, but this argument fares no better.  SJP-Pitt's sole basis for this date is the fact that Professor Lobel attended the hearing with SJP-Pitt.  Defs.' Mem. at 13, Dkt. No. 75.  But Pitt bears the burden of establishing the elements of spoliation, including the attachment of the duty to preserve, and has failed to allege that SJP-Pitt had engaged Professor Lobel as legal

counsel or provided any facts that his attendance at the hearing meant litigation was reasonably foreseeable.  In fact, communications produced from and to Pitt in this litigation undercut this conclusion.  On the morning of the hearing, Professor Lobel emailed Defendant Matthew Landy his concerns about the disciplinary proceedings, after which he followed up with an email to SJP-Pitt's co-President, UPITT_0001096.  Professor Lobel wrote, "I understand that you have a disciplinary hearing today at 1," noted he had a conflict, and concluded, "Let me know if I can be helpful," to which the co-President responded that Professor Lobel was "welcome" to join the hearing but that he understood that Professor Lobel "probably [had] better things to attend to." Ex. 4, Feb. 2, 2025, Emails, UPITT_0001096. ███████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████ Taken together, these undermine Pitt's suggestion that Professor Lobel's attendance at the hearing was *as legal counsel* or that it indicated that litigation was reasonably foreseeable to SJP-Pitt.

This leaves Pitt's final date being when SJP retained its ACLU counsel, which it can only pin as "sometime between the February 4, 2025, hearing and the imposition of the interim suspension on March 18, 2025."  Defs.' Mem. at 13, Dkt. No. 75. Courts typically find a plaintiff's duty to preserve attaches at the time he or she engages counsel.  *See, e.g.*, *Goldrich v. City of Jersey City*, No. 15-885, 2018 WL 4492931, at *8 (D.N.J. July 25, 2018).  Again, it is Pitt's burden, as the movant, to establish when the duty to preserve attached, and Pitt failed to seek clarification from SJP-Pitt or counsel as to when counsel was retained.

If Pitt's counsel had used discovery to probe engagement dates, they would have learned that SJP-Pitt first met with ACLU lawyers on February 14 for an introductory discussion, which

would not trigger a preservation duty. [5]  Even if it did, by this date the Open Letter had issued more than a week earlier and contemporaneous messages were automatically deleted.  It was not until March 18, 2025, the date of the interim suspension, that SJP-Pitt's co-Presidents executed any engagement agreement with ACLU counsel and Professor Lobel.  Even this engagement, however, was limited, expressly disclaiming "pursuing claims in court or the legal system."  *See* Ex. 2.  And certainly by this time, contemporaneous communications about the Open Letter and the conduct proceedings—the focus of the preliminary injunction motion pending before this court—were long gone.  But it is clear that Rule 37(e) "does not apply when information is lost before a duty to preserve arises."  Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37. Thus, any preservation duty could not commence before March 18, limiting the spoliation inquiry to March 18 through May 16, when SJP-Pitt turned off Signal's auto-delete function. [6]

---

[5] While counsel for the ACLU of Pennsylvania first met with SJP-Pitt on February 14, 2025, this does not establish that SJP-Pitt was contemplating litigation.  Mere consultation with a lawyer or researching one's legal rights do not compel a finding that a plaintiff reasonably foresaw litigation, without more.  The recent decision in *Li v. Merck & Co.* is particularly instructive here.  In *Li*, the district court concluded that a duty had not attached where a plaintiff was embroiled in an HR dispute and consulted with a lawyer to understand her legal rights, while still working through her company's internal processes to resolve the dispute, despite the company's contention that she had "'lawyered up' at that point."  No. 23-cv-03347-JSW, 2025 WL 2162949, at *2 (N.D. Cal. July 30, 2025).  The Court noted that consulting with an attorney about HR issues while letting the company's internal processes proceed "was a perfectly good reason to consult with a lawyer, and it doesn't mean she was considering filing a lawsuit."  *Id.* The Court concluded that there was "no indication" that the plaintiff was contemplating a lawsuit until she was fired and that her duty to preserve attached "[o]n that day her efforts to work within [the] system came to an end and litigation became her only remedy," noting that "[i]t is not strange that someone would begin contemplating a lawsuit when that became her only option." *Id.  See also Beck v. Access E Forms, LP*, No. 4:16-CV-00985, 2018 WL 3752842, at *2 (E.D. Tex. Aug. 8, 2018) ("An allegation that 'Plaintiff spoke with her current attorney for sixteen minutes' is speculative to conclude her duty to preserve arose . . . .").  ██████████████████████████████████████████████████████████████████

[6] SJP-Pitt's counsel acknowledges it could have been more diligent about ensuring that their client understood that disappearing messages should be turned off to preserve any relevant messages that still possibly existed or might be sent in the future.

**B. Pitt has Failed to Establish that Messages Lost Between March 18, 2025, and May 16, 2025, were Within the Scope of the Duty to Preserve.**

Turning to the narrower time period, Pitt also has failed to carry its burden to establish that ESI lost during this time period actually fell within the scope of SJP-Pitt's duty to preserve. Indeed, Pitt's argument that relevant communications have been lost rests on an inartful summation of the record—that there are dozens of chat threads about the hearing, Open Letter, and interim suspension, all of which are gone. Defs.' Mem. at 13, Dkt. No. 75. As described previously, the SJP co-President's estimation of "dozens" of chats pertained to SJP-Pitt in general, not these three sets of events. As to the hearing and Open Letter, Pitt has not alleged or demonstrated that any communications about the hearing or the Open Letter, both of which occurred in early February, occurred between March 18, 2025, and May 16, 2025. *Profit Point Tax Techs., Inc. v. DPAD Grp., LLP*, No. 2:19-cv-698, 2023 WL 11968310, at *5 (W.D. Pa. Apr. 26, 2023) (observing that a party's "generalized assertions about ESI that may have been lost border on speculation" and could not satisfy the standards for establishing spoliation).

This leaves only potential SJP-Pitt communications about the interim suspension. As an initial matter, Pitt has only established the general proposition that some messages relating to the interim suspension were not retained. Ex. A, Defs.' Mem. at 97:16-98:3, Dkt. No. 71-1. Pitt has not established how extensive discussions about the suspension were in chats with disappearing messages, or when the discussions ended, nor did it attempt to do so. Pitt has not established whether the majority of SJP-Pitt's communications about the suspension occurred via disappearing messages or by another medium. Ex. 1 at 91:16-92:15. Some of SJP-Pitt's discussions on important matters, including the pending disciplinary hearing and the interim suspension, were in-person, or sometimes by a Signal call. Ex. A, Defs.' Mem. at 20:8-21:2, Dkt. No. 71-1; Ex. 1 at 37:17-38:17, 45:17-46:15, 90:5-92:5. And one SJP-Pitt co-President

testified to the content of SJP-Pitt's discussions about the interim suspension: a reaction of fear. Ex. 1 at 92:22-24.  SJP-Pitt's members were initially concerned that individual students had been suspended, not the organization.  Ex. 1 at 92:25-93:15; ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████

     Pitt has also failed to inquire or establish how frequently SJP-Pitt used disappearing messages after engaging counsel, or how often, if at all, their messages pertained to content that even fell within the scope of preservation.  "A litigant is not required to keep 'every document in its possession'—rather, only those items that are relevant, 'reasonably calculated to lead to the discovery of admissible evidence,' or 'reasonably likely to be requested during discovery' need to be preserved."  *Bistrian*, 448 F. Supp. 3d at 473 (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)).  Pitt has not established the extent of SJP-Pitt's disappearing message use between March 18 and May 12, and to what extent the substance of these messages falls within the scope of discovery.

    At most, Pitt has established that SJP-Pitt continued to send disappearing messages after March 18 and that SJP-Pitt discussed the interim suspension.  As to the remainder, "vague speculation as to whether evidence has been destroyed or even whether evidence was relevant

does not rise to the specificity level required by the Third Circuit to impose sanctions or even make a finding of spoliation." *Bensel v. Allied Pilots Ass'n*, 263 F.R.D. 150, 153 (D.N.J. 2009). Additionally, "a party only engages in spoliation as a matter of law if it had some notice that the evidence was at least potentially relevant to the litigation before it was destroyed." *Olney v Job.com*, No. 1:12-cv-01724-LJO-SKO, 2014 WL 5430350, at \*10 (E.D. Cal. Oct. 24, 2014). Finally, a "court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts; some litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation." *See* Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37. SJP-Pitt is comprised of college undergraduates, not savvy corporate or university executives.

Because Pitt chose to bring this motion and has failed to create an adequate record to permit a finding of spoliation, Pitt's motion should be denied.

## II.    Pitt has also Failed to Meet the High Standard to Justify Spoliation Sanctions.

Pitt also has failed to meet the high burden established by the Federal Rules of Civil Procedure and Third Circuit case law to justify any sanction for spoliation of ESI, much less the extreme dispositive ones they seek.

A party must show prejudice by the loss of ESI for any sanctions to issue under Rule 37(e)(1). For more extreme sanctions, like in Pitt's motion, a court may only issue these sanctions after finding that the spoliating party "acted with the intent to deprive" another party of the ESI's use "in the litigation." *Id*. (e)(2). Even then, a court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Courts in this Circuit must also consider "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously

at fault, will serve to deter such conduct by others in the future." *GN Netcom, Inc.*, 930 F.3d at 82 (quoting *Schmid*, 13 F.3d at 79).

Even assuming that Pitt has demonstrated any spoliation, that spoliation is limited in scope. The loss of some messages concerning the interim suspension is only tangentially relevant to the circumstances surrounding the Open Letter, and Pitt has established neither prejudice nor an intent by SJP-Pitt to deprive it of evidence.

### A. No Intent to Deprive can be Shown, so Dispositive Sanctions are Unwarranted.

Pitt's motion seeks the most extreme sanctions: denial of SJP-Pitt's preliminary injunction motion, dismissal of SJP-Pitt's complaint with prejudice,[7] and adverse inferences. All of these require a finding that SJP-Pitt acted with the intent to deprive Pitt of use of the lost messages in this litigation, yet there is no evidence of such intent here.

Pitt's argument that SJP-Pitt had "intent" boils down to an intent to destroy its communications *generally* and an "intentional" failure to turn-off the auto-delete function, but neither suffices to show intent to deprive under Rule 37(e). *Ohio ex rel. Yost v. Jones*, No. 2:22-CV-2700, 2025 WL 2249595, at *5 (S.D. Ohio Aug. 7, 2025) (rejecting a "sparse" accusation that the defendant acted intentionally by enabling disappearing messages after litigation began as a "gesture at intentionality without more does not satisfy the high bar for the sanctions available

---

[7] In its memorandum of law, Pitt puts forth an alternative request that this Court enter default judgments on all counts against SJP-Pitt, as if this is something of a compromise. But "[t]he Third Circuit has continuously asserted that defaults are drastic sanctions, termed extreme by the Supreme Court" and should be reserved only for cases "exhibiting 'flagrant bad faith' and 'callous disregard.'" *Winters v. Textron, Inc.*, 187 F.R.D. 518, 520 (M.D. Pa. 1999) (quoting *Clarke v. Whitney*, 169 F.R.D. 623, 626 (E.D. Pa. 1996)). Even where corporate executives aware of pending litigation deliberately deleted emails and urged others to do the same, and an executive admitted that there may have been "damning statements" in some lost emails, the Third Circuit concluded there was no abuse of discretion in a district court's decision not to impose a default judgment. *GN Netcom, Inc.*, 930 F.3d at 83.

under Rule 37(e)(2)"). Rule 37(e) requires more: it requires an intent to deprive the other of those communications *in litigation*. Circumstantial evidence alone cannot support a finding that a party acted with intent to spoliate. *Goldrich*, 2018 WL 4492931, at *11.

The intent necessary to support a spoliation finding is typically bad faith. This standard is high: a party's conduct must "rise[] well above inadvertence, negligence, inexplicable foolishness" and beyond "the normal activities of business or daily living." *Bozic*, 912 F. Supp. 2d at 270; *see also Two Canoes LLC v. Addian, Inc.*, No. 21-cv-19729, 2024 WL 2939178, at *10 (D.N.J. Apr. 30, 2024) ("A showing of negligence or even gross negligence will not do the trick."). Under Rule 37, a court assessing intent should consider the party's explanation for the loss, the timing of the loss, and the method of any loss or destruction. *Bistrian*, 448 F. Supp. 3d at 475 ("[A]utomatic overwriting is generally less culpable than affirmative deletion, which in turn is less culpable than taking additional steps to erase backup copies."); *Malibu Media, LLC v. Tashiro*, No. 1:13-CV-00205-WTL, 2015 WL 2371597, at *17 (S.D. Ind. May 18, 2025) (explaining that a "competing explanation" or "pre-existing practice" may suggest negligence instead of intent to deprive); *Manning v. Safelite Fulfillment, Inc.*, No. 17-2824, 2021 WL 3557582, at *10 (D.N.J. Apr. 29, 2021) (determining that "temporal remoteness" weighed in favor of finding that party did not act with intent to deprive); *Abdelgawad v. Mangieri*, No. 14-1641, 2017 WL 6557483, at *4 (W.D. Pa. Dec. 22, 2017) (rejecting spoliation sanctions where evidence produced showed that party "did not deliberately attempt to thwart discovery" but "misunderstood the extent of his obligation"); *cf. Pable v. Chi. Transit Auth.*, No. 19 CV 7686, 2024 WL 3688708, at *9 (N.D. Ill. Aug. 7, 2024) (concluding record did not show spoliation of certain disappearing messages where party argued he used the feature "for the purposes of data hygiene and to maintain storage" and no specific evidence refuted that statement).

Here, the record demonstrates that SJP-Pitt's use of disappearing messages was not to deprive *Pitt* of these messages *in this litigation*. Interestingly, Pitt never asked in interrogatories or depositions the obvious questions of why SJP-Pitt used disappearing messages, perhaps because Pitt knew the answer would be unfavorable to the spoliation arguments it now advances. SJP-Pitt acted with the intent that *no one* outside of SJP-Pitt should see their most sensitive discussions. SJP-Pitt keeps a close hold on its sensitive organizational information, including membership and communications, and for good reasons. Ex. 7, SJP Decl. ¶¶ 17-19. SJP-Pitt has been subject to harassment and even veiled death threats from Pitt groups and outside agitators, as targeted by Pitt, law enforcement, and government officials because of their advocacy. *Id.* ¶¶ 16-17, 20, 23, 30-31, 37. SJP-Pitt's concern that their messages might fall into Pitt's hands was motivated by fear that Pitt could learn how the group organizes and collaborates with others, or even to turn information over to law enforcement. *Id.* ¶¶ 24, 35. SJP-Pitt also fears its information reaching ill-willed outside agitators, possibly exposing its membership to doxing. *Id.* ¶¶ 26-27, 29, 32-33, 36. Notably, SJP-Pitt adopted this practice long before any of the key events in this litigation—the Study-In, the disciplinary proceedings, the Open Letter, and the interim suspension—and certainly before any conceivable litigation. At best, the limited record establishes that "negligence remains a reasonable explanation" for the loss of some messages after the duty to preserve—but far from bad faith. *Bull*, 665 F.3d at 80. Thus, Pitt's requested sanctions "would be unnecessary overkill" and are not precisely tailored to the limited degree of possible spoliation. *Bozic*, 912 F. Supp. 2d at 273 n.14.

Another case involving disappearing messages provides a helpful example of what may show intent to deprive and emphasizes why such a finding is unwarranted here. In *FTC v. Noland*, targets of an FTC investigation began using Signal one day after inadvertently learning

16

of a subpoena.  No. CV-20-00047, 2021 WL 3857413, at *2 (D. Ariz. Aug. 30, 2021).  The executives failed to disclose the Signal use during their depositions, and the day before their devices were to be imaged, they all deleted Signal.  *Id.* at *3-5.  The district court noted that the defendants' explanation for the switch to Signal—to avoid hacking, eavesdropping, and infiltration by a former employee—was implausible, because there were no communications suggesting such concerns around or before the switch.  *Id.* at *12.  In concluding there was an intent to deprive, the court found two factors significant.  First, the "most decisive factor" was the timing of the installation, which further undermined the executives' innocent explanation.  *Id.* Second, the coordinated deletion of Signal on the eve of device imaging was an "outrageous maneuver that raises a strong inference of bad faith," and undermined the executives' assertion that disappearing messages had been used so there was nothing to be found.  *Id.* at *13.  Yet the FTC still only sought an adverse inference, not judgment, which was granted given the severity of the party's behavior.  *Id.* at *14.  The record in *Noland* of an intent to deprive shows just how lacking the record of such intent is here.

Because no intent to deprive has been demonstrated, this Court should deny Pitt's request for sanctions, and especially the most extreme ones like denying the preliminary injunction, dismissal of case with prejudice, entry of judgment for Pitt on all counts, or adverse inferences.

## B.  Pitt has Failed to Demonstrate Any Prejudice Resulting from Spoliation.

Pitt's claims to prejudice from spoliation also are questionable, so even lesser sanctions cannot be justified under Rule 37(e).

Prejudice cannot be presumed but must be shown.  Satisfying this element requires showing that the spoliation "materially affected the substantial rights of the adverse party and is prejudicial to the presentation of his case."  *Bistrian*, 448 F. Supp. 3d at 477 (quoting *Magnetar*

*Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 481 (D. Del. 2012) (alteration

omitted)).  To justify dispositive sanctions, the prejudice must severely impair the movant's case.

*GN Netcom, Inc.*, 930 F.3d at 82.  A party must offer "plausible, concrete suggestions as to what

that evidence might have been."  *Id.* at 83.  As noted by this Court in *Fuhs v. McLachlan Drilling

Co.*, a party who only offers "conjecture" and "unwarranted and speculative inferences" from the

record fails to show prejudice.  2018 WL 5312760, at *15, 17; *see also Manning v. Safelite

Fulfillment, Inc.*, No. 17-2824, 2021 WL 3557582, at *8 (D.N.J. Apr. 29, 2021) (where party

failed to develop record about contents of missing ESI, party failed to show prejudice), *adopted

as to prejudice by*, 2021 WL 3542808, at *2-3 (D.N.J. Aug. 11, 2021).

Here, Pitt has only established that there are missing messages about SJP-Pitt's reaction

to the suspension, but fails to explain how these internal communications about their suspension

have harmed Pitt's ability to present its case.  Ex. A, Defs.' Mem. at 97:16-98:3, Dkt. No. 71-1.

Other cases in this circuit, where a party demonstrated prejudice by showing both that specific

evidence actually existed—i.e., a video or a message exchange—and the evidence would have

definitively settled an issue involving conflicting witness testimony, reveal a clear contrast.  *See,

e.g.*, *Bistrian*, 448 F. Supp. 3d at 477 (party "unquestionably prejudiced" by loss of video that

would have shown whether assailant was properly searched before prison stabbing); *Manning*,

2021 WL 3557582, at *10 (prejudice shown where Facebook messages would have resolved two

witnesses' alternative accounts of messages' contents).

Pitt has failed to show prejudice, let alone the severe impairment necessary to justify the

harsh, dipositive sanctions it seeks.  Pitt's request for sweeping adverse inferences is particularly

egregious, given its inability to establish either intent to deprive *or* prejudice.  Pitt boldly

requests that this Court draw the following inferences: SJP-Pitt acted "in bad faith and deceit"

"at all times" and that *all* of SJP-Pitt's representations to both Pitt and this Court regarding the nature of its conduct and its allegations about Pitt's administrators are false, as well as adverse inferences on several other critical elements to this litigation.  Defs.' Mem. at 19-20, Dkt. No. 75.  "An adverse-inference instruction is a 'severe sanction' limited to 'egregious acts of spoliation.'"  *Cf. Blakeney v. Packaging Corp. of Am.*, No. 2:23-cv-1453-NR, 2024 WL 1930522, at *5 n.3 (W.D. Pa. May 1, 2024) (quoting *State Farm Fire & Cas. Co. v. Cohen*, No. 19-1947, 2020 WL 5369626, at *5 (E.D. Pa. Sept. 8, 2020)).  Here, Pitt seeks not just a single adverse inference *instruction*, but asks this Court to draw multiple adverse inferences.  But a party must justify their sanctions requests as a proportional remedy, even when intent is shown. *See, e.g.*, *Jones*, 2025 WL 2249595, at *5 (rejecting party's request for "rather extreme rebuttable presumption" where no justification provided).  Pitt cites no legal authority for its extreme request, which implicitly suggests that multiple witnesses have perjured themselves in depositions, declarations, and the verified complaint, and that every representation counsel has made on their behalf is false.  *Cf. IOENGINE, LLC v. Paypal Holdings, Inc.*, No. 18-452-WCB, 2022 WL 1443867, at *6 (D. Del. May 3, 2022) (even where explanation seemed "somewhat far-fetched," court not inclined to conclude witness "repeatedly perjured himself," "fabricated an unlikely story," and "intentionally disposed of potentially important evidence," where movant failed to establish actual suppression or withholding of evidence).  Given Pitt's sparse evidentiary offering regarding both intent and prejudice, and paucity of legal authority to support its brazen ask, any request for dispositive sanctions should be denied.  *Cf. Fuhs*, 2018 WL 5312760, at *19 ("[T]he defense's pursuit of this type of relief appears to be an overzealous attempt to avoid a jury hearing [in] this strong retaliation case.")

Pitt's remaining request is to strike SJP-Pitt's demand for attorneys' fees, completely.

Defs.' Mot. at 2, Dkt. No. 70. Pitt's argument in favor of this sanction is somewhat circular: either SJP-Pitt intentionally, against the advice of counsel, destroyed highly relevant evidence *or*, to avoid that inference, that SJP-Pitt's counsel failed to properly advise them of their preservation obligations. Defs.' Mem. at 18-19, Dkt. No. 75. Pitt spends its entire motion accusing SJP-Pitt of intentional, bad-faith conduct, without proof, so the framing here appears to be an attempt by Pitt to avoid saying what it actually wants: it wants this Court to punish SJP-Pitt's counsel for extensive, egregious spoliation Pitt has failed to prove. Pitt fails to cite any case where a court decided to completely bar attorneys' fees to a plaintiff under Rule 37(e). Rule 37(e)(1)'s requirement that a court impose "measures no greater than necessary to cure the prejudice" suggests such a measure would be warranted only upon a record demonstrating counsel's egregious misconduct. But Pitt's framing fails to capture actual reality: counsel could not instruct its client to preserve information that was already gone and unrecoverable. And counsel acknowledges it could have been more diligent about ensuring that their client understood its preservation obligations for messages not yet sent. A more reasonable request may have been for Pitt to demand attorneys' fees for its discovery efforts to investigate any spoliation, including filing this motion, *see, e.g.*, *Sinclair v. Cambria Cnty.*, No. 3:17-cv-149, 2018 WL 4689111, at *3 (W.D. Pa. Sept. 28, 2018) (awarding fee and costs incurred by defendants associated with spoliation), but given Pitt's paltry factual and legal presentation, even that request is disproportionate. *See IOENGINE, LLC*, 2022 WL 1443867, at *8 (rejecting party's request for fees and costs where party won only limited relief under Rule 37(e)).

## CONCLUSION

Because Pitt has established neither prejudice nor an intent to deprive, SJP-Pitt respectfully requests that this Court deny Pitt's motion for spoliation sanctions.

Dated: August 26, 2025                           Respectfully Submitted,

                                                 By: */s/ Witold J. Walczak*

                                                 Witold J. Walczak
                                                 PA Bar No. 62976
                                                 Ali Szemanski
                                                 PA Bar No. 327769
                                                 ACLU OF PENNSYLVANIA
                                                 P.O. Box 23058
                                                 Pittsburgh, PA 15222
                                                 P: 412-681-7864
                                                 F: 267-573-3054
                                                 vwalczak@aclupa.org
                                                 aszemanski@aclupa.org

                                                 Solomon Furious Worlds
                                                 PA Bar No. 333677
                                                 ACLU OF PENNSYLVANIA
                                                 P.O. Box 60173
                                                 Philadelphia, PA 19102
                                                 P: 215-592-1513
                                                 F: 267-573-3054
                                                 sfworlds@aclupa.org

                                                 Jules Lobel, Esq.
                                                 NY Bar No. 1262732
                                                 P.O. Box 81918
                                                 Pittsburgh, PA 15217
                                                 juleslobel73@gmail.com

                                                 *Counsel for Plaintiff*